

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL NO. 08 - cr 66

v. : DATE FILED: February 5, 2008

WILLIAM KING, M.D. : VIOLATIONS:
18 U.S.C. § 1341 (mail fraud - 13 counts)
18 U.S.C. § 1347 (health care fraud – 59 counts)
18 U.S.C. § 1038 (false statements in a health care matter – 10 counts)
18 U.S.C. § 2 (aiding and abetting)

FILED
FEB 05 2008
MICHAEL E. KUNZ, Clerk
By ______ Dep. Clerk

**INDICTMENT**

**COUNTS ONE THROUGH THIRTEEN**

**(MAIL FRAUD)**

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

1. The American Federation of State and City Municipal Employees (AFSCME) District Council 33 was a union that represented the approximately 13,000 City of Philadelphia blue-collar workers. Local 33 was located at 3001 Walnut Street in Philadelphia, Pennsylvania (PA) and maintained a Health and Welfare Clinic ("the Local 33 Clinic") in that building.

2. Defendant WILLIAM KING, M.D., was a medical doctor with licenses to practice medicine in Pennsylvania and New Jersey. He practiced gynecological medicine at the Local 33 Clinic in Philadelphia, Pennsylvania through 2004.

3. Defendant WILLIAM KING provided various medical and gynecological procedures and services during office visits.

4. Physicians practicing medicine at the Local 33 Clinic were responsible for handling their own billing of the insurance company for the members of Local 33.

5. The insurance company for the members of Local 33 was Independence Blue Cross ("Blue Cross").

6. Blue Cross was a "health care benefit program" as defined in 18 U.S.C. § 24(b).

**THE MEDICAL BILLING PROCESS**

7. Medical providers and health care benefit programs used well-known and standard insurance processing codes to identify certain medical diagnoses and medical treatments or procedures. The codes for medical services and procedures were called "CPT" codes.

8. CPT codes were used to bill for any time the physician spent with a patient. In general, CPT codes covered a specific procedure which was performed, or medical time spent with a patient for "evaluation and management" of the patient. Evaluation and Management (E/M) services were divided into broad categories, such as office visits, hospital visits, and "consultations." An "office visit" was a type of service provided when a medical professional spent time with a patient on an outpatient basis. A "consultation" is a type of service provided by a physician whose opinion or advice regarding the evaluation and/or management of a specific problem was requested by another physician or medical professional.

9. The CPT codes distinguished among different types of services, and each type of service had its own codes for billing. The CPT codes for "consultations" were different

from the CPT codes for "office visits," and the CPT codes recognized different levels of complexity within each category.

10. Health care benefit programs reimbursed medical providers at different amounts for different CPT codes. Using the CPT codes, insurance companies reimbursed medical services consultations and office visits at different rates. Further, insurance companies reimbursed different types of office visits, and different types of consultations, at different rates. In general, a consultation was more expensive than an office visit. Further, in general, a consultation requiring a more extensive history and examination, and a high degree of medical decision-making, was more expensive then a consultation requiring a less extensive history and examination, and a lesser degree of medical decision-making.

**THE DEFENDANT'S BILLING PRACTICES**

11. Defendant WILLIAM KING enlisted his wife to assist him with billing Blue Cross, and directed his wife with respect to the billing.

12. For each billed visit, defendant WILLIAM KING had the patient fill out, or filled out himself, a one-page pre-printed form to record the date of the visit, the patient's name and identifying information, and the patient's insurance information. Defendant KING often hand-wrote a "diagnosis" on this patient information sheet. In addition, defendant KING had the patient sign, or filled in himself, an "HMO Encounter Referral Form" for each billed visit.

13. Defendant WILLIAM KING's wife, and others acting at her direction, put information from the patient information sheet and HMO Encounter Referral Form provided by defendant KING into a computer billing software package. That software in turn generated an insurance claim form, known in the industry as a HCFA or CMS 1500 claim form. The claim

form included several items of information, including the provider or supplier's Provider Identification Number, the beneficiary's name, and the CPT procedure code for the type of service rendered. The claim form required the provider or supplier to certify that all of the information on the claim form was accurate.

14. Defendant WILLIAM KING then submitted the claim form by mail to Blue Cross for reimbursement.

15. If Blue Cross approved the claim, it paid defendant WILLIAM KING an amount based on the particular CPT code billed in the claim.

**THE SCHEME TO DEFRAUD**

16. From in or about October 1999, to in or about January 2004, defendant

**WILLIAM KING, M.D.,**

knowingly and willfully executed, and attempted to execute, a scheme or artifice to defraud, and to obtain by means of false and fraudulent pretenses, representations and promises, money and property owned by, or under the custody or control of Blue Cross by submitting false and fraudulent claims for reimbursement.

**MANNER AND MEANS**

It was part of the scheme that:

17. Defendant WILLIAM KING directed his wife to use a specific procedure code to bill for every visit by a patient.

18. Defendant WILLIAM KING submitted claims to Blue Cross which he knew were false and fraudulent, in that defendant KING represented that:

(a) he had conducted a "consultation" for another physician, when in fact

he had performed routine medical services for a patient of his own, a practice known as "upcoding";

(b) the patient's medical situation had necessitated a comprehensive physical examination and the taking of a comprehensive medical history, when in fact the patient's situation had not required this examination and history-taking, and defendant KING had not performed such an exam and taken such a history (upcoding);

(c) the patient presented complex issues which required complex medical decision-making, when in fact the defendant performed only routine and uncomplicated services (upcoding); and

(d) he had treated each patient on each date billed, when in fact he had not treated each patient on each date billed ("ghost visits").

***Upcoding***

19. Defendant WILLIAM KING regularly met with patients for routine gynecological office visits. These visits included examinations, pap smears, and the discussion and issuance of birth control medications or devices.

20. Defendant WILLIAM KING regularly upcoded, or billed routine office visits as complex consultations, to obtain a higher reimbursement from Blue Cross than he was entitled to receive, as follows:

(a) defendant KING billed for complex consultations for patients who came to his office merely to receive birth control injections, which were often administered by a nurse. For example, KING billed CPT Code 99245, the highest level consultation code, for patient Ka.W. on numerous occasions, including on or about March 9, 2000 and on or about December 15, 2000, when on those occasions Ka.W. came to his office merely to receive a birth

control injection. Similarly, defendant KING billed for numerous complex consultations for patient Be.D., when Be.D. came to his office merely to receive a birth control injection.

(b) defendant KING billed for complex consultations for patients who came to his office merely to receive prescription refills, obtain test results, or other routine matters. For example, on or about July 15, 2002, having lost her purse, patient D.F. returned to defendant KING's office for a new copy of the prescription that KING had prescribed for her one week before, on or about July 8, 2002. Defendant KING billed CPT code 99245 (complex consultation) for patient D.F. for both dates. Similarly, on or about July 17, 2002, patient R.W. went to defendant KING's office to get the test results from her visit to defendant KING on or about June 12, 2002. Defendant KING billed CPT code 99245 for patient R.W. for both on or about June 12 and July 17, 2002.

(c) defendant KING repeatedly billed for a complex consultation for patients, even when he had recently billed for a complex consultation for that same patient, and thus had allegedly recently conducted a thorough examination of that patient and taken a detailed medical history. For example, defendant KING billed CPT code 99245: for patient P.M. twenty-three times between on or about January 24, 2000 and on or about November 7, 2003, including four times just in or about June 2001; for patient D.C., twenty-five times between on or about June 20, 2000 and on or about November 7, 2003; and for patient C.E., thirty-two times between from on or about December 15, 1999 and to in or about October 2003.

21. By billing office visits as consultations, or complex consultations, defendant WILLIAM KING fraudulently upcoded his bills to Blue Cross.

***False Documentation***

22. On or about April 28, 2004, Blue Cross asked defendant WILLIAM KING to produce the medical records for forty specific patients to justify his billing for complex consultations. Defendant KING resisted providing patient medical records to Blue Cross.

23. In order to conceal from the insurance company that he was billing routine office visits as complex consultations, defendant WILLIAM KING created false documentation, including purported extensive medical history and examination forms, for several of the patients whose files were requested by Blue Cross.

***Ghost visits***

24. Defendant WILLIAM KING frequently billed for patient visits that did not occur, and billed these "ghost visits" as complex consultations, including:

(a) defendant KING billed for complex consultations for patients who missed their appointments. For example, defendant KING billed a complex consultation (CPT code 99245) for the following missed appointments: for patient O.S., on or about June 7, 2000; for patient C.R., on or about June 26, 2000; for patient L.S., on or about October 26, 2000; and for patient P.M., on or about June 27, 2001.

(b) defendant KING often billed for a "ghost" visit that allegedly occurred shortly before or after an actual office visit (all of which KING billed as complex consultations), including but not limited to, the examples in the chart below:

| PATIENT | APPROX. DATE(S) OF ACTUAL VISIT(S) | BILLED AS | APPROX. DATE(S) OF GHOST VISIT(S) | BILLED AS |
|---|---|---|---|---|
| Be.D. | 5/22/00 | complex consultation | 5/15/00 | complex consultation |
| C.E. | 7/31/00<br>9/20/00 | complex consultations | 9/14/00<br>9/28/00 | complex consultations |

| PATIENT | APPROX. DATE(S) OF ACTUAL VISIT(S) | BILLED AS | APPROX. DATE(S) OF GHOST VISIT(S) | BILLED AS |
|---|---|---|---|---|
| L.S. | 1/28/02<br>2/8/02<br>5/16/02 | complex consultations | 2/4/02<br>5/2/02 | complex consultations |
| A.W. | 8/28/02 | complex consultation | 8/2/02<br>10/2/02 | complex consultations |

25. From approximately on or about October 19, 1999, through on or about November 21, 2003, Blue Cross paid defendant WILLIAM KING approximately $1,020,499 for his claims for office visits, the vast majority of which were fraudulently upcoded, and some of which had not even occurred. Each payment check issued by Blue Cross covered many claims from KING, so that each check contained payment for false and fraudulent claims.

26. On or about the dates listed below (each date constituting a separate count of this indictment), in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**WILLIAM KING, M.D.,**

for the purpose of executing the scheme or artifice described above, and aiding and abetting its execution, and attempting to do so, knowingly caused to be delivered by United States mail, according to the directions thereon, checks addressed to the defendant from Blue Cross in payment of defendant KING's false and fraudulent claims, as follows:

| COUNT | APPROX. DATE OF MAILING OF CHECK | CHECK NUMBER | AMOUNT OF CHECK |
|---|---|---|---|
| 1 | 06/09/03 | 0000492144 | $ 22,970.00 |
| 2 | 07/14/03 | 0000526291 | $ 1,765.00 |
| 3 | 07/21/03 | 0000533491 | $ 29,833.00 |
| 4 | 08/11/03 | 0000554309 | $ 12,585.00 |

| COUNT | APPROX. DATE OF MAILING OF CHECK | CHECK NUMBER | AMOUNT OF CHECK |
|---|---|---|---|
| 5 | 08/18/03 | 0000561219 | $ 4,500.00 |
| 6 | 10/06/03 | 0000613334 | $ 14,747.00 |
| 7 | 10/20/03 | 0000628784 | $ 16,173.00 |
| 8 | 11/30/03 | 0000673118 | $ 43,518.00 |
| 9 | 12/22/03 | 0000700680 | $ 21,810.00 |
| 10 | 12/29/03 | 0000706942 | $ 1,182.00 |
| 11 | 02/29/04 | 0000772493 | $ 27,245.00 |
| 12 | 03/29/04 | 0000801129 | $ 31,460.00 |
| 13 | 04/13/04 | 0000816331 | $ 375.00 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

**COUNTS FOURTEEN THROUGH SEVENTY-TWO**

**(HEALTH CARE FRAUD)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 15 and 17 through 25 of Counts One through Thirteen are incorporated here.

2. On or about each of the dates listed below, in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendant

**WILLIAM KING, M.D.,**

knowingly and willfully executed a scheme and artifice to defraud Blue Cross, a health care benefit program, and to obtain money and property owned by and under the custody and control of that health care benefit program by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, and aided and abetted the execution of the scheme, by submitting and causing to be submitted a fraudulent health care insurance claim for services purportedly provided to each of the individuals listed below, in the approximate amounts listed below (each claim constituting a separate count of this indictment):

| COUNT | APPROXIMATE DATE OF CLAIM | APPROXIMATE PATIENT AND VISIT DATE | APPROXIMATE AMOUNT BILLED | REASON FALSE |
|---|---|---|---|---|
| 14 | 11/10/03 | W.C. 10/23/03 | $150.00 | ghost visit |
| 15 | 11/17/03 | W.C. 10/30/03 | $150.00 | upcoding |
| 16 | 3/25/03 | A.D. 3/13/03 | $150.00 | upcoding |

| COUNT | APPROXIMATE DATE OF CLAIM | APPROXIMATE PATIENT AND VISIT DATE | APPROXIMATE AMOUNT BILLED | REASON FALSE |
|---|---|---|---|---|
| 17 | 10/3/03 | A.D.<br>6/23/03 | $150.00 | upcoding |
| 18 | 10/15/03 | A.D.<br>9/15/03 | $150.00 | upcoding |
| 19 | 3/7/03 | Ba.D<br>2/19/03 | $150.00 | upcoding |
| 20 | 5/30/03 | Ba. D<br>4/11/03 | $150.00 | upcoding |
| 21 | 10/15/03 | Be.D.<br>9/26/03 | $150.00 | upcoding |
| 22 | 10/31/03 | Be.D.<br>10/3/03 | $150.00 | ghost visit |
| 23 | 11/10/03 | Be.D.<br>10/10/03 | $150.00 | ghost visit |
| 24 | 11/17/03 | D.D.<br>10/8/03 | $150.00 | upcoding |
| 25 | 11/10/03 | D.D.<br>10/13/03 | $150.00 | upcoding |
| 26 | 11/10/03 | L.D.<br>10/21/03 | $150.00 | upcoding |
| 27 | 6/15/03 | C.E.<br>4/17/03 | $150.00 | upcoding |
| 28 | 10/3/03 | C.E.<br>6/30/03 | $150.00 | upcoding |
| 29 | 8/30/03 | C.E.<br>7/7/03 | $150.00 | upcoding |
| 30 | 9/20/03 | C.E.<br>7/17/03 | $150.00 | upcoding |
| 31 | 9/29/03 | C.E.<br>8/18/03 | $150.00 | upcoding |

| COUNT | APPROXIMATE DATE OF CLAIM | APPROXIMATE PATIENT AND VISIT DATE | APPROXIMATE AMOUNT BILLED | REASON FALSE |
|---|---|---|---|---|
| 32 | 11/28/03 | D.F. 11/18/03 | $150.00 | upcoding |
| 33 | 3/7/03 | S.G. 2/10/03 | $150.00 | upcoding |
| 34 | 11/17/03 | S.G. 11/6/03 | $150.00 | upcoding |
| 35 | 3/7/03 | T.G. 2/10/03 | $150.00 | upcoding |
| 36 | 3/7/03 | T.G. 2/19/03 | $150.00 | ghost visit |
| 37 | 3/7/03 | T.G. 2/23/03 | $150.00 | upcoding |
| 38 | 5/16/03 | T.G. 3/14/03 | $150.00 | ghost visit |
| 39 | 10/15/03 | T.G. 9/3/03 | $150.00 | upcoding |
| 40 | 10/15/03 | T.G. 9/8/03 | $150.00 | upcoding |
| 41 | 10/29/03 | T.G. 9/29/03 | $150.00 | upcoding |
| 42 | 11/10/03 | T.G. 10/17/03 | $150.00 | ghost visit |
| 43 | 11/10/03 | T.G. 10/24/03 | $150.00 | ghost visit |
| 44 | 11/28/03 | T.G. 11/10/03 | $150.00 | upcoding |
| 45 | 7/11/03 | L.H. 6/18/03 | $150.00 | upcoding |
| 46 | 9/15/03 | N.L. 4/8/03 | $150.00 | ghost visit |

| COUNT | APPROXIMATE DATE OF CLAIM | APPROXIMATE PATIENT AND VISIT DATE | APPROXIMATE AMOUNT BILLED | REASON FALSE |
|---|---|---|---|---|
| 47 | 10/3/03 | N.L.<br>5/21/03 | $150.00 | ghost visit |
| 48 | 6/27/03 | N.L.<br>5/23/03 | $150.00 | ghost visit |
| 49 | 6/27/03 | N.L.<br>5/30/03 | $150.00 | upcoding |
| 50 | 7/11/03 | S.L.<br>6/12/03 | $150.00 | upcoding |
| 51 | 7/11/03 | S.L.<br>6/20/03 | $150.00 | upcoding |
| 52 | 10/15/03 | S.L.<br>9/26/03 | $150.00 | upcoding |
| 53 | 3/14/03 | P.M.<br>2/5/03 | $150.00 | upcoding |
| 54 | 3/7/03 | P.M.<br>2/19/03 | $150.00 | upcoding |
| 55 | 8/15/03 | P.M.<br>4/7/03 | $150.00 | upcoding |
| 56 | 11/10/03 | P.M.<br>10/16/03 | $150.00 | ghost visit |
| 57 | 11/17/03 | P.M.<br>11/7/03 | $150.00 | ghost visit |
| 58 | 7/11/03 | M.P.<br>6/12/03 | $150.00 | upcoding |
| 59 | 7/11/03 | M.P.<br>6/20/03 | $150.00 | upcoding |
| 60 | 5/30/03 | C.R.<br>4/1/03 | $150.00 | ghost visit |
| 61 | 9/15/03 | C.R.<br>4/21/03 | $150.00 | upcoding |

| COUNT | APPROXIMATE DATE OF CLAIM | APPROXIMATE PATIENT AND VISIT DATE | APPROXIMATE AMOUNT BILLED | REASON FALSE |
|---|---|---|---|---|
| 62 | 11/17/03 | C.R.<br>11/7/03 | $150.00 | ghost visit |
| 63 | 11/28/03 | C.R.<br>11/11/03 | $150.00 | upcoding |
| 64 | 10/15/03 | M.R.<br>9/10/03 | $150.00 | upcoding |
| 65 | 3/16/03 | L.S.<br>3/6/03 | $150.00 | upcoding |
| 66 | 11/10/03 | L.S.<br>10/23/03 | $150.00 | ghost visit |
| 67 | 3/7/03 | A.W.<br>2/13/03 | $150.00 | upcoding |
| 68 | 10/15/03 | A.W.<br>9/4/03 | $150.00 | upcoding |
| 69 | 4/25/03 | Ki.W.<br>3/12/03 | $150.00 | upcoding |
| 70 | 7/11/03 | R.W.<br>6/10/03 | $150.00 | ghost visit |
| 71 | 10/3/03 | R.W.<br>6/24/03 | $150.00 | ghost visit |
| 72 | 8/30/03 | R.W.<br>7/2/03 | $150.00 | ghost visit |

All in violation of Title 18, United States Code, Sections 1347 and 2.

**COUNTS SEVENTY-THREE THROUGH EIGHTY-TWO**

**(FALSE DOCUMENTATION)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 15 and 17 through 25 of Counts One through Thirteen are incorporated here.

2. In or about 2004, Blue Cross commenced an audit of defendant WILLIAM KING based on his exceedingly high rate of billing for complex consultations. In response to Blue Cross' demand for medical files for some of his patients, defendant KING did not provide the true patient files. Instead, defendant KING created sets of phony records for some of these patients, and provided these falsified files to Blue Cross, in an effort to justify his fraudulent claims for these patients.

3. On or about June 29, 2004, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**WILLIAM KING, M.D.,**

in a matter involving Blue Cross, a health care benefit program, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, in connection with the delivery of and payment for health care benefits, items, and services, in that, in connection with an audit by Blue Cross of his billing, defendant KING presented to Blue Cross false, fraudulent, and fictitious records as to each of the patients' medical records set forth below (each patient's chart constituting a separate count of this indictment), representing that such records were true records of visits made at or near the time of the visit, when, as defendant knew, he had just created these fraudulent records solely to present to Blue Cross in an attempt to justify his billings once he learned of the audit:

| COUNT | PATIENT | APPROXIMATE DATES OF FALSELY DOCUMENTED VISITS |
|---|---|---|
| 73 | B.A. | 3/22/02; 4/10/02; 5/10/02; 7/1/02; 10/3/02; 1/9/03; 4/11/03; 4/17/03; 6/18/03; 6/30/03; 7/7/03; 8/18/03; 10/21/03 and 10/31/03 |
| 74 | V.B. | 1/22/02; 2/12/02; 3/13/02; 8/7/02; 8/14/02; 9/18/02; 3/20/03; 3/24/03; 7/2/03; 8/8/03; 9/4/03; 9/25/03 and 11/17/03 |
| 75 | L.B. | 1/2/02; 1/7/02; 4/29/02; 5/29/02; 6/28/02; 8/26/02; 11/4/02; 11/11/02; 11/17/02; 11/21/02; 11/27/02; 12/17/02; 1/2/03; 3/6/03; 5/5/03; 9/12/03 and 11/21/03 |
| 76 | C.E. | 3/22/02; 4/10/02; 5/10/02; 7/1/02; 10/3/02; 1/9/03; 4/11/03; 4/17/03; 6/18/03; 6/30/03; 7/7/03; 8/18/03; 10/21/03; and 10/31/03 |
| 77 | K.H. | 6/26/02; 8/30/02; 9/6/02; 9/13/02; 3/14/03; 3/21/03; 4/4/03 and 4/17/03 |
| 78 | Y.H. | 1/2/02; 4/1/02; 4/5/02; 4/15/02; 7/8/02; 7/23/02; 10/8/02; 1/10/03; 4/2/03; 5/6/03; 5/14/03; 8/8/03 and 11/7/03 |
| 79 | N.H. | 1/28/02; 2/8/02; 6/17/02; 6/27/02; 10/10/02; 10/21/02; 4/21/03; 5/5/03; 5/13/03; 6/19/03; 6/26/03; 7/15/03; 10/13/03 and 10/27/03 |
| 80 | P.M. | 1/25/02; 8/1/02; 10/2/02; 1/9/03; 1/23/03; 2/5/03; 2/19/03; 3/27/03; 3/31/03; 4/7/03; 6/10/03; 7/10/03; 10/16/03; 10/22/03 and 11/7/03 |
| 81 | J.P. | 2/13/02; 5/17/02; 6/7/02; 8/15/02; 10/21/02; 11/15/02; 1/15/03; 1/22/03; 1/31/03; 2/5/03; 2/13/03; 3/14/03; 5/14/03; 8/15/03; 8/18/03; 10/22/03 and 11/20/03 |
| 82 | C.R. | 3/8/02; 5/13/02; 5/22/02; 7/3/02; 7/17/02; 10/16/02; 4/1/03; 4/10/03; 4/21/03; 5/15/03; 7/31/03; 10/30/03; 11/7/03; 11/11/03 and 11/19/03 |

All in violation of Title 18, United States Code, Section 1038

**NOTICE OF FORFEITURE**

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 1347, set forth in this indictment, defendant **WILLIAM KING** shall forfeit to the United States of America any property that constitutes or is derived from gross proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $639,578.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court; or

(d) has been substantially diminished in value;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

**A TRUE BILL:**

**GRAND JURY FOREPERSON**

**PATRICK L. MEEHAN**
**UNITED STATES ATTORNEY**