IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 08-66** |
| **WILLIAM KING, M.D.** | : | |

## ORDER

AND NOW, this           day of                  , 2008, upon consideration of the defendant's motion to suppress his statements, and the government's response thereto, it is hereby **ORDERED** that the motion is **DENIED.**

                                               **BY THE COURT:**

                                               **HONORABLE ROBERT F. KELLY**
                                               *United States District Judge*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 08-66 |
| WILLIAM KING, M.D. | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS HIS STATEMENTS

The United States of America, by Laurie Magid, Acting United States Attorney for the Eastern District of Pennsylvania, and Bea Witzleben and Maureen McCartney, Assistant United States Attorneys, hereby opposes the defendant's motion to suppress his statements.

I. **INTRODUCTION**

The defendant stands charged with a 4½-year fraud scheme arising from his actions while providing medical services at the Health and Welfare Clinic ("the Clinic") maintained by and on behalf of the members of the American Federation of State and City Municipal Employees District Council 33 ("the Union") at 3001 Walnut Street, Philadelphia.  As the government's pretrial filings make clear, the government's evidence will show that the defendant: 1) fraudulently billed for more expensive services than he actually provided; 2) fraudulently billed for visits that did not occur ("ghost visits"), and 3) fabricated medical records for 10 patients and supplied those records to the insurance company when the insurance company commenced an audit of the defendant.  Trial is scheduled for Monday, October 6, 2008.

**II.     DISCUSSION**

During the investigation in this case, federal search warrants were executed on the defendant's office at the Clinic and on his home in Baltimore, Maryland. Prior to the execution of the warrant on the defendant's office, federal law enforcement agents visited the defendant at his apartment in New Jersey. The agents advised the defendant that he was not under arrest, and asked his cooperation in the impending execution of the search warrants on his home in Maryland and his office at the Clinic. The agents explained that if the defendant chose to cooperate, it was likely that fewer people at the Union would be aware of the search.[1]

The defendant, who at no time was either physically restrained or detained by the agents, chose to cooperate with the investigators. After speaking to the agents in his apartment for over an hour, the defendant then drove one of the FBI agents in the defendant's own car to the Clinic to let the agents in and show them the location of the records called for by the warrant.[2] During the period when the agents were in his home, and while driving to the Clinic, and while the agents were collecting records at the Clinic, the defendant spoke with the agents. When the agents finished collecting the records, they left, with the defendant remaining at the Clinic. The defendant now apparently regrets having spoken to the agents, and moves to suppress the statements he made, alleging that he was "unlawfully and illegally questioned and/or interrogated in violation of his constitutional rights."  Def. Mot. at 1.

---

[1] The agents had reason to believe that the defendant might wish to give evidence about alleged corruption at the Union.

[2] The defendant also called his wife, who was at their home in Maryland, and advised her to answer the door to admit the agents who were then outside of that location with the warrant for the home.

The defendant seems to base his motion on the mistaken premise that law enforcement agents are required to give warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 444 (1966), whenever they encounter, and then ask questions of, a suspect. It is, however, axiomatic that the rights established in Miranda apply only to "custodial" interrogation. The Supreme Court has made clear that "[law enforcement] officers are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Rather, to protect a suspect's Fifth Amendment right against self-incrimination, Miranda warnings are required only where the suspect is subjected to "custodial interrogation." Miranda, 384 U.S. at 444. See also, e.g., Mathiason, 429 U.S. at 494; Beckwith v. United States, 425 U.S. 341, 345-7 (1976)(warnings not required where IRS agents conducted interview of taxpayer at home).

The test for whether questioning is "custodial" is whether a reasonable person would have felt free to terminate the encounter and leave, e.g., Yarborough v. Alvarado, 541 U.S. 652, 663-65 (2004), and the defendant bears the burden of proving that he was in custody. See United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984).[3] In this case, the defendant offers no information which suggests that a reasonable person would have believed himself in custody. Indeed, the defendant does not even contend that he himself believed that he was not free to end the encounter.

In this case, the defendant was expressly advised that he was not under arrest, and the interview took place primarily in the defendant's own apartment (rather than at a police station),

---

[3] "[T]he ultimate inquiry is: 'whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" United States v. Leese, 176 F.3d 740, 743 (3d Cir.1999)(quoting California v. Beheler, 463 U.S. 1121, 1125 (1993)) (quoting Mathiason, 429 U.S. at 495).

3

and in his own car, while the defendant himself drove.  The entire encounter took only a few hours,[4] and no agent drew a weapon or used any physical restraint at any point.  In light of the defendant's age, level of education, and his actions at the time - including especially his decision to remain with the agents and accompany them to the Clinic -  it is clear that the defendant will not be able to make the requisite showing,[5] and that his motion to suppress his statements must be denied.

### III.	CONCLUSION

For all of the reasons set forth above, the defendant's motion to suppress his statements should be denied.

>	Respectfully submitted,
>
>	LAURIE MAGID
>	Acting United States Attorney
>
>
>	BEA L. WITZLEBEN
>	MAUREEN MCCARTNEY
>	Assistant United States Attorneys

---

[4]  The FBI case agent noted that the encounter began at approximately 6:15 a.m., and the agents left the Clinic with the records at approximately 9:45 a.m.  Courts have found interrogations lasting anywhere from 1.5 to 7 hours to be non-custodial.  See Beckwith, 425 U.S. at 342-45 (three hours).

[5]  In one passing reference in his motion, the defendant might be understood to suggest that somehow his statements were involuntary, see Def. Mot. at 2  ("physical and psychological coercion").  However, the use of psychological tactics in eliciting a statement does not render a confession involuntary.  Hayes v. Washington, 373 U.S. 503, 514-15 (1963) (interrogator may play on the suspect's sympathies or explain that honesty might be the best policy for a criminal who hopes for leniency).  Under the circumstances in this case, it is clear that the defendant's statements were voluntary.

CERTIFICATE OF SERVICE

I certify that on this the     day of       2008, I caused this pleading to be electronically filed and Served upon the following by first class mail:

Terry Pugh, Esquire
Gerald Ingram, Esquire
1315 Walnut Street
Suite 800
Philadelphia, PA 19107

BEA L. WITZLEBEN
Assistant United States Attorney