UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA


| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:08-CR-00066-RK-1 |
| | ) | |
| vs. | ) | Philadelphia, PA |
| | ) | July 24, 2009 |
| WILLIAM KING, M.D., | ) | |
| | ) | |
| Defendant. | ) | |


TRANSCRIPT OF SENTENCING HEARING

BEFORE THE HONORABLE ROBERT F. KELLY

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        BEA WITZLEBEN, AUSA

MAUREEN MCCARTNEY, AUSA

OFFICE OF THE UNITED STATES ATTORNEY

615 Chestnut Street

Suite 1250

Philadelphia, PA 19106


For the Defendant:        LARRY A. NATHANS, ESQ.

ROBERT W. BIDDLE, ESQ.

NATHANS & BIDDLE LLP

120 East Baltimore Street

Suite 1800

Baltimore, MD 21202

TERRY L. PUGH, ESQ.

TERRY L. PUGH AND ASSOCIATES

1315 Walnut Street

Suite 800

Philadelphia, PA 19107

ESR Operator:        Thomas Garrity


Proceedings recorded by electronic sound recording.

1

2                          I N D E X

3                     E X H I B I T S

4                          RULINGS

    Sentence                Page    Line

5   Term of Imprisonment:   58      25

    Thirty-Six Months

6   Supervised Release:     59      2

    Three Years

7   Restitution in the      59      22

    Amount of $780,151

8   Fine:  $12,500          60      4

    Special Assessment:     60      18

9   $8,200

10

| No. | Description | Marked | Admitted |
|-----|-------------|--------|----------|
| 3 | Letter from Mr. Ronald Johnson | | 37 |
| | Letter from Dr. Nathan Allen | | 37 |
| 12 | Letter from Mr. Randall Chilson | | 37 |
| | Letter from Mr. John House | | 37 |
| | Letter from Dr. Harris | | 37 |
| 19 | Letter from Mr.& Mrs. Stephenson | | 37 |
| 20 | Letter from Mr. Watson | | 37 |
| 25 | Letter from Laresha King | | 37 |
| 26 | Letter from Mr. Canonaro | | 37 |
| 27 | Letter from Alicia King | | 37 |
| 28 | Letter from Dr. Edup | | 37 |
| 29 | Letter from Ms. Russell | | 37 |
| | Life Experience Photographs | | 37 |

18

19

20

21

22

23

24

25

1          THE CLERK:  (Audio begins midsentence) United States

2     Court in and for the Eastern District of Pennsylvania may now

3     appear and he shall be heard.  God save the United States of

4     and this Honorable Court.  The Honorable Robert F. Kelly

5     residing.  Please be seated.

6          MS. WITZLEBEN:  Good morning, Your Honor.

7          MS. MCCARTNEY:  Good morning, Your Honor.

8          MR. BIDDLE:  Good morning.

9          MR. NATHANS:  Good morning, Your Honor.

10         THE COURT:  Good morning.

11         MS. WITZLEBEN:  Yes, good morning.  Bea Witzleben,

12    Your Honor, for the United States.  With me is Maureen

13    McCartney, also from the U.S. Attorney's office.  I have at

14    counsel table David Bole from the FBI and Postal Inspector

15    Theresa Ryan.

16         THE COURT:  Okay.  Thank you.

17         MR. BIDDLE:  Good morning, Your Honor, Robert Biddle

18    for Dr. William King who's seated next to me in the courtroom.

19    There're also a number of additional people here who have

20    written letters to the Court and at the appropriate time I'd

21    like to introduce them to Your Honor and reference the letters

22    that they wrote.

23         THE COURT:  Okay.  All right.

24         MR. BIDDLE:  It's possible and depending on the

25    Court's ruling and materials that we'll be providing to the

1    Court that we may have one or possibly two witnesses for the

2    hearing today.

3         THE COURT:  Okay.

4    (Pause)

5         THE COURT:  Have you gone over the presentence report

6    with your client?

7         MR. BIDDLE:  I have.  I've gone over it in great

8    detail, Your Honor.

9         THE COURT:  And, Dr. King, have you gone over the

10   report?

11        THE DEFENDANT:  Yes, sir.  Yes, Your Honor.

12        THE COURT:  You have objections?  Let's deal first

13   with the objection.

14        MR. BIDDLE:  Yes, Your Honor.  We filed a number of

15   objections in our previously filed documents and I think they

16   ninety-nine percent lay out the contours of our position today

17   for the Court.  With respect to the guidelines which I assume

18   Your Honor will address in the first part of the sentencing

19   hearing?

20        THE COURT:  Um-hum.

21        MR. BIDDLE:  We are objecting to the offense level 27

22   calculation that the probation office entered into and we

23   contend that the proper guidelines level is offense level 21.

24   Specifically, that three enhancements that the probation

25   office have recommended that the Court apply in fact do not

1    apply in this case.  There's one for two levels --

2           THE COURT:  Okay.

3           MR. BIDDLE:  -- for obstruction of justice.

4           THE COURT:  But, normally I would deal with the

5    objections first.

6           MR. BIDDLE:  Okay.

7           THE COURT:  And, then --

8           MR. BIDDLE:  Okay, I'll --

9           THE COURT:  -- then we will indicate the guideline

10   calculation.

11          MR. BIDDLE:  Okay, certainly.

12          THE COURT:  Okay.

13          MR. BIDDLE:  So, the basis for our objections are as

14   follows, Your Honor, and I'm supplementing what's already in

15   the record.

16          THE COURT:  Right.

17          MR. BIDDLE:  Sophisticated means, the probation

18   office concluded that the sophisticated means enhancement in

19   the sentencing guidelines applied here but the Third Circuit,

20   in an analogous case which is cited in our papers, I think it

21   was Cianci, discussed a similar enhancement for the tax

22   guidelines and said that these kinds of enhancements really

23   only apply when the sophistication is atypical for the offense

24   outside the heartland, if you will.  And, Your Honor, when you

25   look at the case law which we've cited extensively in our

1  papers, there wasn't anything particularly sophisticated in a

2  health care fraud violation, Your Honor.  Remember, this is

3  the kind of offense that Columbia/HCA, the health care chain's

4  has been investigated for.  Enormous health care providers

5  around the country have been investigated or charged with

6  either civilly or criminally.  And inherently, in order to

7  commit a health care fraud offense, there needs to be some

8  wrong codes submitted and there needs to be some records that

9  don't support those codes or are falsified.  That's how this

10  crime is committed, Your Honor.  Just like to rob a bank as

11  far as use of force, there needs to be either a note

12  threatening the use of force or there needs to be a firearm

13  display.  That's integral in the offense.

14      When you look at the conduct that Dr. King's been

15  found guilty of, specifically of using a wrong code;

16  knowingly, willfully, intentionally was convicted of using a

17  wrong code and then a number of acts of covering it up,

18  submission of ten false patient records.  Those are the kinds

19  of things, Your Honor, that are typical in health care fraud

20  violations.  They're just not extraordinary.  When you look at

21  the cases they talk about offshore bank accounts, in fact

22  that's what the guidance in the guidelines talks about.  The

23  guidance says that this is the kind of case, the kind of fraud

24  offense; multiple identities, use of the Cayman Islands, that

25  kind of thing.  This case isn't remotely of that

1    sophistication.  You've got the wrong code, used year after

2    year after year.  You've got the start of an audit.  You've

3    got records that were falsified.  The jury found that that

4    were submitted in the course of the audit.

5         So, for that reason, Your Honor, the case law, the

6    Third Circuit case law, the guidelines, application note,

7    we've been laboring under the guidelines for twenty-two years

8    I think now.  I think it's pretty clear we contend that this

9    is simply not a sophisticated means offense.  So, that would

10   lower it from 27 to 25.  Do you want me to --

11        THE COURT:  No --

12        MR. BIDDLE:  --turn to the other --

13        THE COURT:  -- I'd like to hear from the

14   government --

15        MR. BIDDLE:  Okay.

16        THE COURT:  -- in response and we're talking about

17   objection number 1 so that the --

18        MS. MCCARTNEY:  Yes, Your Honor.

19        MR. BIDDLE:  Yes, Your Honor.

20        THE COURT:  -- record is clear.

21        MS. MCCARTNEY:  And I just want clarification for the

22   court defense counsel in their sentencing memo also raise the

23   other issues with regard to this particular enhancement and I

24   don't know whether the Court wants me to address them or not.

25   The fact that this enhancement could not be applied in

1    conjunction with other enhancements, and I don't know whether

2    the Court wants me to address that or just the factual basis

3    for the enhancements.

4         THE COURT:  Yeah, I'd like to hear.

5         MS. MCCARTNEY:  Okay.

6         THE COURT:  I'd like to deal with the whole thing at

7    one time so that we don't -- yeah.

8         MS. MCCARTNEY:  Well, Your Honor, then, just

9    beginning with that because I think that can be easily

10   disposed of.  The defense, in their memo, raised the argument

11   that the enhancement could only -- would not apply because of

12   it was double counting because the behavior is already part of

13   the health care fraud conviction.  Here the defendant is

14   clearly wrong, Your Honor, this enhancement is meant to

15   increase the punishment based upon the methodology used in

16   bringing about the fraud.

17        If one were to accept the argument raised by the

18   defense, there could be no enhancement for any type of fraud

19   because the argument would be that the fraud itself is enough

20   and it would cover the enhancement with regard to

21   sophisticated means.  And we know that that's just not the

22   situation.  He also raises, in his memo, the fact that the

23   conduct -- that you can't apply two separate enhancements

24   under the guidelines and that is also, Your Honor, just flat

25   out not true because the guidelines, unless they specifically

1   exclude enhancements being given in tandem, they are -- they

2   can and should be applied separately.  So with regard to those

3   two issues I think the defense's memo is incorrect in their

4   assertions there.

5          With regards to the factual scenario in this case,

6   Your Honor, the defendant's methodology in perpetrating this

7   fraud did, in fact, involve sophisticated means.  Unlike the

8   defense contention that it was simply submitting bills, false

9   claims to an insurance company, this involved much more.  In

10  this case, as the Court probably recalls, the defendant, when

11  he was in his medical practice, he would ask the patients when

12  they came in to submit three separate forms.  One, a patient

13  information form, two, he would ask them to submit their

14  insurance card which would be scanned on top of a referral

15  form and then they would also complete the top portion of a

16  medical record.  Those documents, with the exception of the

17  medical record, were submitted to Blue Cross when the bills

18  were submitted.  Here the defendant was convicted by the jury

19  not only of health care fraud for upcoding but also for ghost

20  visits.  And when he submitted those bills to Blue Cross with

21  regard to those ghost visits, he sat down in his office, Your

22  Honor, he completed those forms that the patient had not,

23  because they weren't there; he also would write on that

24  patient information form, even on the ghost visits, a

25  diagnosis, giving rise to the thought that this patient had

1    actually been seen and treated by him and thereby trying to

2    avoid suspicion being raised with the billings that he'd

3    submitted.

4          They are exactly the types of situations that

5    involved execution and planning that is envisioned by the

6    enhancement and it is applicable here, Your Honor.  In

7    addition to that, when the defendant was called for an audit,

8    he deliberately created, whole cloth, a new set of medical

9    records, not the ones that he normally capped, three pages

10   which included very, very detailed information that he made up

11   to put on those records to give rise to the auditor's belief

12   that they were actually patient visits and this is what he did

13   during the portion of the visit.

14         This was all done in the attempt to avoid punishment

15   or avoid being caught for the fraud that he was perpetrating.

16   The methodology that he used clearly involved sophistication.

17   Now, the defense wants to make it seem like all he did was

18   submit bills but, Judge, you know, from having sat through the

19   trial, the transcript is clear that he did much more than

20   that.  And it is the situation that is completely envisioned

21   by this rule.  The cases that defense cites are not -- this is

22   a very factually determined enhancement based upon the facts

23   presented in individual cases.  The comments to this section

24   clearly, and the case law supports, are not an exclusive list

25   that the courts have to determine on a case by case basis --

1          THE COURT:  Okay.

2          MS. MCCARTNEY:  -- what involves sophistication.  So

3     I would submit to you, Your Honor, that this enhancement

4     should be applied.

5          THE COURT:  Thank you.  This is -- and what we're

6     talking about is objection number 1 which really refers to

7     paragraph 95 of the presentence report and that would add two

8     offense levels for the use of sophisticated means in the

9     commission of this crime and the definition of sophisticated

10    means in the guidelines means especially complex or especially

11    intricate offense conduct pertaining to the execution or

12    concealment of an offense.  For example, conduct such as

13    hiding assets or transactions or both ordinarily indicate

14    sophistication or sophisticated means.

15         His attempt to conceal the upgrading with the ghost

16    visits from Blue Cross when he created ten patient files; gave

17    those to the audit team.  The difficulty in dealing with what

18    he created for the audit team in order to evade detection in

19    my view brings this within the area of sophisticated means and

20    the two point enhancement and I take note of the fact too that

21    that this conduct is also -- a lot that conduct is also the

22    conduct charged in Counts LXXIII-LXXXII.  So the objection in

23    number 1 is denied.

24         Number 2 is -- defense may address that.

25         MR. BIDDLE:  Your Honor, actually I forget the order

1    whether -- it was sophisticated --

2            THE COURT:  All right, I'll give it to you.

3            MR. BIDDLE:  -- special skill or obstruction.

4    I'll -- I can --

5            THE COURT:  That it did not involve special skill.

6            MR. BIDDLE:  Okay.  Our argument's very brief on

7    this, Your Honor, basically that this enhancement should be

8    applied where the carrying out of this -- the offense was

9    integral to the skill, special skill that the person had, for

10   example in a murder case where the -- a doctor prepared a

11   poison and the knowledge of the doctor was required to prepare

12   the poison or transporting narcotics from overseas, the

13   pilot's special skill as a pilot was used.

14           We contend that the res gestae, if you will, to use

15   that old term, the essence of the offense here was purposeful

16   incorrect billing which is an administrative act; it doesn't

17   involve patient care.  It involves providing false bills to

18   the insurance company and that as a result, since these acts

19   involve the administrative aspect of the practice of medicine

20   that they aren't the type of conduct that would be covered by

21   the special skill of the incident.  The other reasons are set

22   forth in our papers but just -- I want to briefly touch on

23   what we believe is the pivotal issue here for the Court to

24   decide.  Thank you.

25           THE COURT:  Okay.  I'll hear from the government with

1  regard to the two point enhancement for the use of special

2  skills.

3      MS. MCCARTNEY:  Yes, Your Honor, again, I think that

4  the Court needs to and clearly has recalled the testimony at

5  trial and the exhibits that were -- that was submitted in

6  trial, particularly with regard to the ten patient files that

7  the defendant sat down and created.  They involved great

8  detail, all fraudulent detail, but great detail nonetheless,

9  that only someone that possessed the special skills that a

10  doctor gained in medical school and through their years of

11  practice in the field of medicine would have been able to lead

12  to -- to try to create a situation that they were authentic.

13      I mean, Your Honor, they dealt with situations where

14  he was allegedly performing breast exams, vaginal exams, pap

15  smears, sending the pap smears out for test results, coming

16  back with Ph levels, he was conducting rectal exams; I mean,

17  things that you or I, if we were to create a false medical

18  record, would not have the base of knowledge to be able to put

19  in to create the idea that these were actually authentic

20  medical records.  And when he sat down and did that, Your

21  Honor, he used the skills, the special skills that he had

22  acquired, types of skills that are envisioned by the

23  enhancement being given in order to perpetuate the fraud that

24  he was committing.

25      In addition to that, Your Honor, when he was creating

1    medical records, and the Court can probably recall this, there

2    was testimony from patients that the medical records that he

3    kept for visits that had actually occurred also included

4    indications of things that had not actually been done but they

5    gave the idea that a more extensive exam had been completed.

6    There was things -- patients that testified that although he

7    had written in a medical record that they were there for

8    reason X, they actually were there for reason Y and no type of

9    treatment for reason X was ever performed but again, the

10   defendant, in an attempt to conceal the fraud that he was

11   committing, was trying to make even those records, the ones

12   that he actually kept for real patients, seem more legitimate

13   than they actually were.  Again, utilizing skills not of a

14   medical biller, Your Honor, but of a doctor, acquired those

15   skills through his years of medical school and through his

16   years of practice.  And the government would submit that the

17   enhancement with regards to special skills is equally

18   applicable in this case.

19          THE COURT:  Okay.  Based upon the testimony that we

20   received at trial, I find that the offenses did involve the

21   use of medical training to concoct diagnoses for both

22   overbilled and ghost visits.  He created patient files and

23   that the medical training was required in order to commit and

24   conceal that offense.  Therefore objection number 2 is

25   overruled.

1           Objection number 3 is obstruction of justice.

2           MR. BIDDLE:  Yes, Your Honor, before I proceed, is

3     that -- a question for the Court.  I do have a request for a

4     downward departure on these enhancements and I could address

5     that now or I --

6           THE COURT:  Yeah, let's get finished with these

7     objections before we do.  .

8           MR. BIDDLE:  Okay.  Yes, Your Honor.  Okay.  With

9     respect to obstruction of justice, the basis for this

10    enhancement has evolved.  In the PSR it's laid out as

11    basically issues concerning Dr. King's communications with the

12    auditors, some of whom are in the courtroom today, and

13    statements made about his wife.  In the government's latest

14    submission, that's to say the one, I believe that was filed

15    this week or last week, it seems that the position of the

16    government on this enhancement is too full.  That the

17    destruction, the alleged destruction, which was not the

18    subject of a verdict by the jury, but the alleged destruction

19    of some thirty records that were subject to IBC audit is the

20    basis for the obstruction of justice enhancement and secondly

21    that my client's communications with his former lover,

22    Christine Rayo (ph.) were in some way obstruction of justice.

23    That's what I understand.

24          If there's some other basis perhaps the government

25    can cover that but with respect to those two points, the

1   government contends that with respect to the destruction of

2   the thirty files that it doesn't matter that my client was

3   unaware of there being a federal investigation at the time

4   that the files were destroyed and it relies on a Third Circuit

5   case called Jenkins which is actually an outlier, Your Honor.

6   Our objection was, for the Court, that you can't an enhance a

7   defendant's sentence for obstruction of justice where that

8   conduct takes place before a federal investigation begins and

9   in Jenkins, the Third Circuit had a case in the late '90s,

10  before the guidelines were changed, and in that case there was

11  a state law enforcement investigation under way.  And there

12  was evidence that the defendant, knowing that the state law

13  enforcement investigation was under way, obstructed justice.

14  Then eventually that state investigation, the record's a

15  little murky, was superseded by a federal investigation.

16          In this case, unlike Jenkins, there's no evidence

17  that there was any law enforcement investigation under way

18  assuming that the destruction of these thirty files took

19  place.  Let's just assume for this argument that the

20  government's factually correct.  There's no evidence in the

21  record that at that time, okay, there was any law enforcement

22  investigation under way.  So this is not Jenkins.  The

23  government says, Your Honor, you can rely on Jenkins, this ten

24  year old Third Circuit precedent.  They rely on that to say

25  there doesn't -- apparently there doesn't need to be any

1    federal investigation under way whatsoever but that's really

2    not how the -- certainly the sentencing commission read it

3    because eight years after Jenkins was decided, they

4    specifically amended the guidelines in 2006, three years after

5    my client's last act subject to his conviction was committed,

6    to say under certain specific circumstances, conduct occurring

7    before a federal investigation -- a federal law enforcement

8    investigation begins can be the basis for the enhancement

9    where it materially affects the investigation.  So apparently

10   the sentencing commission, with all due respect to them,

11   didn't agree with the Third Circuit's reading of it's own

12   guidelines because they felt the guidelines had to be changed

13   to address this issue.

14        So, Your Honor, we contend that the governing Third

15   Circuit law really doesn't control this question.  The

16   probation office's summary of the investigation of this

17   offense, as the Court sees in the PSR, is laid out very

18   clearly.  IBC audit, federal investigation.  All the acts,

19   according to the PSR, that took place during the IBC audit are

20   the ones that relate to the thirty files.  This wasn't the

21   destruction of records, Your Honor, where the prosecutors had

22   served a HIPAA subpoena on my client or had served a grand

23   jury subpoena on my client, or had served some kind

24   administrative subpoena on my client.  Instead it was a run of

25   the mill inquiry by some auditors that occur throughout this

1   country.  To accept the enhancement on those facts here would

2   be to federalize conduct in response to any carrier or fiscal

3   intermediary's conduct.  That's not at all what the commission

4   had in mind and the other circuits that have been very clear,

5   frankly a little bit more clear than the Third Circuit, in

6   saying if the conduct occurred before 2006 and occurred before

7   the federal law enforcement investigation began, we don't want

8   to hear about an enhancement.  We're not going to accept

9   enhancements based on those facts.

10          So, Your Honor, we contend that with respect to one

11  of the two prongs of the government's argument here that

12  simply the facts don't support it and the law doesn't support

13  it and the sentencing commission's own guidelines don't

14  support it.  To apply this enhancement based on the

15  destruction of the thirty files on the 2006 guidelines manual

16  would be a ex post facto enhancement.  The guidelines were

17  amended in 2006 to say okay, we'll now allow conduct before a

18  federal investigation begins to be the basis of this

19  enhancement.  But Dr. King's last acts were in 2003 and it's

20  just hornbook law, under our twenty-two years of the

21  guidelines, that you can't have these ex post facto

22  enhancements.  In fact the Kopp case, there is a similarly old

23  Third Circuit case like Jenkins and it said back in the

24  '90s --

25          THE COURT:  All right, let's hear from the

1    government.

2         MR. BIDDLE:  Okay, Your Honor, I have another issue

3    with the guidelines but --

4         THE COURT:  What other -- you mean on the --

5         MR. BIDDLE:  Obstruction.

6         THE COURT:   -- obstruction?

7         MR. BIDDLE:  I do.  I do.  And let me just stand up

8    to the court.

9         THE COURT:  Well, let's get to it then.

10        MR. BIDDLE:  Yes, Your Honor.

11      (Pause)

12        THE COURT:  Yes, what is it.

13        MR. BIDDLE:  I've handed the Court -- yes, what's

14   been marked are Exhibit 43 which I provided to the government

15   earlier today.  The other prong of the enhancement that the

16   government relies on is the conversation that Ms. Rayo

17   testified to at trial in a very brief fashion, Your Honor.

18   The Court will recall that one of the trial attorneys was

19   unable to cross-examine this witness because he had previously

20   represented the witness.  So there was a very curtailed, very

21   brief cross-examination of Ms. Rayo.  She -- the government

22   characterized her testimony as indicating I spoke to Dr. King

23   and he was trying to get me to lie to the FBI.  Time wise

24   there's no question, this call took place during a federal

25   investigation.  The question is what did Ms. Rayo understand

1    was going on.  She told my investigator on a phone call that

2    she didn't understand that Dr. King was asking her to do

3    anything wrong.  My investigator's in the -- outside the

4    courtroom.  She's available to testify.  She's written a

5    report which recounts her conversation with Ms. Rayo where Ms.

6    Rayo basically says "I didn't understand that I was being told

7    to do anything illegal".  On that basis, Your Honor, the

8    government cannot show by a preponderance of the evidence that

9    there was obstructive conduct in that phone call.  The Court

10   has the trial transcript which the government sent to the

11   Court this past week.

12        THE COURT:  I read it before they sent it.

13        MR. BIDDLE:  And then the report by my investigator,

14   who's available to testify.  On that basis, there's an

15   insufficient factual basis to make the enhancement.  Those are

16   our two arguments.

17        THE COURT:  Yes.

18        MS. MCCARTNEY:  Your Honor ,let me first address

19   counsel's dispute with regard to whether or not the guidelines

20   that were used to come up with the guidelines for Dr. King are

21   applicable to the obstruction of justice enhancement.  There

22   is -- there was not in the guidelines that would have been

23   applicable to the time that the defendant committed the

24   destruction of the records which would be obstructive conduct.

25   There was no specific statement with regard to the pre-

1    investigation aspect of that conduct.  Having said that

2    however, Your Honor, this is a very open area of the law where

3    courts are evolving with regard to how they are viewing

4    guideline applications that occurred -- that take place at the

5    time the defendant committed the conduct versus the time when

6    the defendant was sentenced for the conduct.  And whether or

7    not those guidelines indicate ex post facto considerations.

8         There was a recent case in New York, Your Honor,

9    where the court specifically held that post Booker, when the

10   guidelines are no longer mandatory, where they are basically

11   only advisory documents, that there can be no ex post facto

12   considerations because that prohibition only applies to laws

13   that are binding and since the guidelines are no longer

14   binding that is not a consideration for the guidelines and

15   there have been any other circuits that have adopted that same

16   view:  The Second Circuit, the Fifth Circuit and the Eleventh

17   Circuit.

18        The Third Circuit has not specifically addressed that

19   argument as it relates to the guidelines in that using the

20   analyses that have been used in the Second Circuit, in the

21   Third Circuit and the Eleventh Circuit but we don't even need

22   to get to that issue, Your Honor, because based upon the

23   testimony offered by Ms. Rayo in this courtroom, under oath,

24   at trial, where she was specifically asked with regard to what

25   the conversation that took place after receiving a phone call

1　from the FBI, calling the defendant to tell him that she had

2　received that call from the FBI so there could be no dispute

3　that a federal investigation had started and what the

4　defendant had told her to tell the FBI was that the patient

5　visits that he undertook in his office lasted between forty-

6　five minutes and an hour.  And she testified in court and she

7　testified what she told Agent Boles when she hung up the phone

8　and called him; that's not true.  He counseled her to lie,

9　Your Honor, because at that point he was aware of the federal

10　investigation.  He was attempting to make it appear as if the

11　visits that his patients were undergoing in his office were

12　much more complex thereby giving rise to the fact that he

13　could legitimately have been billing the code that he was.

14　That is obstructive conduct.  Application note number 1 in the

15　commentary makes that clear and we would submit that that

16　enhancement is clearly made out.

17　　Additionally, Your Honor -- and there's testimony

18　that could be offered in this courtroom if the Court feels

19　it's necessary that Dr. King also lied to a federal agent when

20　he was interviewed with regard to this at the time that the

21　search warrant was undertaken.  But I don't think it's

22　necessary, Your Honor, given the transcript that clearly

23　states what Miss Rayo said.  And it also said, Your Honor --

24　and Ms. Rayo -- and she puts in her letter and I think she

25　testified to it at trial, she cared about the defendant, she

1    still cares about the defendant.  So the letter that was

2    submitted by the defense, I would suggest should be given

3    little weight.  You have her trial testimony, under oath,

4    subject to perjury.

5          THE COURT:  I do not think it's necessary to take any

6    additional testimony on that issue.  I reviewed Christine

7    Rayo's testimony in this past week and I recall her testimony.

8    I think there was an attempt at trial to show that there was

9    ill feeling between she and the defendant to attempt to

10   discredit her testimony and I felt that she was very credible

11   and showed no animosity toward the defendant because of their

12   past association.  And that her testimony that Dr. King told

13   her first that she didn't have to talk to the FBI, as I

14   recall, and that the visits were between forty-five minutes

15   and one hour on page 242 of that testimony was an attempt to

16   obstruct justice and the request for the two point enhancement

17   based on that is granted and it is based solely on Rayo's

18   testimony.  Objection number 4 is sort of a summary.  Do you

19   agree, Mr. Biddle?

20         MR. BIDDLE:  Yes, Your Honor, and objection 5 we're

21   dropping.

22         THE COURT:  Okay.

23         MR. BIDDLE:  And I do -- would like to be heard on

24   the downward departure but if the Court wants me to argue that

25   here.  It's separate than a variance; it's just with respect

1    to these enhancements.

2              THE COURT:  I'm sorry, I --

3              MR. BIDDLE:  My argument on the downward departure is

4    separate from the variances.  It just relates strictly to the

5    guidelines and these three enhancements.

6              THE COURT:  All right.

7              MR. BIDDLE:  Your Honor, the defendant's conduct --

8    the Court's found that the three enhancements apply and we

9    accept that.

10             THE COURT:  Um-hum.

11             MR. BIDDLE:  But we contend that they just barely

12   apply.  For example, his conduct was not extremely

13   sophisticated.  The Court's found that it did meet the

14   criteria, but it's not the use of offshore bank accounts, it's

15   Bernie Madoff; it's not those kinds of high profile financial

16   fraud cases where the enhancement clearly applies and that are

17   the mainstream.

18             In that sense, Your Honor, it falls outside of the

19   heartland of those cases where these kinds of enhancements

20   apply.  By analogy, Your Honor, it's like overrepresentation.

21   The specific guidelines references 5K2.0 which is an outside

22   the heartland departure.  The Court can find that the

23   defendant's conduct in committing these enhancements and

24   committing the conduct that fits these enhancements isn't

25   typical of the defendants that do find themselves subject to

1    those enhancements or alternatively that to apply those

2    enhancements overrepresents the severity of his conduct just

3    as the Court can find in criminal history cases, Dr. King has

4    no criminal histories, category 1, but the Court can find that

5    two or three prior convictions excessively enhanced the

6    criminal history score so that the Court's allowed to ratchet

7    back under the guidelines and I'm sure the Court's familiar

8    from its many years of experience with these cases.  So, we

9    ask the Court to find that somewhere between 21 and 27 in the

10   exercise in the Court's discretion which it has --

11        THE COURT:  How does this differ from using it as a

12   variant?

13        MR. BIDDLE:  The Court can consider it in a variance

14   as well.  I'm just -- factually, though, it's a different

15   argument.  The variance is based on his history as a mentor,

16   the help he's given youths in guiding them, the disadvantages

17   he had growing up and how he overcame them, his remorse and

18   his hepatitis C.  Those are -- those aren't bases for

19   departures; those are bases for variances.  I just wanted to

20   throw -- I wanted to raise this issue and preserve it for

21   appeal that there is a basis for a downward departure from the

22   three enhancements.  That's all.

23        THE COURT:  Okay.

24        MS. WITZLEBEN:  Thank you, Your Honor.  With respect

25   to the heartland's arguments, I think the Court is quite right

1    that there is a difference between an argument for a downward

2    departure, as the defendant has just advanced, and the

3    variance argument which I think his arguments might go to as

4    well.  He could certainly argue that those factors he cites,

5    his view that they are outside the heartland or perhaps less

6    sophisticated that some other defendant might use, means, for

7    example, less skill was required, those Your Honor, seem to me

8    to be a question of where within the guidelines the defense

9    would argue in the old days when the guidelines were mandatory

10   and would certainly be something one could argue in the

11   context of a variance.  Whereas the Court is no doubt aware

12   from the case law on the heartland departures there's a very

13   high standard for whether something falls outside the

14   heartland of the guidelines and nothing in this case fits

15   there, Your Honor.  The sophisticated means that he used, as

16   the Court has found, while perhaps not as sophisticated as one

17   could imagine, certainly fits right within the heartland of

18   that guideline.

19          Also the special skill; clearly his training as a

20   doctor was important to the method he chose to carry out this

21   particular fraud.  And finally with the obstruction, Your

22   Honor, there couldn't be anything more -- I think more

23   blatantly in the heartland.  When you ask another witness to

24   lie for you, that's obstruction.  So, Your Honor, we don't

25   think there's any basis for a departure.  Of course, counsel

1    could argue freely with regard to variances and with regard to

2    where in the guidelines the Court would set the range if the

3    Court gives a guideline sentence but we think this is clearly

4    within the heartland of each of those three enhancements, Your

5    Honor.

6              THE COURT:  Okay.  Mr. Biddle?

7              MR. BIDDLE:  Nothing further, Your Honor, it just

8    goes to the Court's --

9              THE COURT:  Yeah, I don't --

10             MR. BIDDLE:  -- benchmark.

11             THE COURT:  -- adhere to the departure argument.  All

12   right, finish with your presentation.

13             MR. BIDDLE:  Yes, Your Honor.  I'd like to turn

14   now -- I'm assuming the Court's found that the guideline range

15   is 27.

16             THE COURT:  It is.

17             MR. BIDDLE:  Is that right?  Okay.  Your Honor, we're

18   asking the Court to vary as it can under Tomko  and other two

19   Third Circuit precedents, Tomko being a recent en banc

20   decision, to guidelines level 12 which would provide for six

21   months incarceration, nine months home detention as a

22   provision of supervised release; so it would be a split

23   sentence.

24             There are four bases for this but the global bases,

25   which is not mentioned in the government's papers, neither

1    filing that the government provided quoted what we call the

2    "parsimony provision" which is that under 3553 the Court is

3    required, and this is reiterated in Booker, Fen-Phen, Rita,

4    Gall, all the precedents that I know the Court's been hearing

5    from, from the defense counsel for months.  The sentence, Your

6    Honor, has to be sufficient but not more than necessary to

7    meet the objectives of sentencing.  Sufficient, otherwise

8    enough, but not more than necessary to meet the purposes of

9    sentencing.  And we contend that that sentence, the sentence

10   at offense level 12, 6 months incarceration, 9 months home

11   detention, almost 500 hours of community service meets that

12   requirement.  That that would be a reasonable sentence.  And

13   that what the guidelines number is, in light of the objectives

14   of sentencing, in light of the defendant's personal history,

15   his accomplishments, his mentorship, his hepatitis C and his

16   remorse would be an unreasonable sentence.  That is to say, it

17   would substantively unreasonable.

18          Of course the Supreme Court has asked all district

19   courts in the county not to give any deference to the

20   guidelines.  The court, in fact -- the Supreme Court stated in

21   their cases that there's not any presumption that a district

22   court can give that a guideline sentence is reasonable.  The

23   Supreme Court said, I believe it's Justice Breyer, that yes,

24   on appeal there's a rebuttable presumption that a guideline

25   sentence is reasonable but in the district court there's no

1    presumption that it's reasonable and we contend that that

2    guideline sentence would be unreasonable in light of the

3    purposes of sentencing.

4           Let's begin and I'd like to start with the

5    defendant's personal history and his role as a mentor.  At

6    this point I would like to introduce the people that are in

7    the courtroom and remind the Court, if I could take a few

8    minutes, of what those people that are here wrote to the Court

9    about.

10          THE COURT:  All right.

11          MR. BIDDLE:  Because this is the defendant's personal

12   history.  This is his --

13          THE COURT:  All right, okay.

14          MR. BIDDLE:  -- up from his bootstraps life story

15   which shows that he doesn't need to be locked up for a long

16   time to keep him from committing further crimes or deter

17   others from committing crimes.  Thank you.  Mr. Johnson (ph.),

18   Mr. Ronald Johnson.  Your Honor, Ronald Johnson wrote a

19   handwritten letter to Your Honor.  He was on the track team

20   with the defendant and he described the role, the

21   inspirational role that the defendant played in his life and

22   how on an ongoing basis he personally is aware of the

23   mentorship that Dr. King has provided.  He described in his

24   letter a young athlete that Dr. King mentored and assisted and

25   that he had personal knowledge of.

1          THE COURT:  Okay.

2          MR. BIDDLE:  His letter was number 3.  Dr. Allen

3    (ph.), Dr. Nathan Allen.  Your Honor, Dr. Nathan Allen is with

4    Summit Developers in Cranford, New Jersey.  He previously

5    served as deputy regional director for the Department of

6    Justice during the late 1960s.  He was cited by Attorney

7    Generals Ramsey Clark and John Mitchell for sustained,

8    superior performance.  He described for Your Honor Dr. King's

9    upbringing, his life and his involvement.  He wrote to Your

10   Honor "Dr. King's efforts to achieve a college education and

11   serve as a blueprint for many of those trying to eliminate the

12   shackles sometimes associated with urban living.  His level of

13   scholarship positioned him to become admitted to Wayne State

14   University Medical School.  He performed exceptionally well

15   there and later developed his practice in the Pennsylvania and

16   Maryland areas.  He is competent, devoted to excellence in his

17   profession and I am honored to provide him this letter of

18   reference."  Thank you, Doctor.

19         THE COURT:  Thank you.  Yes?

20         MR. BIDDLE:  Mr. Chilson.  Mr. Chilson, as a young

21   man, was mentored by Dr. King and Mr. Chilson, if you could

22   say a few words about the role that Dr. King played in your

23   life.

24         THE COURT:  He'll have to come forward.

25         MR. CHILSON:  Okay.

1          MR. BIDDLE:  You can tell to His Honor how you got to

2    know Dr. King and what role he played in your life and your

3    educational career.

4          MR. CHILSON:  Hi, my name is Randy Chilson, Your

5    Honor.  I met Dr. King, probably about thirty years ago.  It

6    was through my ex-wife and our children actually met in school

7    and that's how we became friends.  Over the years Dr. King, he

8    stressed the importance of education to me and being in the

9    career that I was in, it didn't seem like it was important

10   because I was going very well but I listened to him and he

11   enabled me -- and encouraged me to finish my degree and

12   then -- I have a degree in information technology.  What that

13   did me for me is the family that I'm from, there's -- I have

14   twelve -- there's twelve of us.  No one had ever graduated

15   high school.  I graduated high school and then once Dr. King

16   encouraged me to finish college, what it did was my siblings

17   looked up to me.  So it broke the mold, it broke the st -- it

18   broke that situation where nobody would finish school and

19   it's -- from that point on it's really trickled down the line

20   to where three of my other sisters are in the process now of

21   getting their degrees and it's -- for Dr. King to go through

22   what he's going through right now, it's -- to me it's hard to

23   see and I would ask for you to be lenient.

24         MR. BIDDLE:  Thank you.

25         THE COURT:  Thank you.

1        MR. BIDDLE:  Your Honor, Mr. Chilson's letter was

2   Exhibit 12 that the Court received.  Mr. House (ph.)?  John

3   House?  Your Honor, Mr. House met Dr. King as a pharmaceutical

4   representative, he knew him professionally; he's currently a

5   senior district manager of a major pharmaceutical company.

6   He's a graduate of Morgan State College in Baltimore and he

7   stated, Your Honor, "I have always found Dr. King to be of the

8   highest ethical standards of behavior and professionalism in

9   his interactions with others, especially his patients.  He has

10  always been available to me for advice and guidance and

11  demonstrates compassion to all."

12        THE COURT:  Thank you.

13        MR. BIDDLE:  Dr. Harris.  Your Honor, Dr. Harris is

14  here.  Dr. Harris is an ophthalmologist practicing in the

15  Philadelphia area for over twenty years.  He has a private

16  practice in Center City.  He performs surgery at the Willis

17  Eye Institute and also the Hahnemann hospital.  He met Dr.

18  King back in the early 1990s.  He stated "over the years, I

19  was especially impressed by the fact that Dr. King would

20  consistently track me down to personally discuss his patients'

21  conditions.  It quickly became apparent to me that Dr. King

22  was interested in his patients' well-being well beyond their

23  obstetric or gynecological needs.  I remember a particular

24  patient who he sent to me for eye muscle surgery.  Dr. King

25  remained in contact with me -- with both me and the patient

1    during her immediate postoperative period to make sure she was

2    healing well."  He states, "Your Honor, I can confidently

3    state that as a physician, Dr. King's career is characterized

4    by honesty, diligence and overwhelming loyalty to his

5    patients."

6              THE COURT:  Thank you.

7              MR. BIDDLE:  Thank you very much, Dr. Harris.

8              THE COURT:  Thank you.

9              MR. BIDDLE:  Gail Stephenson (ph.).  Your Honor, Ms.

10   Stephenson and her husband, Lee, wrote a letter to the Court

11   which is Exhibit 19.  She tells the Court that "Bill grew up

12   in a large nuclear family that had very little in the way of

13   material wealth and we believe that he may be the only member

14   of his immediate family to strive for and obtain a higher

15   level of education.  It appears that the degradation and

16   scarcity of basic life necessities were the catalyst for

17   Bill's ambition augmented by hard work and sacrifice which

18   fueled his accomplishments.  However, it was his unwavering

19   and often voiced desire to help other people avoid his

20   formative years' circumstances of having little or no

21   availability of medical care that led him to choose medicine

22   as a career."  Thank you, ma'am.

23             THE COURT:  Okay.  Thank you.

24             MR. BIDDLE:  And, Your Honor, one of the -- both of

25   the defendant's daughters are here.  Laresha (ph.)?  Your

1    Honor, Laresha wrote to the Court, her letter to the Court is

2    Exhibit 25.  "His years of hard work helped to provide his

3    family the basic necessities of life:  food, shelter and

4    clothing.  Furthermore, his work helped to provide the

5    opportunity for my sister and me to attend college.  I

6    personally watch his staff and patients deliver praise for his

7    work.  Similarly, during my middle school years, Dr. King

8    volunteered his services and provided free health screenings

9    at a summer camp."  Thank you.

10            THE COURT:  Okay.  Thank you.

11            MR. BIDDLE:  Mr. Canonaro (ph.)?  Your Honor, Mr.

12    Canonaro provided a letter which is Exhibit 26.  He writes

13    that "In my approximately six years I have known the King

14    family, they have impressed me with their dedication to

15    education.  Similar to their spirit of dedication to education

16    is their extreme generosity.  What most impressed me about the

17    King family is their ability to forgive.  I was once dishonest

18    with the King family because I thought they would not accept

19    me.  Eventually, I told the truth and they forgave me."  Thank

20    you.

21            Allison, Dr. King's other daughter, is here as well,

22    Your Honor.  She wrote a letter that's Exhibit 27 that

23    describes Dr. King's role in her education; the intensive

24    personal involvement that he had in bringing up his children.

25    "My father always took an active role in my education.  He was

1  the president of the PTA." She described his personal

2  involvement in all the courses that she took. And states, "As

3  a professional, he worked hard to show me that medicine is

4  about caring for people. He told me time and time again that

5  you choose a profession because you love doing whatever it is

6  you're doing day in and day out. Work is not about the money

7  you make, but the difference you make." Thank you.

8          THE COURT: Um-hum.

9          MR. BIDDLE: Dr. Edup (ph.)? Thank you. Dr. Edup

10  wrote a letter, the document that's Exhibit 28, Your Honor,

11  and he's known Dr. King for almost twenty years. He writes

12  that "Bill always showed great interest in my sons, always

13  generous with his time and chatting about -- with them,

14  inquiring about their progress in school and their post-

15  graduation plans. He's a wonderful human being of great

16  character." And he described how Dr. King was involved with

17  his kids' lives, their medical care as well as being with

18  their family. "Dr. King, I always know, conducts himself with

19  honor and dignity. He's the kind of person you could trust

20  and a friend you could go to if you have a predicament and

21  wanted some sincere advice." Thanks.

22          We just have a few more here, Your Honor. Ms.

23  Russell (ph.). Your Honor, Ms. Russell wrote the letter

24  that's Exhibit 29. She's known Dr. King since he was a

25  teenager. Here's a lady that's come to court for Dr. King

1  fifty years after she met him.  "Over his long professional

2  career, Bill has earned respect of his colleagues in his

3  community.  He is not materialistic.  He lives simply rather

4  than lavishly.  He is very proud of his ability to have both

5  his daughters attend first class universities and encourage

6  their ambitions."  She also describes how Bill grew up, the

7  fact that he was brought up by his two older sisters after his

8  father died when he was ten.  And these sisters, Your Honor,

9  were only a few years older than he was.  The government

10  points out that the defendant had a loving family, yes, but

11  his parents were his sis --

12          THE COURT:  Okay, you're making arguments now and --

13          MR. BIDDLE:  Okay.

14          THE COURT:  -- you're introducing a --

15          MR. BIDDLE:  Fine.  Mr. Watson (ph.)?  Mr. Watson,

16  Your Honor, provided Exhibit 20 and he wrote based on his

17  career as a Baptist minister and a health care administrator,

18  he writes, Your Honor, during his work with the defendant "I

19  have known Bill to be a passionate and dedicated man committed

20  to health care to the underprivileged.  He has always been

21  honest and law-abiding.  He did not demonstrate any greedy

22  behavior but on the contrary he was -- always demonstrating a

23  concern for the less fortunate than himself and a willingness

24  to share.  Such is the testament of one who decides to work

25  with the underprivileged community all the years that he has

1    done."

2              THE COURT:  Okay, thank you.

3              MR. BIDDLE:  Thank you very much, Your Honor.  There

4    are some additional folks here but they did not have a chance

5    to write a letter to the Court.  Did the Court receive the

6    photographs?

7              THE COURT:  I did.

8              MR. BIDDLE:  Okay, and rather than go through those

9    page after page, I think that they visually show the life

10   experiences that --

11             THE COURT:  They may be made a part of the record, if

12   you wish?

13             MR. BIDDLE:  Please, I'd move those into evidence as

14   well as all our exhibits.

15             THE COURT:  Yes.  Yes.

16             MR. BIDDLE:  Sure.  Your Honor, at this point I will

17   summarize -- well, I can turn to the medical issues.  Would

18   the Court like me to address the --

19             THE COURT:  I -- this has to come to a close here.

20             MR. BIDDLE:  Okay.

21             THE COURT:  You've had a lot of time.

22             MR. BIDDLE:  I understand, Your Honor, but I need to

23   lay out the fact that Dr. King has hepatitis C.  It's the

24   leading killer of people that have liver problems.  There are

25   8 to 10,000 people a year that die of it.  He's had it for a

1    number years; it was first diagnosed in early 2007.  The

2    medication he is on now is not available in the Bureau of

3    Prisons.  The Bureau of Prison's own manual, which I can offer

4    to the Court, says that if someone is in treatment, they

5    should continue treatment until it's concluded.

6              THE COURT:  Yeah.

7              MR. BIDDLE:  And we've asked the Court to allow him

8    to consider his illness in two ways.  One is that is that he

9    should be able to self-surrender after February 1st of next

10   year when he will have a shot at beating this hepatitis C and

11   secondly that it's a basis to shorten his sentence because of

12   his overall infirmity.  There is no cure for hepatitis C; it

13   can only be absolutely minimized.  And he's acted responsibly

14   in getting this dealt with.  He went to one of the few

15   programs in the country where someone who's African-American

16   has a fair shot at getting cured.  The cure rate for African

17   Americans with the current medication is as low as one in five

18   whereas the national rate is basically one in two.

19             Dr. Muir provided a letter to the Court.  It lays out

20   the nature of his condition.  It's a serious condition.  The

21   Bureau of Prisons has a lot of -- they try to deal with it but

22   their resources are limited.  They can't provide him the

23   medication that he's on now and as a result, Your Honor, the

24   Court should allow him to postpone his self-surrender until

25   February of next year so he can beat it and also shorten his

1    sentence to the six months incarceration, nine months home

2    detention.  Dr. King at the end today will provide the Court

3    with a statement.  He's also provided the Court with a written

4    statement.  He's shown great remorse for what happened, for

5    his conduct, for his misconduct and for all those reasons,

6    Your Honor, the Court should vary pursuant to Tomko and impose

7    the requested sentence.  Thank you.

8          THE COURT:  Thank you.  The government?

9          MS. WITZLEBEN:  Thank you, Your Honor.  With respect

10   to the issues that have been raised on variance, I'll try not

11   to belabor the record with respect to the government's

12   pleadings that have already been filed but I do want to make a

13   few points for the benefit of today's hearing.  First of all,

14   Your Honor, the guideline -- the 3553 factors require the

15   Court to consider the nature and the seriousness of the

16   offense and, Your Honor, this was a very serious crime.

17         This defendant, apparently motivated by nothing more

18   than greed, decided to steal from the insurance company and

19   let's take a step back, an insurance company that was

20   providing coverage for blue-collar workers in Philadelphia.

21   These were his patients.  Women who collected our garbage, who

22   cross our kids at the corners; these are blue collar workers

23   who were receiving through their union and ultimately all of

24   the increased costs of health care fraud are passed on to the

25   public.  You heard testimony about that at the trial.  The

1  person from Blue Cross very candidly said we pass these costs

2  on.

3         So, Your Honor, the taxpayers ended up paying for

4  this man's crimes.  So this is not a victimless crime, Your

5  Honor.  Not only did the insurance company get ripped off to

6  the tune of three quarters of a million dollars, but those

7  costs, the costs of health care fraud, are passed on to the

8  public.

9         In addition, Your Honor, there are other victims in

10 this case.  As the Court knows from the testimony, these forty

11 patients of the defendant who were -- had medical records,

12 legitimate medical records, their history of their

13 gynecological history and problems have been destroyed.

14 They're gone; they will never be retrieved.  And this

15 defendant choose to do that in order to attempt to cover up

16 and obstruct in this case.  S

17         o this crime is quite serious and we turn to the

18 history and characteristics of the defendant next under the

19 factors and Mr. Biddle has done a very eloquent job describing

20 the defendant's humble beginnings.  And I know that this is a

21 very sad and significant day to all of the people who love Dr.

22 King and who came here in his support today and who took the

23 time to write the letters and I have a lot of compassion for

24 their situation but when we look at what their letters say and

25 even the testimony of the gentleman who came today before the

1    Court, what we note -- and if you look at his Exhibit, 12,

2    Defendant's Exhibit 12, Your Honor, they can't believe he did

3    it.  Your Honor, they don't believe he committed this crime.

4    And that tells us a couple of things about this defendant,

5    unfortunately Your Honor.  He hasn't told them he did it.  He

6    has not accepted responsibility for this crime.  He hasn't

7    told the people he loves, I did it.  I overbilled, here was my

8    reason, et cetera.  So that has to go into the Court's

9    calculation of what the remorse is and whether he's accepted

10   responsibility and what the deterrent is that comes from that.

11        The other thing, Your Honor, that they, with all due

12   respect, don't know is what happened in this courtroom.  What

13   the evidence revealed actually happened in this case.  And

14   many of the letters suggest that they would never believe he

15   would put his own interests ahead of someone else's.  That

16   they would never believe that he would put his own interests

17   ahead of the patients'.

18        But this Court knows, from having sat through the

19   trial, that's exactly what he did.  He destroyed those

20   patients' records.  He created false records which had things

21   in them that weren't more true family history of cancer, and

22   so forth, which now they're kind of stuck with to the extent

23   that anybody ever believes these records in the future and

24   third, Your Honor, and let me turn to this medical excuse we

25   have today.  Because I think it's a fairly clear example of,

1    unfortunately, this defendant's willingness to put his own

2    interests ahead of the interests of others.  This defendant

3    had hepatitis C for some years.  We will accept for

4    purposes --

5            THE COURT:  But I see that as thirty years or

6    something?

7            MS. WITZLEBEN:  Yes, Your Honor.

8            THE COURT:  Okay.

9            MS. WITZLEBEN:  Now, it is possible.  Hepatitis C

10   does not always manifest itself in symptomology and it would

11   appear that perhaps he had no symptomology.  In fact, Your

12   Honor, in the defense's submission it appears that how he knew

13   that he had hepatitis C was that in January of 2007, before

14   this case was even indicted, when he was out in Seattle,

15   seeking employment at the VA -- at the VA hospital, a routine

16   screening detected the hepatitis C virus in his blood.

17   Clearly at that point, Your Honor, he had no symptomology.  He

18   was not suffering from this disease.  At that point, the

19   defendant chose not to seek treatment, Your Honor.  There is a

20   treatment that the Bureau of Prisons would give a person with

21   hepatitis C, the standard protocol.  Now, the evidence we have

22   from Dr. Muir at Duke suggests that that protocol is less

23   successful with African-Americans but there's still a twenty-

24   five percent chance of being cured by that protocol.  This

25   defendant did not seek it, Your Honor, and I submit there's

1    one reason why that might happen.  He wasn't suffering from

2    this illness.  There was no symptomology and he didn't have

3    any reason therefore, in his mind, to seek the treatment that

4    might have cured him, twenty-five percent chance.

5         Instead, Your Honor, it was not until after he was

6    convicted in this case that the defendant decided to seek

7    treatment for his hepatitis C.  And he did not elect the

8    standard protocol at that time.  Instead he sought out an

9    experimental protocol at Duke University and in that

10   protocol -- and, Your Honor, the agents in this case have

11   interviewed Dr. Muir by telephone and I don't think there's a

12   factual dispute about what I'm about to say but if there is,

13   the agents are prepared to testify today about that interview.

14   The doctor told the government that this protocol is the most

15   promising protocol for African-Americans who suffer from

16   hepatitis C, that only 200 patients would be admitted to this

17   protocol nationwide.  And people were begging to get into this

18   protocol.

19        And I submit, Your Honor, there were probably

20   patients in that group who suffer from their hepatitis C; who

21   had cirrhosis, who had scarring of the liver, who had

22   consequences from their hepatitis C and who were probably

23   younger than this gentleman with this degenerative disease.

24   So, Your Honor, it was very competitive to get into this

25   protocol and the doctor advised the government that they try

1    to screen out people who can't complete the protocol.  And why

2    is that?  Because this is an experimental protocol designed to

3    prove the efficacy of this drug.  And each failure, each

4    person who bails out partway through costs them one slot of an

5    ability to prove the drug's efficacy.  And only if it's proved

6    safe and effective will it be made to market and allow all

7    other African-Americans to have this higher chance at

8    resolving their hepatitis C.  Despite that and knowing that he

9    had been convicted by a jury of his peers and knowing that he

10   was facing a substantial federal sentence, this defendant

11   enrolled himself in the protocol and did not tell the doctor

12   that there was a very high probability that within the next

13   year he would be going to federal prison where he could not

14   receive the drug.

15        Your Honor, as a trained man of medicine, he, above

16   others, should understand the significance of the experimental

17   protocol and knew that when he did that, Your Honor, that he

18   was not only depriving someone else of the slot that he took

19   but undermining the potential outcome of it.  Your Honor, he

20   did that to try to keep himself out of jail, I submit.  He's

21   hoping that by that conduct this Court will decide he doesn't

22   have to report until next February or later, you'll see

23   there's some wiggle room in the defense's filings on whether

24   February's really the deadline.  Okay, and that this will be

25   sympathetic to the Court.  And I submit, Your Honor, under the

1  circumstances of this case, it's exactly the opposite.  It

2  should not engender sympathy; it should engender the Court's

3  taking into account this defendant's continued willingness to

4  put his own interests ahead of others.

5       Your Honor, I want to address one more issue which is

6  this issue of the parsimony provision.  Your Honor, the

7  guidelines, which all of our federal courts lived with for

8  years, have a very salutary use.  They assure, across the

9  country, that when you're in federal court like defendants

10  will be treated alike for like crimes.  When we look at the

11  parsimony provision, no more than necessary, how are we to

12  calculate what that means if we don't look at the universe.

13  Here is what drives this man's guidelines.  How much money he

14  stole and the way he did it; 750,000 dollars, or you take the

15  defense number 640,000 dollars.  Gives you a specific range.

16       Nothing in his personal circumstances, his history,

17  changes that.  That's an appropriate range, according to the

18  people at the sentencing guidelines, for someone who stole

19  that amount of money.  And then you add the enhancements which

20  this Court has found.  Someone who also used their special

21  skills, someone who also used sophisticated means and someone

22  who attempted to obstruct justice during the investigation.

23  That, Your Honor, fits very cleanly into the concept of not

24  having unwarranted disparities.

25       This defendant, with all due respect to his

1  abilities, which I admire, to overcome his initial

2  circumstances albeit, Your Honor, circumstances nowhere near

3  as dire as most of the defendants that come before this Court;

4  defendants who are raised by single parents who are addicted

5  to drugs.  Defendants who are themselves addicted to

6  something; very difficult circumstances.  This defendant, for

7  all his skill and talent being added to it, had a loving

8  family.  His sister worked, apparently as a maid, to help put

9  him through school.  And those advantages that he acquired

10  through having a loving family, through having the innate

11  talent that he had, he squandered, Your Honor.  It was his

12  choice.  I submit, Your Honor, those -- none of that

13  undermines the appropriateness of a guideline sentence in this

14  case.

15          And finally, Your Honor, I do want to add the other

16  factor that I think is very important in this case and that's

17  deterrence.  We have in the courtroom today several doctors.

18  What are they to make, what are doctors at large to make, what

19  is the public at large to make of a defendant who having

20  achieved the status of a medical doctor in our society who is

21  not severely punished for stealing three quarters of a million

22  dollars out of greed.  Thank you, Your Honor.

23          MR. BIDDLE:  Your Honor, could I be heard for a

24  minute?

25          THE COURT:  The government really gets the last

1   argument, Mr. Biddle.  Somebody behind you was trying to pass

2   you something and I don't know whether it's important or not,

3   so you can inquire.

4           MR. BIDDLE:  Thank you.

5       (Pause)

6           MR. BIDDLE:  I'd ask leave of the Court to address

7   the issue with Dr. King's medical condition.

8           THE COURT:  Go ahead.

9           MR. BIDDLE:  The government really mischaracterizes

10  what transpired here.  There's no question Dr. King was not

11  aware of the possibility that he had hepatitis C till early

12  2007.  The BOP protocol provides that there are a series of

13  tests that need to be conducted and the record's clear that

14  over a period of time he had additional tests which confirmed

15  that.  He finally got a biopsy in early -- as part of his Duke

16  study, late 2008/early 2009 and that is the gold standard test

17  as the BOP protocol sets forth.  Hepatitis C, Your Honor, is

18  very contagious.  The BOP provides that in their manual.  You

19  can't exchange toothbrushes, you essentially have to be

20  quarantined from other inmates if you have it.

21          This defendant had a duty to do what he could to take

22  care of this.  He was first told it that he had it, the first

23  indication, in early 2007 when employers said, you can't do

24  surgery.  You can't do surgery because you've got hepatitis C.

25  When you fly, Your Honor, what do they tell you?  The oxygen

1   masks come down and they say parents, put the masks on first

2   and then put it on your child.  Similarly with a doctor, if

3   you're going to provide care, if you're going to be able to

4   participate in the life of your community, you've got to deal

5   with your own problem.  You've got to confront it, and that's

6   what this doctor did.  He acted responsibly, Your Honor, and

7   that's what the record shows, not irresponsibly, and he should

8   be commended for making the best efforts that he could to beat

9   this insidious disease.  No one knows exactly what the

10  progression will be.

11          If he gets a guideline sentence and he is sent to a

12  run-of-the-mill BOP facility, they're not going to track his

13  liver function.  They're not going to be testing it.  The

14  Court's aware from its own experience.  There isn't adequate

15  medical care throughout the BOP to deal with this type of

16  condition.  He's in the middle of treatment right now.  He

17  went through several months of the standard treatment.  I

18  spoke to Dr. Muir personally forty-eight hours ago.  Dr. King

19  failed to respond to the standard treatment.  So he's like

20  those three quarters of the rest of the African-American

21  population that doesn't respond to the standard treatment.

22          THE COURT:  Somebody said that he's known he had this

23  for a long time?

24          MR. BIDDLE:  No, he's not, Your Honor.  He didn't

25  know till January 2007.  The disease wasn't discovered until

1    the early 1990s.  He got a blood test in early 2007 and they

2    said we think you've got hepatitis C.  Your Honor, it's

3    progressed to a level 2.  Level 2 and it's in medical records

4    is the level that BOP says you should have antiviral

5    treatment.  It's a virus.  Just like AIDS is a virus.  Now

6    this defendant doesn't have AIDS but it's a similar kind of

7    insidious thing and BOP says, I would put it into evidence if

8    we had time, BOP says he should finish his treatment.  I

9    called Hank Sadowski who's the Region 3 Bureau of Prisons'

10   counsel to discuss this issue with him.  I spoke to him in

11   May.  I told him about Dr. King's condition.  He said you'll

12   have to speak to the prosecutors about it.  I can't say

13   anything more to you about it.  Why did I do that?  Because we

14   wanted to find out what BOP would say about his condition.

15          There is no one here from BOP because Sadowski

16   wouldn't talk to me.  So we did the best thing that we could,

17   we submitted a letter from Dr. King.  I spoke to him forty-

18   eight hours ago.  Dr. King, within a week, is going to be

19   getting the Boceprevir medication, B-O-C-E-P-R-E-V-I-R.

20   That's only available through the study and has a much higher

21   rate --

22          THE COURT:  Where does he have to go for this

23   treatment?

24          MR. BIDDLE:  He goes to Duke, Your Honor.  He goes

25   there every week.

1          THE COURT:  Once a week?

2          MR. BIDDLE:  Once a week, Your Honor, or --

3          THE COURT:  For how long?

4          MR. BIDDLE:  I'm sorry?  Through at least January,

5   Your Honor.  He's got a twelve week, which would be middle of

6   November, landmark.  Dr. Muir told me on Wednesday that if he

7   doesn't show a positive virological response by mid-October --

8   I'm sorry, mid November, then he will probably be dropped from

9   the study.  But if he does, then he needs to continue.  And

10  that's also consistent with the BOP protocol because BOP says

11  that you should be on your antiviral medication for at least

12  six months.

13          So the government is correct.  If he's getting

14  somewhere with fighting the virus, then we come back into

15  December and ask for some additional time.  But at the very

16  least, he needs till the end of January to have a shot at

17  beating this disease.

18          THE COURT:  All right, thank you.

19          MR. BIDDLE:  Thank you.

20          MS. WITZLEBEN:  Your Honor, if I might inquire,

21  briefly.  Defense counsel just represented that this defendant

22  in fact has never received the experimental drug so far?  He

23  receives it next week for the first time?

24          MR. BIDDLE:  Your Honor --

25          MS. WITZLEBEN:  In which case, Your Honor, any risk

1    associated to his health from abandoning the new drug is gone.

2         MR. BIDDLE:  Your Honor, I explained this to the

3    government the study -- and they interviewed this man, they

4    interviewed him, even though he's my client's doctor, without

5    contacting me, without providing any HIPAA form, without

6    meeting with the doctor.  Be that as it may, they interviewed

7    him.  I told them before they interviewed him that in the

8    experiment that Dr. King is in, he would get the standard

9    treatment plus he would get either a placebo which is not the

10   drug or he would get the new medication.  Okay.

11        He has not responded to the standard treatment.

12   Pursuant to the experimental protocol, forty-eight hours ago

13   he was told, and Dr. Muir was told, that Dr. King had not been

14   getting the experimental medication but now he's going to get

15   it.  I did an e-mail to the probation officer and I told the

16   government about this possibility four months ago.  Okay.  And

17   that's why we're asking till the end of January.  If he's

18   locked up and he goes to BOP, he isn't going to get it.

19        THE COURT:  Okay, one more time.  That -- go ahead.

20        MS. WITZLEBEN:  Thank you, Your Honor.  I do want to

21   address two issues that just arose in what defense counsel

22   said.  First of all, Your Honor, let's accept for the purpose

23   of today's record that although he had it, he didn't know he

24   had it until January of 2007.

25        THE COURT:  All right.

1           MS. WITZLEBEN:  That was a year before he was

2    indicted.  He did not seek treatment during that year.  In

3    fact, defense counsel wants to say that the disease is highly

4    communicable but what the VA said was you can't do surgery

5    because of the risk of blood to blood transfer of the virus.

6    He treated patients at the VA after knowing he had this

7    disease.  So, Your Honor, he can certainly serve in prison

8    knowing he has the disease.  Defense counsel makes much of the

9    fact he didn't have --

10          THE COURT:  But there's an issue.  He's been selected

11   as one of 200 --

12          MS. WITZLEBEN:  Yes, Your Honor, through fraud.

13          THE COURT:  Huh?

14          MS. WITZLEBEN:  Through his own fraud, Your Honor, he

15   was selected.

16          THE COURT:  Why?

17          MS. WITZLEBEN:  The defendant told us that had they

18   known that he would go to prison or might go to prison he

19   would not have been admitted.

20          THE COURT:  Okay.  All right, he's there.  All right.

21   We'll deal with this later.  All right.  Dr. King, you have

22   the right to address the Court on your own.

23          THE DEFENDANT:  Yes, Your Honor.  You know, I want to

24   actually apologize --

25          THE COURT:  You may stay seated if you wish, it's up

1    to you.  Wherever you're more comfortable.

2           DR. KING:  Yes, Your Honor, I want to apologize to

3    the Court.  I want to apologize to IBC, Blue Cross Blue Shield

4    and to the court system for my billing actions which I wrongly

5    did.  I'm truly sorry for that.  At this point in time I

6    hardly can't explain to you how sorry I am for my actions.  I

7    didn't bill in a way I should have and I billed incorrectly

8    and I apologize for to the auditors for my actions when I saw

9    my -- actually when I saw my world coming down upon me.  Over

10   this time I also want to apologize to all the people who've

11   come and supported me and I want to apologize to my family for

12   taking their names and putting them in this situation and

13   again, Your Honor, I'm truly sorry for that.  And right now,

14   Your Honor, I'm just so hurt right now about this whole

15   situation that I don't feel as I can continue to say very much

16   more but I do want to make sure that you understand that I'm

17   truly sorry for my actions.

18          THE COURT:  Okay.  Thank you, Doctor.

19          MR. BIDDLE:  Your Honor, the only remaining open

20   issue that was computed in the papers was restitution.  I

21   don't know when the Court wants to address that but that is

22   certainly a relevant --

23          THE COURT:  I -- you know, you should have brought it

24   up before he addressed --

25          MR. BIDDLE:  I apologize, Your Honor, this is my

1    first appearance before the Court.  I wasn't sure in what

2    order.  Some courts take restitution ninety days after

3    sentencing.

4         THE COURT:  Make your argument as to restitution.

5         MR. BIDDLE:  Your Honor, we -- I've laid out in our

6    papers, we contend that the restitution should be 639,000.

7    That's the amount these prosecutors told this jury, not here

8    today, that was the amount of IBC's loss.  They repeatedly

9    told the jury at the end of the trial that they could be

10   confident that IBC had lost 639,000 dollars. And, of course,

11   loss amount is the restitution amount.

12        The Court should also find the defendant's got a

13   check which we're prepared to give to the clerk's office for

14   20,000 dollars today, that the defendant can also make an

15   additional payment of 80,000 additional dollars within thirty

16   days and that the Court's orders should provide that

17   additional payments should be in the amount of 2,500 per month

18   thereafter to make IBC whole.  That's consistent with the

19   guidance from around the country as to the defendant's

20   resources; procedurally it needs to be something that this

21   Court determines pursuant to Third Circuit law.  It would be

22   the appropriate restitution, the appropriate amount and the

23   appropriate payment schedule given his resources and the fact

24   that a great deal of his money is in retirement accounts which

25   the Third Circuit has not yet decided can be tapped for

1    restitution.  Thank you.

2        MS. WITZLEBEN:  Your Honor, I'll try to be as brief

3    as possible.  The figure that the jury found was the

4    forfeiture amount.  The government is fully satisfied with

5    that amount for forfeiture and does not suggest that should be

6    changed for forfeiture.  We do ask the Court to enter the

7    judgment of forfeiture that we filed back in December a

8    proposed order.

9        But the defendant, Your Honor, is required by law to

10   pay restitution as well and with respect to the issue of

11   restitution, Your Honor, the Court is to decide as fairly as

12   possible what that amount should be and with all due respect

13   to defense's argument, it was very clear at the time of trial

14   and was argued to the jury in the forfeiture phase that the

15   amount of money they were deciding, 639,000 dollars, was a

16   very low estimate because the insurance company in calculating

17   that number had given the defendant credit as if each visit

18   was an actual visit.  But as the jury found, close to 15

19   percent, 14.5 percent, according to the evidence at trial,

20   were in fact ghost visits.  No patient was actually there.  So

21   the defendant shouldn't be paid for those.

22       In addition, Your Honor, the Blue Cross people

23   decided to assume that the first time each patient was seen it

24   was on a consultation and once this went to the stage where

25   the agents went through literally every medical record and

1  found none were consultations, that should be added on as

2  well, Your Honor, which brings us to the figure calculated by

3  the probation office quite arduously with which the government

4  agrees.  I can address further how that was calculated if the

5  Court has questions but I think it's laid out very clearly in

6  the PSR.

7          So, Your Honor, with respect to the amount of the

8  loss for restitution, we do believe it should be the higher

9  figure.  With respect to the defendant's ability to pay, this

10 defendant, Your Honor, has retirement accounts.  He has assets

11 which appear to total in excess of 576,000 dollars just in

12 accounts and he also has cars and homes.  It's more than one

13 piece of real estate.  And the house in Maryland that he owns

14 is 3800 square foot house had an assessed value this year of

15 470,000 dollars and change.  Your Honor, we respectfully

16 ask the Court to enter a judgment ordering the defendant to

17 pay full restitution due immediately with interest.  This

18 defendant has the ability to liquidate assets and if properly

19 given the right incentives, we believe he will and he can

20 reach an accord with the government which would allow him to

21 get out from under both restitution and forfeiture when he

22 makes full restitution to the victim.  With respect to the

23 issue that somehow the government can't access those

24 retirement accounts, Your Honor, we respectfully disagree with

25 defense counsel for the reasons briefed.

1          THE COURT:  Do I have to deal with that at this

2     point?

3          MS. WITZLEBEN:  If it's not necessary to the Court,

4     I'll rest on my argument.

5          THE COURT:  Well, I mean, that is going to be a

6     matter of collection, right?

7          MS. WITZLEBEN:  Yes, Your Honor, that's correct.

8          (Pause)

9          THE COURT:  We've had a good bit of discussion on the

10    enhancements that were set forth in the presentence report

11    which I adopt, incidentally.  There were three and each one

12    enhanced the offense level by two points putting it in a

13    category -- offense level category of 27 which would call for

14    a suggested guideline sentence of seventy to eighty-seven

15    months.  I approved each one of those enhancements because I

16    think each one of them was established.

17         However, after adding them in and viewing the conduct

18    that they involved, some of which was already set forth in

19    indictments, some of it overlapping with each other, I am

20    going to vary from the guideline and reduce the level to an

21    offense level of 21 calling for a thirty-seven to forty-six

22    month sentence.

23         The defendant was convicted of all counts in this

24    case.  It involved upcoding and when I say upcoding, I don't

25    mean somebody misinterpreted a coding book where somebody

1    didn't pay attention when they were being taught how to deal

2    with these codes.  These were flagrant; no misunderstanding

3    here.  The doctor knew what he was doing.  They were almost

4    all for code 99245 and that happens to be one of the higher --

5    I think an average of almost ninety-six dollar reimbursement.

6    It resulted in a vast overbilling and I determine the amount,

7    it has been correctly set forth in paragraph 150 of the

8    presentence report at 780,151 dollars.  The jury also found

9    for forfeiture in the amount of 639,578 dollars.

10          During the course of the investigation, the

11   defendant, maybe out of panic, but in any event attempted to

12   conceal the offense by withholding, perhaps destroying or

13   otherwise hiding, requested patient files.  He subsequently

14   used his medical training to create fictitious patient files.

15          He has a lot of loyal friends and good people who

16   know another aspect of him and there is another aspect of him.

17   It's the aspect that drove him to get a medical degree and to

18   lead an otherwise fine life and we appreciate the input that

19   their letters and statements have made.  But this is a serious

20   offense.  It went on for over four years.  There was time to

21   reflect and reconsider.  It wasn't a spur of the moment thing.

22          Pursuant to the Sentencing and Reform Act of 1984, it

23   is the judgment of the Court that the defendant, Dr. William

24   King, is hereby committed to the custody of the Bureau of

25   Prisons to be imprisoned for a term of thirty-six months on

1  each count I-LXXXII, all to be served concurrently.  Upon

2  release from imprisonment, the defendant shall be placed on

3  supervised release for a term of three years.  Within seventy-

4  two hours of release from custody of the Bureau of Prisons, he

5  shall report in person to the probation office in the district

6  to which he is released.

7       While on supervised release he shall not commit

8  another federal, state or local crime.  He shall be prohibited

9  from possessing a firearm or dangerous device.  He shall not

10  possess an illegal controlled substance and shall comply with

11  the other standard conditions adopted by this Court for

12  individuals on supervised release.

13       In addition, he shall provide the U.S. Probation

14  Office with full disclosure of his financial records to

15  include yearly income tax returns upon the request of the

16  probation office.  The defendant shall cooperate with the

17  probation office in the investigation of his financial

18  dealings and shall provide truthful monthly statements of his

19  income.  He is prohibited from incurring any new credit

20  charges or opening new accounts unless he is in compliance

21  with his payment obligations.  He shall cooperate in the

22  collection of DNA as directed by the probation officer.

23       It's further ordered to make restitution in the

24  amount of 780,151 dollars.  The Court will waive the interest

25  requirement in this case.  Restitution is due immediately.  In

1   the event that the entire restitution is not made prior to --

2   well, we're just going to leave that open because we have an

3   additional complication in this case.

4          It's further ordered that the defendant shall pay to

5   the United States Government a fine of 12,500 dollars on each

6   of counts -- that is composed of -- on each of Counts I and II

7   fines of 250 dollars and Counts III-LXXXII, 150 dollars.

8   Interest on that is waived also.

9          When the defendant does go to report to prison, it is

10  recommended that he participate in the Bureau of Prisons'

11  Inmate Financial Responsibility Program and provide minimum

12  payments of 25 dollars per quarter toward the fine.  In the

13  event that it is not -- the fine is not paid prior to the

14  commencement of supervised release, the defendant shall

15  satisfy the amount due in monthly installments of not less

16  than 500 dollars to commence thirty days after release from

17  confinement.

18         It's further ordered that the defendant shall pay to

19  the United States a total special assessment of 8,200 dollars

20  which is due immediately.

21         Now, as far as reporting to prison, however it is

22  viewed -- I mean, the government views the medical program

23  that Dr. King has enrolled in as a means of avoiding

24  something; it sounds like a unique opportunity and I don't

25  want to interfere with it.  So I am, at this point -- do we

1    have anything from the Bureau of Prisons that would indicate

2    that -- I guess they have nothing similar to this program, I

3    would assume that.

4          MS. WITZLEBEN:  No, Your Honor.  My understanding is

5    that because it's an experimental drug, which he hasn't gotten

6    yet --

7          THE COURT:  I know.  But he is one of the 200 and I'm

8    not taking that away from him.

9          MS. WITZLEBEN:  Very well, Your Honor.  I do want to

10    point out that the Bureau of Prisons would provide him with

11    the standard protocol.  That's what the typically do for

12    inmates with hepatitis C.  But they are not allowed to provide

13    him --

14          THE COURT:  But, you know, there is a possibility

15    that he could be housed somewhere near where Duke University

16    is and could be furloughed to go get that treatment?

17          MS. WITZLEBEN:  As I understand it, Your Honor, just

18    from our brief conversation with Dr. Muir, I mean, I suppose

19    it's theoretically a possibility but the doctor indicated to

20    me that -- I think the drug's administered by an IV.  They

21    might not permit him to -- they'd have to furlough him every

22    week or I don't know how often his treatments are.  But just

23    to be clear for the record, Your Honor, my understanding is

24    that there's a certain number of weeks where he would receive

25    the drug and then there's a very long period of time when he

1   would be coming back on some periodic basis for medical

2   testing to see if the drug's having whatever the desired

3   effect is.  So, I think we're talking about a very long period

4   of time here where he would need to have fairly regular access

5   to the professionals at Duke in order to stay in the study.

6           MR. BIDDLE:  Your Honor, I don't believe, from my

7   experience, I guess being a former prosecutor and criminal

8   defense, that there's any way the BOP is going to release

9   someone or allow someone who's in their care to get treatment

10  from someone outside the facility.  It just doesn't happen.

11          THE COURT:  It happens in the state court.  I --

12          MR. BIDDLE:  Your Honor, I've never heard of it in

13  BOP and we've had them with a lot of different types of

14  clients.

15          THE COURT:  It was a thought.

16          MR. BIDDLE:  It's a very good thought, Your Honor,

17  but the BOP is a beauracracy and I just -- with all due

18  respect to the Court, I don't see that happening.  I could

19  quote here from the guidelines for the prevention and

20  treatment of viral hepatitis from BOP and it says, "Inmates

21  entering BOP custody who are already on treatment for

22  hepatitis C should be maintained on antiviral therapy".  So we

23  submit, Your Honor, that Dr. Muir told me that the critical

24  twelve-week period for this medication is going to be in the

25  middle of November so if the Court would allow Dr. King to

1    stay out on pretrial -- I'm sorry, post-sentence release with

2    a self-surrender date later than that and we could have

3    a status conference, say, at Thanksgiving. or shortly

4    thereafter; the Court would be able to address that.  If --

5    Dr. Muir said that if Dr. King hasn't made progress by mid-

6    November with the new therapy, he will be terminated by the

7    study.  But if he does make progress, then he would need a

8    later self-surrender date.

9           THE COURT:  He has a self-surrender date of December

10   1st.

11          MR. BIDDLE:  Okay, and I will come back to the Court

12   in mid-November as soon as I hear from Dr. Muir with respect

13   to Dr. King's condition if there is any basis to further

14   postpone it.  But thank you, Your Honor, for the December 1st,

15   that certainly will help, though.

16          THE COURT:  I will sign the government's motion for

17   forfeiture.

18          MS. WITZLEBEN:  Thank you, Your Honor.

19          THE COURT:  I'm advising Dr. King that he has ten

20   days from today to file an appeal.

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  If he cannot afford an attorney to file

23   and argue the appeal, one will be provided for him free of

24   cost to himself.

25          MR. BIDDLE:  A housekeeping question.  The Court, in

1    listing conditions of supervised release, seemed to include

2    further financial disclosures but I wasn't sure whether that

3    was prior to supervised release starting or just supervised

4    release.  Okay, don't know.  We've provided a lot of financial

5    information.  We've provided tax returns.  We can certainly

6    cooperate with Mr. Posey (ph) or whomever his successor is

7    but --

8         MS. WITZLEBEN:  Your Honor, the government would like

9    the opportunity to secure under oath some testimony concerning

10   the assets.  We want to assure there's no further dissipation

11   of the assets that are required for restitution payments.

12        THE COURT:  All right.  Prior to his supervised

13   release.

14        MS. WITZLEBEN:  Thank you, Your Honor.

15        THE COURT:  Anything further?

16        MR. BIDDLE:  The only application I would have, Your

17   Honor, is that the 12,500 going to the fine is just going to

18   be -- make it more difficult to make full payment of

19   restitution so the pretrial services report recommended no

20   fine; 788,000 is high number and given the priority to paying

21   IBC, the government knows this better that a penny of that

22   fine money can be given to IBC.

23        THE COURT:  The sentence stands.

24        MR. BIDDLE:  Okay, Your Honor.

25        THE COURT:  If there's nothing further.

1          MR. BIDDLE:  Okay.  Thank you.

2          THE COURT:  We'll recess at this time.

3          (Court is adjourned)

4          * * * * * * * * * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4          I, Rivkah Levis, the court approved transcriber, do

5      hereby certify the foregoing is a true and correct transcript

6      from the official electronic sound recording of the

7      proceedings in the above-entitled matter.

8

9

10      **Rivkah Levis**
        Digitally signed by Rivkah Levis
        DN: cn=Rivkah Levis, o, ou,
        email=litsup-pa@veritext.com, c=US
11      _____          _____
        Date: 2009.08.26 14:23:51 -04'00'

12      RIVKAH LEVIS                         August 26, 2009

13

14

15

16

17

18

19

20

21

22

23

24

25

## A

**abandoning** 51:1
**abilities** 46:1
**ability** 34:17 36:4
44:5 56:9,18
**able** 13:11,18 38:9
48:3 63:4
**above-entitled**
66:7
**absolutely** 38:13
**accept** 8:17 18:1,8
24:9 34:18 42:3
51:22
**accepted** 41:6,9
**access** 56:23 62:4
**accomplishments**
28:15 33:18
**accord** 56:20
**account** 45:3
**accounts** 6:21
24:14 54:24
56:10,12,24
59:20
**achieve** 30:10
**achieved** 46:20
**acquired** 13:22
14:14 46:9
**act** 12:16 17:5
58:22
**acted** 38:13 48:6
**actions** 53:4,6,8,17
**active** 34:25
**acts** 6:17 12:18
17:18 18:19
**actual** 55:18
**add** 11:7 45:19
46:15
**added** 46:7 56:1
**addicted** 46:4,5
**adding** 57:17
**addition** 10:7
13:25 40:9 55:22
59:13
**additional** 3:19
23:6 37:4 47:14
50:15 54:15,15

54:17 60:3
**Additionally** 22:17
**address** 4:18 7:24
8:2 11:24 15:4
17:13 20:18
37:18 45:5 47:6
51:21 52:22
53:21 56:4 63:4
**addressed** 21:18
53:24
**adequate** 48:14
**adhere** 27:11
**adjourned** 65:3
**administered**
61:20
**administrative**
12:16,19 17:24
**administrator**
36:17
**admire** 46:1
**admitted** 2:10
30:13 43:16
52:19
**adopt** 57:11
**adopted** 21:15
59:11
**advanced** 26:2
**advantages** 46:9
**advice** 32:10 35:21
**advised** 43:25
**advising** 63:19
**advisory** 21:11
**afford** 63:22
**African** 38:16
**African-American**
38:15 48:20
**African-Americ...**
42:23 43:15 44:7
**agent** 22:7,19
**agents** 43:10,13
55:25
**ago** 31:5 48:18
49:18 51:12,16
**agree** 17:11 23:19
**agrees** 56:4
**ahead** 41:15,17
42:2 45:4 47:8

51:19
**AIDS** 49:5,6
**albeit** 46:2
**Alicia** 2:15
**alike** 45:10
**alleged** 15:17,18
**allegedly** 13:14
**Allen** 2:11 30:2,3,3
**Allison** 34:21
**allow** 18:17 38:7
38:24 44:6 56:20
62:9,25
**allowed** 25:6 61:12
**alternatively** 25:1
**ambition** 33:17
**ambitions** 36:6
**amended** 17:4
18:17
**AMERICA** 1:2
**Americans** 38:17
**amount** 2:7 45:19
54:7,8,11,11,17
54:22 55:4,5,12
55:15 56:7 58:6,9
59:24 60:15
**analogous** 5:20
**analogy** 24:20
**analyses** 21:20
**animosity** 23:11
**antiviral** 49:4
50:11 62:22
**anybody** 41:23
**apologize** 52:24
53:2,3,8,10,11,25
**apparent** 32:21
**apparently** 16:25
17:9 39:17 46:8
**appeal** 25:21 28:24
63:20,23
**appear** 3:3 22:10
42:11 56:11
**appearance** 54:1
**APPEARANCES**
1:10
**appears** 33:15
42:12
**applicable** 10:6

14:18 20:21,23
**application** 7:6
22:14 64:16
**applications** 21:4
**applied** 5:19 7:25
9:2 11:4 12:8
**applies** 21:12
24:16
**apply** 4:25 5:1,23
8:11,23 18:14
24:8,12,20 25:1
**appreciate** 58:18
**appropriate** 3:20
45:17 54:22,22
54:23
**appropriateness**
46:13
**approved** 57:15
66:4
**approximately**
34:13
**arduously** 56:3
**area** 11:19 21:2
32:15
**areas** 30:16
**argue** 23:24 26:4,9
26:10 27:1 63:23
**argued** 55:14
**argument** 8:10,17
8:19 16:19 18:11
21:19 24:3 25:15
26:1,3 27:11 47:1
54:4 55:13 57:4
**arguments** 20:16
25:25 26:3 36:12
**argument's** 12:6
**arose** 51:21
**asked** 21:24 28:18
38:7
**asking** 20:2 27:18
51:17
**aspect** 12:19 21:1
58:16,16,17
**assertions** 9:4
**assessed** 56:14
**assessment** 2:8
60:19

**assets** 11:13 56:10
56:18 64:10,11
**assisted** 29:24
**associated** 30:12
51:1
**ASSOCIATES**
1:18
**association** 23:12
**assume** 4:17 16:19
55:23 61:3
**assuming** 16:18
27:14
**assure** 45:8 64:10
**athlete** 29:24
**attempt** 10:14
11:15 14:10 23:8
23:9,15 40:15
**attempted** 45:22
58:11
**attempting** 22:10
**attend** 34:5 36:5
**attention** 58:1
**attorney** 1:12 30:6
63:22
**attorneys** 19:18
**Attorney's** 3:13
**atypical** 5:23
**Audio** 3:1
**audit** 7:2,4 10:7
11:17,18 15:19
17:18,19
**auditors** 15:12
17:25 53:8
**auditor's** 10:11
**augmented** 33:17
**August** 66:12
**AUSA** 1:11,11
**authentic** 13:12,19
**availability** 33:21
**available** 20:4,14
32:10 38:2 49:20
**average** 58:5
**avoid** 10:2,14,15
33:19
**avoiding** 60:23
**aware** 22:9 26:11
29:22 47:11

48:14

**B**

B 2:3
back 13:16 18:23
  25:7 32:18 39:19
  50:14 55:7 62:1
  63:11
bails 44:4
Baltimore 1:16,17
  32:6
banc 27:19
bank 6:10,21 24:14
Baptist 36:17
barely 24:11
base 13:18
based 8:15 10:22
  14:19 18:9,14
  21:22 23:17,17
  25:15 36:16
bases 25:18,19
  27:24,24
basic 33:16 34:3
basically 12:7
  15:11 20:6 21:10
  38:18
basis 5:13 8:2
  10:25 15:9,20,24
  17:8 18:18 20:7
  20:14,15 25:21
  26:25 29:22
  38:11 62:1 63:13
Bea 1:11 3:11
beat 38:25 48:8
beating 38:10
  50:17
beauaracracy 62:17
began 18:7
begging 43:17
beginning 8:9
beginnings 40:20
begins 3:1 16:8
  17:8 18:18
behavior 8:12 32:8
  36:22
belabor 39:11
belief 10:11

believe 12:23 15:14
  28:23 33:13 41:2
  41:3,14,16 56:8
  56:19 62:6
believes 41:23
benchmark 27:10
benefit 39:13
Bernie 24:15
best 48:8 49:16
better 64:21
beyond 32:22
Biddle 1:15,15 3:8
  3:17,17,24 4:7,14
  4:21 5:3,6,8,11
  5:13,17 7:12,15
  7:19 11:25 12:3,6
  15:2,8 19:2,5,7
  19:10,13 20:13
  23:19,20,23 24:3
  24:7,11 25:13
  27:6,7,10,13,17
  29:11,14 30:2,20
  31:1,24 32:1,13
  33:7,9,24 34:11
  35:9 36:13,15
  37:3,8,13,16,20
  37:22 38:7 40:19
  46:23 47:1,4,6,9
  48:24 49:24 50:2
  50:4,19,24 51:2
  53:19,25 54:5
  62:6,12,16 63:11
  63:25 64:16,24
  65:1
bill 33:11 35:12
  36:2,6,19 53:7
billed 53:7
biller 14:14
billing 12:16 22:13
  53:4
billings 10:2
bills 9:8,17,20
  10:18 12:17
Bill's 33:17
binding 21:13,14
biopsy 47:15
bit 18:5 57:9

blatantly 26:23
blood 42:16 49:1
  52:5,5
blue 9:17,20 11:16
  39:22 40:1 53:3,3
  55:22
blueprint 30:11
blue-collar 39:20
Boceprevir 49:19
Bole 3:14
Boles 22:7
book 57:25
Booker 21:9 28:3
bootstraps 29:14
BOP 47:12,17,18
  48:12,15 49:4,7,8
  49:14,15 50:10
  50:10 51:18 62:8
  62:13,17,20,21
breast 13:14
Breyer 28:23
brief 12:6 19:17,21
  55:2 61:18
briefed 56:25
briefly 12:22 50:21
bringing 8:16
  34:24
brings 11:19 56:2
broke 31:17,17,18
brought 36:7 53:23
Bureau 38:2,3,21
  42:20 49:9 58:24
  59:4 60:10 61:1
  61:10
B-O-C-E-P-R-E-...
  49:19

**C**

C 25:18 28:15
  37:23 38:10,12
  42:3,9,13,16,21
  43:7,16,20,22
  44:8 47:11,17,24
  49:2 61:12 62:22
  66:2,2
calculate 45:12
calculated 56:2,4

calculating 55:16
calculation 4:22
  5:10 41:9
call 19:24 20:1,9
  21:25 22:2 28:1
  57:13
called 10:7 16:5
  22:8 49:9
calling 22:1 57:21
camp 34:9
cancer 41:21
candidly 40:1
Canonaro 2:15
  34:11,12
capped 10:9
card 9:14
care 6:2,3,4,7,19
  8:13 9:19 12:17
  33:21 35:17
  36:17,20 39:24
  40:7 47:22 48:3
  48:15 62:9
cared 22:25
career 31:3,9 33:3
  33:22 36:2,17
cares 23:1
caring 35:4
carrier 18:2
carry 26:20
carrying 12:8
cars 56:12
case 5:1,20,25 6:23
  6:25 7:5,6 9:5,10
  10:24,25,25
  12:10 14:18 16:5
  16:9,10,16 18:22
  18:23 21:8 26:12
  26:14 40:10,16
  41:13 42:14 43:6
  43:10 45:1 46:14
  46:16 50:25
  57:24 59:25 60:3
cases 6:21 10:21,23
  24:16,19 25:3,8
  28:21
catalyst 33:16
category 25:4

57:13,13
caught 10:15
Cayman 6:24
Center 32:16
certain 17:6 61:24
certainly 5:11 17:2
  26:4,10,17 52:7
  53:22 63:15 64:5
certify 66:5
cetera 41:8
chain's 6:3
chance 37:4 42:24
  43:4 44:7
change 56:15
changed 16:10
  17:12 55:6
changes 45:17
character 35:16
characteristics
  40:18
characterized
  19:22 33:3
charged 6:5 11:22
charges 59:20
chatting 35:13
check 54:13
Chestnut 1:12
child 48:2
children 31:6
  34:24
Chilson 2:12 30:20
  30:20,21,25 31:4
  31:4
Chilson's 32:1
choice 46:12
choose 33:21 35:5
  40:15
chose 26:20 42:19
Christine 15:22
  23:6
Cianci 5:21
Circuit 5:19 7:6
  16:4,9,24 17:15
  18:5,23 21:16,16
  21:17,18,20,21
  21:21 27:19
  54:21,25

**circuits** 18:4 21:15
**Circuit's** 17:11
**circumstances**
  17:6 33:20 45:1
  45:16 46:2,2,6
**cirrhosis** 43:21
**cited** 5:20,25 30:6
**cites** 10:21 26:4
**City** 32:16
**civilly** 6:6
**claims** 9:9
**clarification** 7:21
**Clark** 30:7
**class** 36:5
**cleanly** 45:23
**clear** 7:8,20 10:19
  18:4,5 22:15
  41:25 47:13
  55:13 61:23
**clearly** 8:14 10:16
  10:24 13:4 17:18
  22:16,22 24:16
  26:19 27:3 42:17
  56:5
**CLERK** 3:1
**clerk's** 54:13
**client** 4:6 16:2
  17:22,23,24
**clients** 62:14
**client's** 15:21 17:5
  51:4
**close** 37:19 55:18
**cloth** 10:8
**clothing** 34:4
**code** 6:15,17 7:1
  22:13 58:4
**codes** 6:8,9 58:2
**coding** 57:25
**collar** 39:22
**colleagues** 36:2
**collected** 39:21
**collection** 57:6
  59:22
**college** 30:10 31:16
  32:6 34:5
**Columbia/HCA**
  6:3

**come** 20:20 30:24
  35:25 37:19 46:3
  48:1 50:14 53:11
  63:11
**comes** 41:10
**comfortable** 53:1
**coming** 13:15 53:9
  62:1
**commence** 60:16
**commencement**
  60:14
**commended** 48:8
**commentary** 22:15
**comments** 10:23
**commission** 11:9
  17:2,10 18:3
**commission's**
  18:13
**commit** 6:7 14:23
  59:7
**committed** 6:10
  17:5 20:23 21:5
  36:19 41:3 58:24
**committing** 13:24
  14:11 24:23,24
  29:16,17
**communicable**
  52:4
**communications**
  15:11,21
**community** 28:11
  36:3,25 48:4
**company** 9:9 12:18
  32:5 39:18,19
  40:5 55:16
**compassion** 32:11
  40:23
**competent** 30:16
**competitive** 43:24
**complete** 9:15 44:1
**completed** 9:22
  14:5
**completely** 10:20
**complex** 11:10
  22:12
**compliance** 59:20
**complication** 60:3

**comply** 59:10
**composed** 60:6
**computed** 53:20
**conceal** 11:15
  14:10,24 58:12
**concealment** 11:12
**concept** 45:23
**concern** 36:23
**concerning** 15:11
  64:9
**concluded** 5:18
  38:5
**concoct** 14:21
**concurrently** 59:1
**condition** 38:20,20
  47:7 48:16 49:11
  49:14 63:13
**conditions** 32:21
  59:11 64:1
**conduct** 6:14 8:23
  11:11,12,21,21
  11:22 12:20 16:8
  17:6 18:2,3,6,17
  20:9,24 21:1,5,6
  22:14 24:7,12,23
  24:24 25:2 39:5
  44:21 57:17
**conducted** 47:13
**conducting** 13:16
**conducts** 35:18
**conference** 63:3
**confident** 54:10
**confidently** 33:2
**confinement** 60:17
**confirmed** 47:14
**confront** 48:5
**conjunction** 8:1
**consequences**
  43:22
**consider** 25:13
  38:8 39:15
**consideration**
  21:14
**considerations**
  21:7,12
**consistent** 50:10
  54:18

**consistently** 32:20
**consultation** 55:24
**consultations** 56:1
**contact** 32:25
**contacting** 51:5
**contagious** 47:18
**contend** 4:23 7:8
  12:14 17:14
  18:10 24:11 28:9
  29:1 54:6
**contends** 16:1
**contention** 9:8
**context** 26:11
**continue** 38:5 50:9
  53:15
**continued** 45:3
**contours** 4:16
**contrary** 36:22
**control** 17:15
**controlled** 59:10
**conversation** 19:16
  20:5 21:25 61:18
**convicted** 6:16
  9:18 43:6 44:9
  57:23
**conviction** 8:13
  17:5
**convictions** 25:5
**cooperate** 59:16,21
  64:6
**corners** 39:22
**correct** 16:20
  50:13 57:7 66:5
**correctly** 58:7
**cost** 63:24
**costs** 39:24 40:1,7
  40:7 44:4
**counsel** 3:14 7:22
  26:25 28:5 49:10
  50:21 51:21 52:3
  52:8 56:25
**counseled** 22:8
**counsel's** 20:19
**count** 59:1
**counting** 8:12
**country** 6:5 18:1
  38:15 45:9 54:19

**counts** 11:22 57:23
  60:6,6,7
**county** 28:19
**couple** 41:4
**course** 7:4 26:25
  28:18 54:10
  58:10
**courses** 35:2
**court** 1:1 3:2,4,10
  3:16,20,23 4:1,3
  4:5,9,12,17,20,25
  5:2,4,7,9,12,16
  7:11,13,16,20,22
  7:24 8:2,4,6 9:10
  11:1,5 12:2,5,23
  12:25 13:4 14:1
  14:19 15:3,6 16:6
  17:17 18:25 19:4
  19:6,8,9,12,13,18
  20:9,11,12,17
  21:9 22:6,18 23:5
  23:22,24 24:2,6
  24:10,22 25:3,4,9
  25:11,13,23,25
  26:11,16 27:2,3,6
  27:9,11,16,18
  28:2,18,20,20,22
  28:23,25 29:7,8
  29:10,13 30:1,19
  30:24 31:25 32:2
  32:12 33:6,8,10
  33:11,23 34:1,1
  34:10 35:8,25
  36:12,14 37:2,5,5
  37:7,11,15,18,19
  37:21 38:4,6,7,19
  38:24 39:2,3,6,8
  39:15 40:10 41:1
  41:18 42:5,8
  44:21,25 45:9,20
  46:3,25 47:6,8
  48:22 49:22 50:1
  50:3,18 51:19,25
  52:10,13,16,20
  52:22,25 53:3,4
  53:18,21,23 54:1
  54:4,12,21 55:6

55:11 56:5,16
57:1,3,5,9 58:23
59:11,24 61:7,14
62:11,11,15,18
62:25 63:4,9,11
63:16,19,22,25
64:12,15,23,25
65:2,3 66:4
**courtroom** 3:18
15:12 20:4 21:23
22:18 29:7 41:12
46:17
**courts** 10:25 21:3
28:19 45:7 54:2
**Court's** 3:25 24:8
24:13 25:6,7,10
27:8,14 28:4 41:8
45:2 48:14 54:16
**cover** 8:20 15:25
40:15
**coverage** 39:20
**covered** 12:20
**covering** 6:17
**Cranford** 30:4
**create** 13:12,17,19
58:14
**created** 10:8 11:16
11:18 13:7 14:22
41:20
**creating** 13:25
**credible** 23:10
**credit** 55:17 59:19
**crime** 6:10 11:9
39:16 40:4,17
41:3,6 59:8
**crimes** 29:16,17
40:4 45:10
**criminal** 25:3,4,6
62:7
**criminally** 6:6
**criteria** 24:14
**critical** 62:23
**cross** 9:17,20 11:16
39:22 40:1 53:3
55:22
**cross-examination**
19:21

**cross-examine**
19:19
**cure** 38:12,16
**cured** 38:16 42:24
43:4
**current** 38:17
**currently** 32:4
**curtailed** 19:20
**custody** 58:24 59:4
62:21

**D**

**D** 2:2
**dangerous** 59:9
**date** 63:2,8,9
**daughter** 34:21
**daughters** 33:25
36:5
**David** 3:14
**day** 35:6,6 40:21
**days** 26:9 54:2,16
60:16 63:20
**deadline** 44:24
**deal** 4:12 5:4 8:6
38:21 48:4,15
52:21 54:24 57:1
58:1
**dealing** 11:17
**dealings** 59:18
**dealt** 13:13 38:14
**December** 50:15
55:7 63:9,14
**decide** 12:24 44:21
55:11
**decided** 17:3 39:18
43:6 54:25 55:23
**decides** 36:24
**deciding** 55:15
**decision** 27:20
**dedicated** 36:19
**dedication** 34:14
34:15
**defendant** 1:6,14
4:11 8:13 9:10,18
10:7 13:7 14:10
16:12 20:23 21:5
21:6 22:1,4,25

23:1,9,11 26:2,6
29:20,21 36:10
36:18 39:17
40:11,15,18 41:4
42:2,19,25 43:6
44:10 45:25 46:6
46:19 47:21 49:6
50:21 52:17,23
54:14 55:9,17,21
56:10,16,18
57:23 58:11,23
59:2,16 60:4,9,14
60:18 63:21
**defendants** 24:25
45:9 46:3,4,5
**defendant's** 9:6
16:7 24:7,23
28:14 29:5,11
33:25 40:20 41:2
42:1 45:3 54:12
54:19 56:9
**defense** 7:22 8:10
8:18 9:8 10:17,21
11:24 23:2 26:8
28:5 45:15 50:21
51:21 52:3,8
56:25 62:8
**defense's** 9:3 42:12
44:23 55:13
**deference** 28:19
**definition** 11:9
**degenerative** 43:23
**degradation** 33:15
**degree** 31:11,12
58:17
**degrees** 31:21
**deliberately** 10:8
**deliver** 34:6
**demonstrate** 36:21
**demonstrates**
32:11
**demonstrating**
36:22
**denied** 11:23
**Department** 30:5
**departure** 15:4
23:24 24:3,22

25:21 26:2,25
27:11
**departures** 25:19
26:12
**depending** 3:24
**depriving** 44:18
**deputy** 30:5
**described** 29:20,23
30:8 35:1,16
**describes** 34:23
36:6
**describing** 40:19
**Description** 2:10
**designed** 44:2
**desire** 33:19
**desired** 62:2
**Despite** 44:8
**destroyed** 16:4
40:13 41:19
**destroying** 58:12
**destruction** 15:17
15:17,18 16:1,18
17:21 18:15
20:24
**detail** 4:8 13:8,8,8
**detailed** 10:10
**detected** 42:16
**detection** 11:18
**detention** 27:21
28:11 39:2
**deter** 29:16
**determine** 10:25
58:6
**determined** 10:22
**determines** 54:21
**deterrence** 46:17
**deterrent** 41:10
**developed** 30:15
**Developers** 30:4
**device** 59:9
**devoted** 30:16
**diagnosed** 38:1
**diagnoses** 14:21
**diagnosis** 9:25
**die** 37:25
**died** 36:8
**differ** 25:11

**difference** 26:1
35:7
**different** 25:14
62:13
**difficult** 46:6 64:18
**difficulty** 11:17
**dignity** 35:19
**diligence** 33:4
**dire** 46:3
**directed** 59:22
**director** 30:5
**disadvantages**
25:16
**disagree** 56:24
**disclosure** 59:14
**disclosures** 64:2
**discovered** 48:25
**discredit** 23:10
**discretion** 25:10
**discuss** 32:20
49:10
**discussed** 5:21
**discussion** 57:9
**disease** 42:18
43:23 48:9,25
50:17 52:3,7,8
**dishonest** 34:17
**disparities** 45:24
**display** 6:13
**disposed** 8:10
**dispute** 20:19 22:2
43:12
**dissipation** 64:10
**district** 1:1,1,9 3:2
28:18,21,25 32:5
59:5
**DNA** 59:22
**doctor** 12:10,11
13:10 14:14
26:20 30:18
43:14,25 44:11
46:20 48:2,6 51:4
51:6 53:18 58:3
61:19
**doctors** 46:17,18
**document** 35:10
**documents** 4:15

9:16 21:11
**doing** 35:5,6 58:3
**dollar** 58:5
**dollars** 40:6 45:14
45:15 46:22
54:10,14,15
55:15 56:11,15
58:8,9 59:24 60:5
60:7,7,12,16,19
**double** 8:12
**doubt** 26:11
**downward** 15:4
23:24 24:3 25:21
26:1
**Dr** 2:11,13,16 3:18
4:9 6:14 15:11
18:19 19:22 20:2
20:20 22:19
23:12 25:3 29:23
29:24 30:2,3,3,8
30:10,21,22 31:2
31:5,7,15,21 32:3
32:7,13,13,14,17
32:19,21,24 33:3
33:7 34:7,21,23
35:9,9,11,16,18
35:24,25 37:23
38:19 39:2 40:21
42:22 43:11 47:7
47:10 48:18,18
49:11,17,18 50:6
51:8,13,13 52:21
53:2 58:23 60:23
61:18 62:23,25
63:5,5,12,13,19
**drives** 45:13
**dropped** 50:8
**dropping** 23:21
**drove** 58:17
**drug** 44:3,14 50:22
51:1,10 61:5,25
**drugs** 46:5
**drug's** 44:5 61:20
62:2
**due** 17:10 41:11
45:25 55:12
56:17 59:25

60:15,20 62:17
**Duke** 42:22 43:9
47:15 49:24
61:15 62:5
**duty** 47:21

**E**

**E** 2:2,3 66:2
**earlier** 19:15
**early** 32:18 38:1
47:11,15,23 49:1
49:1
**earned** 36:2
**easily** 8:9
**East** 1:16
**Eastern** 1:1 3:2
**education** 30:10
31:8 33:15 34:15
34:15,23,25
**educational** 31:3
**Edup** 2:16 35:9,9
**effect** 62:3
**effective** 44:6
**efficacy** 44:3,5
**efforts** 30:10 48:8
**eight** 17:3 49:18
**eighty-seven** 57:14
**either** 6:6,11 51:9
**elect** 43:7
**electronic** 1:25
66:6
**Eleventh** 21:16,21
**eliminate** 30:11
**eloquent** 40:19
**else's** 41:15
**employers** 47:23
**employment** 42:15
**en** 27:19
**enabled** 31:11
**encourage** 36:5
**encouraged** 31:11
31:16
**ended** 40:3
**enforcement** 16:11
16:13,17,21 17:7
18:7
**engender** 45:2,2

**enhance** 16:6
**enhanced** 25:5
57:12
**enhancement** 5:18
5:21 7:23,25 8:11
8:14,18,20 10:6
10:22 11:3,20
12:7 13:1,23
14:17 15:10,16
15:20 17:8 18:1,8
18:14,16,19
19:15 20:15,21
22:16 23:16
24:16
**enhancements**
4:24 5:22 8:1,3
8:23 9:1 15:4
18:9,22 24:1,5,8
24:19,23,24 25:1
25:2,22 27:4
45:19 57:10,15
**Enormous** 6:4
**enrolled** 44:11
60:23
**enter** 55:6 56:16
**entered** 4:22
**entering** 62:21
**entire** 60:1
**envisioned** 10:5,20
13:22
**equally** 14:17
**especially** 11:10,10
32:9,19
**ESQ** 1:14,15,18
**ESR** 1:21
**essence** 12:15
**essentially** 47:19
**established** 57:16
**estate** 56:13
**estimate** 55:16
**et** 41:8
**ethical** 32:8
**evade** 11:18
**event** 58:11 60:1
60:13
**eventually** 16:14
34:19

**evidence** 16:12,16
16:20 20:8 37:13
41:13 42:21 49:7
55:19
**evolved** 15:10
**evolving** 21:3
**ex** 18:16,21 21:7,11
**exactly** 10:4 41:19
45:1 48:9
**exam** 14:5
**example** 11:12
12:10 24:12 26:7
41:25
**exams** 13:14,14,16
**excellence** 30:16
**exception** 9:16
**exceptionally**
30:14
**excess** 56:11
**excessively** 25:5
**exchange** 47:19
**exclude** 9:1
**exclusive** 10:24
**excuse** 41:24
**execution** 10:5
11:11
**exercise** 25:10
**Exhibit** 19:14 32:2
33:11 34:2,12,22
35:10,24 36:16
41:1,2
**exhibits** 13:5 37:14
**experience** 2:17
25:8 48:14 62:7
**experiences** 37:10
**experiment** 51:8
**experimental** 43:9
44:2,16 50:22
51:12,14 61:5
**explain** 53:6
**explained** 51:2
**extensive** 14:5
**extensively** 5:25
**extent** 41:22
**extraordinary**
6:20
**extreme** 34:16

**extremely** 24:12
**ex-wife** 31:6
**eye** 32:17,24
**e-mail** 51:15

**F**

**F** 1:8 3:4 66:2
**facility** 48:12 62:10
**facing** 44:10
**fact** 4:25 6:21 7:25
8:22 9:7 11:20
18:22 22:12
28:20 32:19 36:7
37:23 42:11
50:22 52:3,9
54:23 55:20
**facto** 18:16,21 21:7
21:11
**factor** 46:16
**factors** 26:4 39:14
40:19
**facts** 10:22 18:1,9
18:12
**factual** 8:2 9:5
20:15 43:12
**factually** 10:22
16:20 25:14
**failed** 48:19
**failure** 44:3
**fair** 38:16
**fairly** 41:25 55:11
62:4
**falls** 24:18 26:13
**false** 6:18 9:8
12:17 13:17
41:20
**falsified** 6:9 7:3
**familiar** 25:7
**family** 31:13 33:12
33:14 34:3,14,17
34:18 35:18
36:10 41:21 46:8
46:10 53:11
**far** 6:11 50:22
60:21
**fashion** 19:17
**father** 34:25 36:8

**FBI** 3:14 19:23 22:1,2,4 23:13
**February** 38:9,25 44:22
**February's** 44:24
**federal** 16:3,8,15 17:1,7,7,18 18:7 18:18 19:24 22:3 22:9,19 44:10,13 45:7,9 59:8
**federalize** 18:2
**feel** 53:15
**feeling** 23:9
**feels** 22:18
**felt** 17:12 23:10
**Fen-Phen** 28:3
**fictitious** 58:14
**field** 13:11
**Fifth** 21:16
**fifty** 36:1
**fighting** 50:14
**figure** 55:3 56:2,9
**file** 63:20,22
**filed** 4:14,15 15:14 39:12 55:7
**files** 11:16 13:6 14:22 16:2,4,18 17:20 18:15 58:13,14
**filing** 28:1
**filings** 44:23
**finally** 26:21 46:15 47:15
**financial** 24:15 59:14,17 60:11 64:2,4
**find** 14:20 24:22 24:25 25:3,4,9 49:14 54:12
**fine** 2:8 36:15 58:18 60:5,12,13 64:17,20,22
**fines** 60:7
**finish** 27:12 31:11 31:16,18 49:8
**finished** 15:6
**firearm** 6:12 59:9

**first** 4:12,18 5:5 20:18 23:13 36:5 38:1 39:13 47:22 47:22 48:1 50:23 51:22 54:1 55:23
**fiscal** 18:2
**fits** 24:24 26:14,17 45:23
**five** 22:6 38:17 42:24
**flagrant** 58:2
**flat** 8:24
**fly** 47:25
**folks** 37:4
**follows** 5:14
**food** 34:3
**foot** 56:14
**force** 6:11,12
**foregoing** 66:5
**forfeiture** 4:5,4,5,6 55:7,14 56:21 58:9 63:17
**forgave** 34:19
**forget** 11:25
**forgive** 34:17
**form** 9:13,15,24 51:5
**formative** 33:20
**former** 15:21 62:7
**forms** 9:12,22
**forth** 12:22 41:22 47:17 57:10,18 58:7
**fortunate** 36:23
**forty** 22:5 40:10 49:17
**forty-eight** 48:18 51:12
**forty-five** 23:14
**forty-six** 57:21
**forward** 30:24
**found** 6:15 7:3 24:8,13 26:16 27:14 32:7 45:20 55:3,18 56:1 58:8
**four** 27:24 51:16 58:20

**frankly** 18:5
**fraud** 6:2,7,19,23 8:13,16,18,19 9:7 9:19 10:15 13:23 14:10 24:16 26:21 39:24 40:7 52:12,14
**fraudulent** 13:8
**free** 34:8 63:23
**freely** 27:1
**friend** 35:20
**friends** 31:7 58:15
**fueled** 33:18
**full** 15:16 56:17,22 59:14 64:18
**fully** 55:4
**function** 48:13
**furlough** 61:21
**furloughed** 61:16
**further** 27:7 29:16 56:4 59:23 60:4 60:18 63:13 64:2 64:10,15,25
**Furthermore** 34:4
**future** 41:23

**G**

**Gail** 33:9
**gained** 13:10
**Gall** 28:4
**garbage** 39:21
**Garrity** 1:21
**Generals** 30:7
**generosity** 34:16
**generous** 35:13
**gentleman** 40:25 43:23
**gestae** 12:14
**getting** 31:21 38:14 38:16 49:19 50:13 51:14
**ghost** 9:19,21,24 11:15 14:22 55:20
**give** 10:11 12:2 28:19,22 42:20 54:13

**given** 9:1 13:23 22:22 23:2 25:16 54:23 55:17 56:19 64:20,22
**gives** 27:3 45:15
**giving** 9:25 22:12
**global** 27:24
**go** 26:3 31:21 35:20 37:8 41:8 47:8 49:22 51:19 52:18,18 60:9 61:16
**God** 3:3
**goes** 27:8 49:24,24 51:18
**going** 18:8 20:1 31:10,22 44:13 48:3,3,12,13 49:18 51:14,18 57:5,20 60:2 62:8 62:24 64:17,17
**gold** 47:16
**good** 3:6,7,8,9,10 3:11,17 57:9 58:15 62:16
**gotten** 61:5
**governing** 17:14
**government** 1:11 7:14 12:25 14:16 15:16,24 16:1,23 19:1,14,16,21 20:8,10 28:1 36:9 39:8 43:14,25 46:25 47:9 50:13 51:3,16 55:4 56:3 56:20,23 60:5,22 64:8,21
**government's** 15:13 16:20 18:11 27:25 39:11 63:16
**graduate** 32:6
**graduated** 31:14 31:15
**graduation** 35:15
**grand** 17:22
**granted** 23:17

**great** 4:7 13:7,8 35:12,15 39:4 54:24
**greed** 39:18 46:22
**greedy** 36:21
**grew** 33:11 36:6
**group** 43:20
**growing** 25:17
**guess** 61:2 62:7
**guidance** 6:22,23 32:10 54:19
**guideline** 5:9 21:4 26:18 27:3,14 28:22,24 29:2 39:14 46:13 48:11 57:14,20
**guidelines** 4:17,23 5:19,22 6:22 7:6 7:7 8:24,25 11:10 16:10 17:4,12,12 18:13,15,16,21 19:3 20:19,20,22 21:7,10,13,14,19 24:5,21 25:7 26:8 26:9,14 27:2,20 28:13,20 45:7,13 45:18 62:19
**guiding** 25:16
**guilty** 6:15
**gynecological** 32:23 40:13

**H**

**H** 2:3
**Hahnemann** 32:17
**handed** 19:13
**handwritten** 29:19
**Hank** 49:9
**happen** 43:1 62:10
**happened** 39:4 41:12,13
**happening** 62:18
**happens** 58:4 62:11
**hard** 31:22 33:17 34:2 35:3
**Harris** 2:13 32:13

32:13,14 33:7
**healing** 33:2
**health** 6:2,3,4,7,19
8:13 9:19 34:8
36:17,20 39:24
40:7 51:1
**hear** 7:13 8:4
12:25 18:8,25
63:12
**heard** 3:3 23:23
39:25 46:23
62:12
**hearing** 1:8 4:2,19
28:4 39:13
**heartland** 5:24
24:19,22 26:5,12
26:14,17,23 27:4
**heartland's** 25:25
**held** 21:9
**help** 25:16 33:19
46:8 63:15
**helped** 34:2,4
**hepatitis** 25:18
28:15 37:23
38:10,12 42:3,9
42:13,16,21 43:7
43:16,20,22 44:8
47:11,17,24 49:2
61:12 62:20,22
**He'll** 30:24
**Hi** 31:4
**hiding** 11:13 58:13
**high** 24:15 26:13
31:15,15 44:12
64:20
**higher** 33:14 44:7
49:20 56:8 58:4
**highest** 32:8
**highly** 52:3
**HIPAA** 17:22 51:5
**histories** 25:4
**history** 25:3,6,15
28:14 29:5,12
40:12,13,18
41:21 45:16
**home** 27:21 28:10
39:1

**homes** 56:12
**honest** 36:21
**honesty** 33:4
**honor** 3:6,7,9,12
3:17,21 4:8,11,14
4:18 5:14,24 6:2
6:10,19 7:5,18,19
8:8,14,24 9:6,22
10:6 11:3,25 12:7
13:3,13,21,25
14:14 15:2,8 16:5
16:23 17:14,21
18:10 19:2,10,17
20:7,18 21:2,8,22
22:9,17,22,23
23:20 24:7,18,20
25:24 26:7,15,22
26:24 27:5,7,13
27:17 28:6 29:18
29:19 30:3,8,10
31:1,5 32:1,3,7
32:13 33:2,9,24
34:1,11,22 35:10
35:19,22,23 36:8
36:16,18 37:3,16
37:22 38:23 39:6
39:9,14,16 40:3,5
40:9 41:2,3,5,11
41:24 42:7,12,17
42:19,25 43:5,10
43:19,24 44:15
44:17,19,25 45:5
45:6,23 46:2,11
46:12,15,22,23
47:17,25 48:6,24
49:2,24 50:2,5,20
50:24,25 51:2,20
51:22 52:7,12,14
52:23 53:2,13,14
53:19,25 54:5
55:2,9,11,22 56:2
56:7,10,15,24
57:7 61:4,9,17,23
62:6,12,16,23
63:14,18,21 64:8
64:14,17,24
**Honorable** 1:8 3:4

3:4
**honored** 30:17
**hoping** 44:21
**hornbook** 18:20
**hospital** 32:17
42:15
**hour** 22:6 23:15
**hours** 28:11 48:18
49:18 51:12 59:4
**house** 2:12 32:2,3,3
56:13,14
**housed** 61:15
**housekeeping**
63:25
**Huh** 52:13
**human** 35:15
**humble** 40:20
**hung** 22:7
**hurt** 53:14
**husband** 33:10

# I

**IBC** 15:19 17:18
17:19 53:3 54:10
54:18 64:21,22
**IBC's** 54:8
**idea** 13:19 14:5
**identities** 6:24
**II** 60:6
**III-LXXXII** 60:7
**ill** 23:9
**illegal** 20:7 59:10
**illness** 38:8 43:2
**imagine** 26:17
**immediate** 33:1,14
**immediately** 56:17
59:25 60:20
**importance** 31:8
**important** 26:20
31:9 46:16 47:2
**impose** 39:6
**impressed** 32:19
34:14,16
**imprisoned** 58:25
**imprisonment** 2:5
59:2
**incarceration**

27:21 28:10 39:1
**incentives** 56:19
**incident** 12:21
**incidentally** 57:11
**include** 59:15 64:1
**included** 10:10
14:3
**income** 59:15,19
**incorrect** 9:3 12:16
**incorrectly** 53:7
**increase** 8:15
**increased** 39:24
**incurring** 59:19
**indicate** 5:9 11:13
21:7 61:1
**indicated** 61:19
**indicating** 19:22
**indication** 47:23
**indications** 14:4
**indicted** 42:14 52:2
**indictments** 57:19
**individual** 10:23
**individuals** 59:12
**infirmity** 38:12
**information** 9:13
9:24 10:10 31:12
64:5
**inherently** 6:6
**initial** 46:1
**Inmate** 60:11
**inmates** 47:20
61:12 62:20
**innate** 46:10
**input** 58:18
**inquire** 47:3 50:20
**inquiring** 35:14
**inquiry** 17:25
**insidious** 48:9 49:7
**Inspector** 3:14
**inspirational** 29:21
**installments** 60:15
**Institute** 32:17
**insufficient** 20:15
**insurance** 9:9,14
12:18 39:18,19
40:5 55:16
**integral** 6:13 12:9

**intensive** 34:23
**intentionally** 6:16
**interactions** 32:9
**interest** 35:12
56:17 59:24 60:8
**interested** 32:22
**interests** 41:15,16
42:2,2 45:4
**interfere** 60:25
**intermediary's**
18:3
**interview** 43:13
**interviewed** 22:20
43:11 51:3,4,6,7
**intricate** 11:11
**introduce** 3:21
29:6
**introducing** 36:14
**investigated** 6:4,5
**investigation** 16:3
16:8,11,13,14,15
16:17,22 17:1,7,8
17:9,16,18 18:7
18:18 19:25 21:1
22:3,10 45:22
58:10 59:17
**investigator** 20:1
20:13
**investigator's** 20:3
**involve** 9:7 12:5,17
12:19 14:20
**involved** 9:9 10:5
10:16 13:7 35:16
57:18,24
**involvement** 30:9
34:24 35:2
**involves** 11:2 12:17
**irresponsibly** 48:7
**Islands** 6:24
**issue** 12:23 17:13
19:2 21:22 23:6
25:20 45:5,6 47:7
49:10 52:10
53:20 55:10
56:23
**issues** 7:23 9:3
15:11 37:17

39:10 51:21
**IV** 61:20
**I-LXXXII** 59:1

**J**

**jail** 44:20
**January** 42:13
  48:25 50:4,16
  51:17,24
**Jenkins** 16:5,9,16
  16:22,23 17:3
  18:23
**Jersey** 30:4
**job** 40:19
**John** 2:12 30:7
  32:2
**Johnson** 2:11
  29:17,18,18
**Judge** 1:9 10:18
**judgment** 55:7
  56:16 58:23
**July** 1:5
**jury** 7:3 9:18 15:18
  17:23 44:9 54:7,9
  55:3,14,18 58:8
**justice** 5:3 15:1,9
  15:20,22 16:7,13
  20:21 23:16
  28:23 30:6 45:22

**K**

**keep** 29:16 44:20
**Kelly** 1:8 3:4
**kept** 14:3,12
**kids** 35:17 39:22
**killer** 37:24
**kind** 6:3,23,23,25
  17:23 35:19
  41:22 49:6
**kinds** 5:22 6:18
  24:15,19
**King** 1:5 2:14,15
  3:18 4:9 19:22
  20:2,20 22:19
  23:12 25:3 29:23
  29:24 30:21,22
  31:2,5,7,15,21

32:3,7,18,19,21
32:24 34:7,13,17
34:18 35:11,16
35:18,24,25
37:23 39:2 40:22
47:10 48:18
49:17,18 51:8,13
52:21 53:2 58:24
60:23 62:25 63:5
63:19
**King's** 6:14 15:11
  18:19 30:8,10
  33:3 34:21,23
  47:7 49:11 63:13
**knew** 32:4 42:12
  44:17 58:3
**know** 7:24 8:1,21
  10:18 28:4 31:2
  35:18 40:20
  41:12 47:2 48:25
  51:23 52:23
  53:21,23 58:16
  61:7,14,22 64:4
**knowing** 16:12
  44:8,9 52:6,8
**knowingly** 6:16
**knowledge** 12:11
  13:18 29:25
**known** 34:13 35:11
  35:24 36:19
  48:22 52:18
**knows** 40:10 41:18
  48:9 64:21
**Kopp** 18:22

**L**

**L** 1:18,18
**laboring** 7:7
**lady** 35:25
**laid** 15:10 17:17
  54:5 56:5
**landmark** 50:6
**Laresha** 2:14
  33:25 34:1
**large** 33:12 46:18
  46:19
**LARRY** 1:14

**lasted** 22:5
**late** 16:9 30:6
  47:16
**latest** 15:13
**lavishly** 36:4
**law** 5:25 7:5,6
  10:24 16:11,12
  16:17,21 17:7,15
  18:7,12,20 21:2
  26:12 54:21 55:9
**laws** 21:12
**law-abiding** 36:21
**lay** 4:16 37:23
**lays** 38:19
**lead** 13:11 58:18
**leading** 37:24
**leave** 47:6 60:2
**led** 33:21
**Lee** 33:10
**legitimate** 14:12
  40:12
**legitimately** 22:13
**lenient** 31:23
**letter** 2:11,11,12
  2:12,13,13,14,14
  2:15,15,16,16
  22:24 23:1 29:19
  29:24 30:2,17
  32:1 33:10 34:1
  34:12,22 35:10
  35:23 37:5 38:19
  49:17
**letters** 3:20,21
  40:23,24 41:14
  58:19
**let's** 4:12 15:6
  16:19 18:25 19:9
  29:4 39:19 51:22
**level** 4:21,23,23
  27:20 28:10
  30:12 33:15 49:3
  49:3,4 57:12,13
  57:20,21
**levels** 5:1 11:8
  13:16
**Levis** 66:4,12
**lie** 19:23 22:8

26:24
**lied** 22:19
**life** 2:17 29:14,21
  30:9,23 31:2
  33:16 34:3 37:9
  48:4 58:18
**light** 28:13,14 29:2
**limited** 38:22
**line** 2:4 31:19
**liquidate** 56:18
**list** 10:24
**listened** 31:10
**listing** 64:1
**literally** 55:25
**little** 16:15 18:5
  23:3 33:12,20
**lived** 45:7
**liver** 37:24 43:21
  48:13
**lives** 35:17 36:3
**living** 30:12
**LLP** 1:15
**local** 59:8
**locked** 29:15 51:18
**long** 29:15 36:1
  48:23 50:3 61:25
  62:3
**longer** 21:10,13
**look** 5:25 6:14,20
  40:24 41:1 45:10
  45:12
**looked** 31:17
**loss** 54:8,11 56:8
**lost** 54:10
**lot** 11:21 37:21
  38:21 40:23
  58:15 62:13 64:4
**love** 35:5 40:21
**lover** 15:21
**loves** 41:7
**loving** 36:10 46:7
  46:10
**low** 38:17 55:16
**lower** 7:10
**loyal** 58:15
**loyalty** 33:4
**LXXIII-LXXXII**

11:22

**M**

**Madoff** 24:15
**maid** 46:8
**mainstream** 24:17
**maintained** 62:22
**major** 32:5
**making** 36:12 48:8
**man** 30:21 36:19
  44:15 51:3
**manager** 32:5
**mandatory** 21:10
  26:9
**manifest** 42:10
**manual** 18:15 38:3
  47:18
**man's** 40:4 45:13
**marked** 2:10 19:14
**market** 44:6
**Maryland** 30:16
  56:13
**masks** 48:1,1
**material** 33:13
**materialistic** 36:3
**materially** 17:9
**materials** 3:25
**matter** 16:2 57:6
  66:7
**Maureen** 1:11 3:12
**ma'am** 33:22
**McCartney** 1:11
  3:7,13 7:18,21
  8:5,8 11:2 13:3
  20:18
**MD** 1:17
**mean** 13:13,16
  19:4 57:5,25
  60:22 61:18
**means** 5:17,18 7:9
  8:21 9:7 11:8,10
  11:10,14,19 26:6
  26:15 45:12,21
  60:23
**meant** 8:14
**medical** 9:11,16,17
  10:8 13:10,17,20

14:1,2,7,14,15,21
14:23 30:14
33:21 35:17
37:17 40:11,12
41:24 46:20 47:7
48:15 49:3 55:25
58:14,17 60:22
62:1
**medication** 38:2,17
38:23 49:19
50:11 51:10,14
62:24
**medicine** 12:19
13:11 33:21 35:3
44:15
**meet** 24:13 28:7,8
**meeting** 51:6
**meets** 28:11
**member** 33:13
**memo** 7:22 8:10,22
9:3
**mentioned** 27:25
**mentor** 25:15 29:5
**mentored** 29:24
30:21
**mentorship** 28:15
29:23
**met** 31:5,6 32:3,17
36:1
**method** 26:20
**methodology** 8:15
9:6 10:16
**mid** 50:8 63:5
**middle** 34:7 48:16
50:5 62:25
**midsentence** 3:1
**mid-November**
63:12
**mid-October** 50:7
**mill** 17:25
**million** 40:6 46:21
**mind** 18:4 43:3
**minimized** 38:13
**minimum** 60:11
**minister** 36:17
**minute** 46:24
**minutes** 22:6 23:14

29:8
**mischaracterizes**
47:9
**misconduct** 39:5
**misinterpreted**
57:25
**misunderstanding**
58:2
**Mitchell** 30:7
**mold** 31:17
**moment** 58:21
**money** 35:6 45:13
45:19 54:24
55:15 64:22
**month** 54:17 57:22
**monthly** 59:18
60:15
**months** 2:5 27:21
27:21 28:5,10,10
39:1,1 48:17
50:12 51:16
57:15 58:25
**Morgan** 32:6
**morning** 3:6,7,8,9
3:10,11,17
**motion** 63:16
**motivated** 39:17
**move** 37:13
**Muir** 38:19 42:22
43:11 48:18 50:6
51:13 61:18
62:23 63:5,12
**multiple** 6:24
**murder** 12:10
**murky** 16:15
**muscle** 32:24
**M.D** 1:5

---
**N**

**N** 2:2 66:2
**name** 31:4
**names** 53:12
**narcotics** 12:12
**Nathan** 2:11 30:3,3
**NATHANS** 1:14
1:15 3:9
**national** 38:18

**nationwide** 43:17
**nature** 38:20 39:15
**near** 46:2 61:15
**necessary** 22:19,22
23:5 28:6,8 45:11
57:3
**necessities** 33:16
34:3
**need** 16:25 21:21
29:15 37:22
47:13 62:4 63:7
**needs** 6:7,8,11,12
13:4 32:23 50:9
50:16 54:20
**neither** 27:25
**never** 40:14 41:14
41:16 50:22
62:12
**new** 10:8 21:8 30:4
51:1,10 59:19,20
63:6
**nine** 27:21 39:1
**ninety** 54:2
**ninety-nine** 4:16
**ninety-six** 58:5
**normally** 5:4 10:9
**note** 6:11 7:6 11:20
22:14 41:1
**November** 50:6,8
62:25 63:6
**nuclear** 33:12
**number** 3:19 4:14
6:17 7:17 11:6,23
11:24 14:24 15:1
22:14 23:18
28:13 30:2 38:1
45:15 55:17
61:24 64:20

---
**O**

**o** 40:17 66:2
**oath** 21:23 23:3
64:9
**objecting** 4:21
**objection** 4:13 7:17
11:6,22 14:24
15:1 16:6 23:18

23:20
**objections** 4:12,15
5:5,13 15:7
**objectives** 28:7,13
**obligations** 59:21
**obstetric** 32:23
**obstruct** 23:16
40:16 45:22
**obstructed** 16:13
**obstruction** 5:3
12:3 15:1,9,20,22
16:7 19:5,6 20:21
26:21,24
**obstructive** 20:9
20:24 22:14
**obtain** 33:14
**occur** 17:25
**occurred** 14:3 18:6
18:6 21:4
**occurring** 17:6
**offense** 4:21,23
5:23 6:3,7,13,24
7:9 11:8,11,12
12:8,15 14:24
17:17 28:10
39:16 57:12,13
57:21 58:12,20
**offenses** 14:20
**offer** 38:3
**offered** 21:23
22:18
**office** 1:12 3:13
4:22,25 5:18 9:21
22:5,11 54:13
56:3 59:5,14,16
59:17
**officer** 51:15 59:22
**office's** 17:16
**official** 66:6
**offshore** 6:21
24:14
**okay** 3:16,23 4:3
5:2,6,8,11,12
7:15 8:5 11:1
12:6,25 14:19
15:8,8 16:21
18:17 19:2 23:22

25:23 27:6,17
29:13 30:1,25
33:23 34:10
36:12,13 37:2,8
37:20 42:8 44:24
51:10,16,19
52:20 53:18
63:11 64:4,24
65:1
**old** 12:15 16:24
18:22 26:9
**older** 36:7,9
**once** 31:15 34:17
50:1,2 55:24
**ones** 10:9 14:11
17:20
**ongoing** 29:22
**open** 21:2 53:19
60:2
**opening** 59:20
**Operator** 1:21
**ophthalmologist**
32:14
**opportunity** 34:5
60:24 64:9
**opposite** 45:1
**order** 6:6 11:18,25
13:23 14:23
40:15 54:2 55:8
62:5
**ordered** 59:23 60:4
60:18
**ordering** 56:16
**orders** 54:16
**ordinarily** 11:13
**outcome** 44:19
**outlier** 16:5
**outside** 5:24 20:3
24:18,21 26:5,13
62:10
**overall** 38:12
**overbilled** 14:22
41:7
**overbilling** 58:6
**overcame** 25:17
**overcome** 46:1
**overlapping** 57:19

**overrepresentati...** 24:20
**overrepresents** 25:2
**overruled** 14:25
**overseas** 12:12
**overwhelming** 33:4
**owns** 56:13
**oxygen** 47:25

**P**

**PA** 1:4,13,20
**page** 2:4 23:15 37:9,9
**pages** 10:9
**paid** 55:21 60:13
**panic** 58:11
**pap** 13:14,15
**papers** 5:20 6:1 12:22 27:25 53:20 54:6
**paragraph** 11:7 58:7
**parents** 36:11 46:4 48:1
**parsimony** 28:2 45:6,11
**part** 4:18 8:12 37:11 47:15
**participate** 48:4 60:10
**particular** 7:23 26:21 32:23
**particularly** 6:1 13:6
**partway** 44:4
**pass** 40:1 47:1
**passed** 39:24 40:7
**passionate** 36:19
**patient** 6:18 9:12 9:22,24,25 10:12 11:16 12:17 13:6 14:22 22:4 32:24 32:25 55:20,23 58:13,14
**patients** 9:11 14:2

14:6,12 22:11 32:9,20,22 33:5 34:6 39:21 40:11 41:17,20 43:16 43:20 52:6
**Pause** 4:4 19:11 47:5 57:8
**pay** 55:10 56:9,17 58:1 60:4,18
**paying** 40:3 64:20
**payment** 54:15,23 59:21 64:18
**payments** 54:17 60:12 64:11
**peers** 44:9
**Pennsylvania** 1:1 3:2 30:15
**penny** 64:21
**people** 3:19 29:6,8 33:19 35:4 37:24 37:25 40:21 41:7 43:17 44:1 45:18 53:10 55:22 58:15
**percent** 4:16 42:24 43:4 55:19,19
**performance** 30:8
**performed** 14:9 30:14
**performing** 13:14
**performs** 32:16
**period** 33:1 47:14 61:25 62:3,24
**periodic** 62:1
**perjury** 23:4
**permit** 61:21
**perpetrating** 9:6 10:15
**perpetuate** 13:23
**person** 12:9 35:19 40:1 42:20 44:4 59:5
**personal** 28:14 29:5,11,25 34:24 35:1 45:16
**personally** 29:22 32:20 34:6 48:18

**pertaining** 11:11
**ph** 13:16 15:22 29:17 30:3 32:2 33:9,25 34:11 35:9,23 36:15 64:6
**pharmaceutical** 32:3,5
**phase** 55:14
**Philadelphia** 1:4 1:13,20 32:15 39:20
**phone** 20:1,9 21:25 22:7
**photographs** 2:17 37:6
**physician** 33:3
**piece** 56:13
**pilot** 12:13
**pilot's** 12:13
**pivotal** 12:23
**place** 16:8,19 17:19 19:24 21:4 21:25
**placebo** 51:9
**placed** 59:2
**Plaintiff** 1:3
**planning** 10:5
**plans** 35:15
**played** 29:21 30:22 31:2
**pleadings** 39:12
**Please** 3:5 37:13
**plus** 51:9
**point** 11:20 13:1 22:9 23:16 29:6 31:19 37:16 42:17,18 53:5 57:2 60:25 61:10
**points** 15:25 36:10 39:13 57:12
**poison** 12:11,12
**population** 48:21
**portion** 9:15 10:13
**Posey** 64:6
**position** 4:16 15:15
**positioned** 30:13

**positive** 50:7
**possess** 59:10
**possessed** 13:9
**possessing** 59:9
**possibility** 47:11 51:16 61:14,19
**possible** 3:24 42:9 55:3,12
**possibly** 4:1
**post** 18:16,21 21:7 21:9,11 35:14
**Postal** 3:14
**postoperative** 33:1
**postpone** 38:24 63:14
**post-sentence** 63:1
**potential** 44:19
**practice** 9:11 12:19 13:11 14:16 30:15 32:16
**practicing** 32:14
**praise** 34:6
**pre** 20:25
**precedent** 16:24
**precedents** 27:19 28:4
**predicament** 35:20
**prepare** 12:11
**prepared** 12:10 43:13 54:13
**preponderance** 20:8
**presentation** 27:12
**presented** 10:23
**presentence** 4:5 11:7 57:10 58:8
**preserve** 25:20
**president** 35:1
**presumption** 28:21 28:24 29:11
**pretrial** 63:1 64:19
**pretty** 7:8
**prevention** 62:19
**previously** 4:15 19:19 30:4
**prior** 25:5 60:1,13 64:3,12

**priority** 64:20
**prison** 44:13 52:7 52:18,18 60:9,21
**Prisons** 38:3,21 42:20 49:9 58:25 59:4 60:10 61:1 61:10
**Prison's** 38:3
**private** 32:15
**probability** 44:12
**probably** 9:10 14:1 31:5 43:19,22 50:8
**probation** 4:22,24 5:17 17:16 51:15 56:3 59:5,13,16 59:17,22
**problem** 48:5
**problems** 37:24 40:13
**procedurally** 54:20
**proceed** 15:2
**proceedings** 1:25 66:7
**process** 31:20
**profession** 30:17 35:5
**professional** 35:3 36:1
**professionalism** 32:8
**professionally** 32:4
**professionals** 62:5
**profile** 24:15
**program** 60:11,22 61:2
**programs** 38:15
**progress** 35:14 63:5,7
**progressed** 49:3
**progression** 48:10
**prohibited** 59:8,19
**prohibition** 21:12
**promising** 43:15
**prong** 19:15
**prongs** 18:11

proper 4:23
properly 56:18
proposed 55:8
prosecutor 62:7
prosecutors 17:21
  49:12 54:7
protocol 42:21,22
  42:24 43:8,9,10
  43:14,15,17,18
  43:25 44:1,2,11
  44:17 47:12,17
  50:10 51:12
  61:11
proud 36:4
prove 44:3,5
proved 44:5
provide 27:20
  30:17 34:2,4
  38:22 39:2 48:3
  54:16 59:13,18
  60:11 61:10,12
provided 19:14
  28:1 29:23 34:8
  34:12 36:16
  38:19 39:3 63:23
  64:4,5
providers 6:4
provides 47:12,18
providing 3:25
  12:17 39:20 51:5
provision 27:22
  28:2 45:6,11
PSR 15:10 17:17
  17:19 56:6
PTA 35:1
public 39:25 40:8
  46:19
PUGH 1:18,18
punished 46:21
punishment 8:15
  10:14
purpose 51:22
purposeful 12:15
purposes 28:8 29:3
  42:4
pursuant 39:6
  51:12 54:21

58:22
put 10:11 13:18
  41:15,16 42:1
  45:4 46:8 48:1,2
  49:7
puts 22:24
putting 53:12
  57:12

## Q

quarantined 47:20
quarter 60:12
quarters 40:6
  46:21 48:20
question 15:3
  17:15 19:24,25
  26:8 47:10 63:25
questions 56:5
quickly 32:21
quite 25:25 40:17
  56:3
quote 62:19
quoted 28:1

## R

R 66:2
raise 7:22 25:20
raised 8:10,17 10:2
  39:10 46:4
raises 8:22
Ramsey 30:7
Randall 2:12
Randy 31:4
range 27:2,14
  45:15,17
ratchet 25:6
rate 38:16,18
  49:21
Rayo 15:22 19:16
  19:21,25 20:5,6
  21:23 22:23,24
Rayo's 23:7,17
reach 56:20
read 17:2 20:12
reading 17:11
real 14:12 56:13
really 5:22 11:6

17:1,15 31:19
  44:24 46:25 47:9
reason 7:5 14:8,8,9
  41:8 43:1,3
reasonable 28:12
  28:22,25 29:1
reasons 12:21 39:5
  56:25
rebuttable 28:24
recall 14:1 19:18
  23:7,14
recalled 13:4
recalls 9:10
receive 37:5 44:14
  61:24
received 14:20
  22:2 32:2 50:22
receives 50:23
receiving 21:25
  39:23
recess 65:2
recommended
  4:25 60:10 64:19
reconsider 58:21
record 5:15 7:20
  9:16,17 13:18
  14:7 16:21 37:11
  39:11 48:7 51:23
  55:25 61:23
recorded 1:25
recording 1:25
  66:6
records 6:8,18 7:3
  10:9,11 13:20
  14:1,2,11 15:19
  17:21 20:24
  40:11,12 41:20
  41:20,23 49:3
  59:14
record's 16:14
  47:13
recounts 20:5
rectal 13:16
reduce 57:20
reference 3:21
  30:18
references 24:21

referral 9:14
refers 11:6
reflect 58:21
Reform 58:22
regard 7:23 8:20
  9:2,21 13:1,6
  20:19,25 21:3,24
  22:20 27:1,1
regards 9:5 14:17
Region 49:9
regional 30:5
regular 62:4
reimbursement
  58:5
reiterated 28:3
relate 17:20
relates 21:19 24:4
release 2:6 27:22
  59:2,3,4,7,12
  60:14,16 62:8
  63:1 64:1,3,4,13
released 59:6
relevant 53:22
relies 16:4 19:16
rely 16:23,24
remained 32:25
remaining 53:19
remember 6:2
  32:23
remind 29:7
remorse 25:17
  28:16 39:4 41:9
remotely 6:25
repeatedly 54:8
report 4:5,10 11:7
  20:5,13 44:22
  57:10 58:8 59:5
  60:9 64:19
reporting 60:21
representative
  32:4
represented 19:20
  50:21
request 15:3 23:16
  59:15
requested 39:7
  58:13

require 39:14
required 12:11
  14:23 26:7 28:3
  55:9 64:11
requirement 28:12
  59:25
res 12:14
residing 3:5
resolving 44:8
resources 38:22
  54:20,23
respect 4:17 15:9
  15:25 16:1 17:10
  18:10 23:25
  25:24 36:2 39:9
  39:11 41:12
  45:25 55:10,12
  56:7,9,22 62:18
  63:12
respectfully 56:15
  56:24
respond 48:19,21
responded 51:11
response 7:16 18:2
  50:7
responsibility 41:6
  41:10 60:11
responsibly 38:13
  48:6
rest 48:20 57:4
restitution 2:7
  53:20 54:2,4,6,11
  54:22 55:1,10,11
  56:8,17,21,22
  59:23,25 60:1
  64:11,19
result 12:18 38:23
resulted 58:6
results 13:15
retirement 54:24
  56:10,24
retrieved 40:14
returns 59:15 64:5
revealed 41:13
reviewed 23:6
right 3:23 5:16
  12:2 18:25 24:6

25:25 26:17
27:12,17 29:10
29:13 31:22
48:16 50:18
51:25 52:20,20
52:21,22 53:13
53:14 56:19 57:6
64:12
**ripped** 40:5
**rise** 9:25 10:11
22:12
**risk** 50:25 52:5
**Rita** 28:3
**Rivkah** 66:4,12
**rob** 6:10
**Robert** 1:8,15 3:4
3:17
**role** 29:5,20,21
30:22 31:2 34:23
34:25
**Ronald** 2:11 29:18
29:18
**room** 44:23
**routine** 42:15
**rule** 10:21
**ruling** 3:25
**RULINGS** 2:4
**run** 17:24
**run-of-the-mill**
48:12
**Russell** 2:16 35:23
35:23
**Ryan** 3:15

**S**

**S** 2:3 40:16
**sacrifice** 33:17
**sad** 40:21
**Sadowski** 49:9,15
**safe** 44:6
**salutary** 45:8
**sat** 9:21 10:18 13:7
13:20 41:18
**satisfied** 55:4
**satisfy** 60:15
**save** 3:3
**saw** 53:8,9

**saying** 18:6
**says** 6:23 16:23
20:6 38:4 49:4,7
49:8 50:10 62:20
**scanned** 9:14
**scarcity** 33:16
**scarring** 43:21
**scenario** 9:5
**schedule** 54:23
**scholarship** 30:13
**school** 13:10 14:15
30:14 31:6,15,15
31:18 34:7 35:14
46:9
**score** 25:6
**screen** 44:1
**screening** 42:16
**screenings** 34:8
**search** 22:21
**seated** 3:5,18 52:25
**Seattle** 42:14
**Second** 21:16,20
**secondly** 15:20
38:11
**section** 10:23
**secure** 64:9
**see** 31:23 42:5
44:22 62:2,18
**seek** 42:19,25 43:3
43:6 52:2
**seeking** 42:15
**seen** 10:1 55:23
**sees** 17:17
**selected** 52:10,15
**self-surrender**
38:9,24 63:2,8,9
**sending** 13:15
**senior** 32:5
**sense** 24:18
**sent** 20:10,12
32:24 48:11
**sentence** 2:4 16:7
27:3,23 28:5,9,9
28:12,16,22,25
29:2 38:11 39:1,7
44:10 46:13
48:11 57:14,22

64:23
**sentenced** 21:6
**sentencing** 1:8
4:18 5:19 7:22
17:2,10 18:13
28:7,9,14 29:3
45:18 54:3 58:22
**separate** 8:23 9:12
23:25 24:4
**separately** 9:2
**series** 47:12
**serious** 38:20
39:16 40:17
58:19
**seriousness** 39:15
**serve** 30:11 52:7
**served** 17:22,22,23
30:5 59:1
**service** 28:11
**services** 34:8 64:19
**set** 10:8 12:21 27:2
57:10,18 58:7
**sets** 47:17
**seventy** 57:14 59:3
**severely** 46:21
**severity** 25:2
**shackles** 30:12
**share** 36:24
**shelter** 34:3
**Shield** 53:3
**shorten** 38:11,25
**shortly** 63:3
**shot** 38:10,16
50:16
**show** 20:8 23:8
35:3 37:9 50:7
**showed** 23:11
35:12
**shown** 39:4
**shows** 29:15 48:7
**siblings** 31:16
**sign** 63:16
**significance** 44:16
**significant** 40:21
**similar** 5:21 34:15
49:6 61:2
**similarly** 18:22

34:7 48:2
**simply** 7:9 9:8
18:12 36:3
**sincere** 35:21
**single** 46:4
**sir** 4:11
**sis** 36:11
**sister** 34:5 46:8
**sisters** 31:20 36:7,8
**situation** 8:22
10:20 13:12
31:18 40:24
53:12,15
**situations** 10:4
13:13
**six** 27:20 34:13
39:1 50:12
**skill** 12:3,5,9,9,13
12:21 26:7,19
46:7
**skills** 13:2,9,21,21
13:22 14:13,15
14:17 45:21
**slot** 44:4,18
**smears** 13:15,15
**society** 46:20
**solely** 23:17
**somebody** 47:1
48:22 57:25,25
**sons** 35:12
**soon** 63:12
**sophisticated** 5:17
5:18 6:1 7:9 8:21
9:7 11:8,9,14,19
12:1 24:13 26:6
26:15,16 45:21
**sophistication** 5:23
7:1 10:16 11:2,14
**sorry** 24:2 50:4,8
53:5,6,13,17 63:1
**sort** 23:18
**sought** 43:8
**sound** 1:25 66:6
**sounds** 60:24
**speak** 49:12
**special** 2:8 12:3,5,9
12:13,21 13:1,9

13:21 14:17
26:19 45:20
60:19
**specific** 17:6 20:25
24:21 45:15
**specifically** 4:24
6:15 8:25 17:4
21:9,18,24
**spirit** 34:15
**split** 27:22
**spoke** 19:22 48:18
49:10,17
**spur** 58:21
**squandered** 46:11
**square** 56:14
**st** 31:17
**staff** 34:6
**stage** 55:24
**stand** 19:7
**standard** 26:13
42:21 43:8 47:16
48:17,19,21 51:8
51:11 59:11
61:11
**standards** 32:8
**stands** 64:23
**start** 7:2 29:4
**started** 22:3
**starting** 64:3
**state** 16:11,12,14
30:13 32:6 33:3
59:8 62:11
**stated** 28:20 32:7
32:18
**statement** 20:25
39:3,4
**statements** 15:13
58:19 59:18
**states** 1:1,2,9,12
3:1,3,12 22:23
33:2 35:2 60:5,19
**status** 46:20 63:3
**stay** 52:25 62:5
63:1
**steal** 39:18
**stealing** 46:21
**step** 39:19

**Stephenson** 2:13
33:9,10
**stole** 45:14,18
**story** 29:14
**Street** 1:12,16,19
**stressed** 31:8
**strictly** 24:4
**strive** 33:14
**stuck** 41:22
**study** 47:16 49:20
50:9 51:3 62:5
63:7
**subject** 15:18,19
17:5 23:4 24:25
**submission** 6:18
15:14 42:12
**submit** 9:12,13
10:18 11:3 14:16
22:15 42:25
43:19 44:20,25
46:12 62:23
**submitted** 6:8 7:4
9:17,18,20 10:3
13:5 23:2 49:17
**submitting** 9:8
**subpoena** 17:22,23
17:24
**subsequently**
58:13
**substance** 59:10
**substantial** 44:10
**substantively**
28:17
**successful** 42:23
**successor** 64:6
**suffer** 43:15,20
**suffering** 42:18
43:1
**sufficient** 28:6,7
**suggest** 23:2 41:14
55:5
**suggested** 57:14
**suggests** 42:22
**Suite** 1:13,16,19
**summarize** 37:17
**summary** 17:16
23:18

**summer** 34:9
**Summit** 30:4
**superior** 30:8
**superseded** 16:15
**supervised** 2:6
27:22 59:3,7,12
60:14 64:1,3,3,12
**supplementing**
5:14
**support** 6:9 18:12
18:12,14 40:22
**supported** 53:11
**supports** 10:24
**suppose** 61:18
**Supreme** 28:18,20
28:23
**sure** 25:7 33:1
37:16 53:16 54:1
64:2
**surgery** 32:16,24
47:24,24 52:4
**suspicion** 10:2
**sustained** 30:7
**sympathetic** 44:25
**sympathy** 45:2
**symptomology**
42:10,11,17 43:2
**system** 53:4

**T**
**T** 2:3 66:2,2
**table** 3:14
**take** 11:20 21:4
23:5 29:7 39:19
45:14 47:21 54:2
**takes** 16:8
**talent** 46:7,11
**talk** 6:21 23:13
49:16
**talking** 7:16 11:6
62:3
**talks** 6:22
**tandem** 9:1
**tapped** 54:25
**taught** 58:1
**tax** 5:21 59:15 64:5
**taxpayers** 40:3

**team** 11:17,18
29:19
**technology** 31:12
**teenager** 35:25
**telephone** 43:11
**tell** 22:1,4 31:1
44:11 47:25
**tells** 33:11 41:4
**ten** 6:18 11:16 13:6
16:23 36:8 63:19
**term** 2:5 12:15
58:25 59:3
**terminated** 63:6
**TERRY** 1:18,18
**test** 13:15 47:16
49:1
**testament** 36:24
**testified** 14:6 19:17
22:6,7,25
**testify** 20:4,14
43:13
**testimony** 13:4
14:2,19 19:22
21:23 22:17 23:3
23:6,7,7,10,12,15
23:18 39:25
40:10,25 64:9
**testing** 48:13 62:2
**tests** 47:13,14
**thank** 3:16 11:5
12:24 25:24
29:17 30:18,19
31:24,25 32:12
33:6,7,8,22,23
34:9,10,19 35:7,9
37:2,3 39:7,8,9
46:22 47:4 50:18
50:19 51:20
53:18 55:1 63:14
63:18 64:14 65:1
**Thanks** 35:21
**Thanksgiving** 63:3
**theoretically** 61:19
**therapy** 62:22 63:6
**Theresa** 3:15
**they'd** 61:21
**thing** 6:25 8:6

41:11 49:7,16
58:21
**things** 6:19 13:17
14:4,6 41:4,20
**think** 4:15 5:20 7:8
7:8 8:9 9:3 13:3
22:21,24 23:5,8
25:25 26:3,22,25
27:3 37:9 41:25
43:11 46:16 49:2
56:5 57:16 58:5
61:20 62:3
**third** 5:19 7:6 16:4
16:9,24 17:11,14
18:5,23 21:18,21
27:19 41:24
54:21,25
**thirty** 15:19 16:2
16:18 17:20
18:15 31:5 42:5
54:15 60:16
**thirty-seven** 57:21
**thirty-six** 2:5 58:25
**Thomas** 1:21
**thought** 9:25 34:18
62:15,16
**threatening** 6:12
**three** 2:6 4:24 9:12
10:9 17:4 24:5,8
25:5,22 27:4
31:20 40:6 46:21
48:20 57:11 59:3
**throw** 25:20
**till** 47:11 48:25
50:16 51:17
**time** 3:20 8:7 16:3
16:21 19:23
20:23 21:5,5
22:20 29:16 35:4
35:4,13 37:21
40:23 43:8 47:14
48:23 49:8 50:15
50:23 51:19 53:5
53:10 55:13,23
58:20 61:25 62:4
65:2
**today** 4:2,16 15:12

19:15 39:2 40:22
40:25 41:25
43:13 46:17 54:8
54:14 63:20
**today's** 39:13
51:23
**told** 20:1,6 22:4,7
23:12 34:19 35:4
41:5,7 43:14
47:22 49:11 50:6
51:7,13,13,15
52:17 54:7,9
62:23
**Tomko** 27:18,19
39:6
**toothbrushes**
47:19
**top** 9:14,15
**total** 56:11 60:19
**touch** 12:22
**track** 29:19 32:20
48:12
**trained** 44:15
**training** 14:21,23
26:19 58:14
**transactions** 11:13
**transcriber** 66:4
**transcript** 1:8
10:19 20:10
22:22 66:5
**transfer** 52:5
**transpired** 47:10
**transporting** 12:12
**treated** 10:1 45:10
52:6
**treatment** 14:9
38:4,5 42:19,20
43:3,7 48:16,17
48:19,21 49:5,8
49:23 51:9,11
52:2 61:16 62:9
62:20,21
**treatments** 61:22
**trial** 10:19 13:5,6
14:20 19:17,18
20:10 21:24
22:25 23:3,8

39:25 41:19 54:9 55:13,19
**trickled** 31:19
**true** 8:25 22:8 41:21 66:5
**truly** 53:5,13,17
**trust** 35:19
**truth** 34:19
**truthful** 59:18
**try** 13:12 38:21 39:10 43:25 44:20 55:2
**trying** 10:1 14:11 19:23 30:11 47:1
**tune** 40:6
**turn** 7:12 27:13 37:17 40:17 41:24
**twelve** 31:14,14 50:5
**twelve-week** 62:24
**twenty** 32:15 35:11 42:23
**twenty-five** 43:4
**twenty-two** 7:7 18:20
**two** 4:1 5:1 8:23 9:3,13 11:7,20 13:1 15:25 18:11 20:16 23:16 25:5 27:18 36:7 38:8 38:18 51:21 57:12 59:4
**type** 8:18 12:20 14:8 48:15
**types** 10:4 13:22 62:13
**typical** 6:19 24:25
**typically** 61:11

**U**

**ultimately** 39:23
**Um-hum** 4:20 24:10 35:8
**unable** 19:19
**unaware** 16:3
**undergoing** 22:11

**undermines** 46:13
**undermining** 44:19
**underprivileged** 36:20,25
**understand** 15:23 19:25 20:2,6 37:22 44:16 53:16 61:17
**understanding** 61:4,23
**undertaken** 22:21
**undertook** 22:5
**unfortunately** 41:5 42:1
**union** 39:23
**unique** 60:24
**United** 1:1,2,9,12 3:1,3,12 60:5,19
**universe** 45:12
**universities** 36:5
**University** 30:14 43:9 61:15
**unreasonable** 28:16,17 29:2
**unwarranted** 45:24
**unwavering** 33:18
**upbringing** 30:9
**upcoding** 9:19 57:24,24
**upgrading** 11:15
**urban** 30:12
**use** 6:11,12,24 11:8 12:14 13:1 14:21 24:14 26:6 45:8
**utilizing** 14:13
**U.S** 3:13 59:13

**V**

**VA** 42:15,15 52:4,6
**vaginal** 13:14
**value** 56:14
**variance** 23:25 25:13,15 26:3,11 39:10
**variances** 24:4

25:19 27:1
**variant** 25:12
**vary** 27:18 39:6 57:20
**vast** 58:6
**verdict** 15:18
**versus** 21:5
**victim** 56:22
**victimless** 40:4
**victims** 40:9
**view** 11:19 21:16 26:5
**viewed** 60:22
**viewing** 21:3 57:17
**views** 60:22
**violation** 6:2
**violations** 6:20
**viral** 62:20
**virological** 50:7
**virus** 42:16 49:5,5 50:14 52:5
**visit** 10:13 55:17 55:18
**visits** 9:20,21,24 10:12 11:16 14:3 14:22 22:5,11 23:14 55:20
**visually** 37:9
**voiced** 33:19
**volunteered** 34:8
**vs** 1:4

**W**

**W** 1:15
**waive** 59:24
**waived** 60:8
**Walnut** 1:19
**want** 7:10,21 12:22 18:7 39:12 45:5 46:15 51:20 52:23 53:2,3,10 53:11,16 60:25 61:9 64:10
**wanted** 25:19,20 35:21 49:14
**wants** 7:24 8:2 10:17 23:24 52:3

53:21
**warrant** 22:21
**wasn't** 6:1 17:20 43:1 48:25 54:1 58:21 64:2
**watch** 34:6
**Watson** 2:14 36:15 36:15
**way** 15:22 16:11 16:13,17,22 17:1 33:12 45:14 53:7 62:8
**Wayne** 30:13
**ways** 38:8
**wealth** 33:13
**Wednesday** 50:6
**week** 15:15,15 20:11 23:7 49:18 49:25 50:1,2,5,23 61:22
**weeks** 61:24
**weight** 23:3
**well-being** 32:22
**went** 38:14 48:17 55:24,25 58:20
**weren't** 9:23 41:21
**we'll** 3:25 18:17 52:21 65:2
**we're** 7:16 11:5 18:8 23:20 27:17 51:17 54:13 60:2 62:3
**we've** 5:25 7:7 38:7 57:9 62:13 64:4,5
**whatsoever** 17:1
**who've** 53:10
**wife** 15:13
**wiggle** 44:23
**willfully** 6:16
**William** 1:5 3:18 58:23
**willingness** 36:23 42:1 45:3
**Willis** 32:16
**wise** 19:23
**wish** 37:12 52:25
**withholding** 58:12

**witness** 19:19,20 26:23
**witnesses** 4:1
**Witzleben** 1:11 3:6 3:11,11 25:24 39:9 42:7,9 50:20 50:25 51:20 52:1 52:12,14,17 55:2 57:3,7 61:4,9,17 63:18 64:8,14
**Women** 39:21
**wonderful** 35:15
**words** 30:22
**work** 33:17 34:2,4 34:7 35:6 36:18 36:24
**worked** 35:3 46:8
**workers** 39:20,22
**world** 53:9
**wouldn't** 49:16
**write** 9:23 37:5 40:23
**writes** 34:12 35:11 36:18
**written** 3:20 14:7 20:4 39:3
**wrong** 6:8,15,17 7:1 8:14 20:3
**wrongly** 53:4
**wrote** 3:22 29:8,18 30:9 33:10 34:1 34:22 35:10,23 36:16

**X**

**X** 2:2,3 14:8,9

**Y**

**Y** 14:8
**yeah** 8:4,7 15:6 27:9 38:6
**year** 7:1,2,2 16:24 37:25 38:10,25 44:13 52:1,2 56:14
**yearly** 59:15
**years** 2:6 7:7 13:10

14:15,16 17:3,4 18:20 25:8 31:5,7 32:15,18 33:20 34:2,7,13 35:11 36:1,9,25 38:1 42:3,5 45:8 58:20 59:3
**York** 21:8
**young** 29:24 30:20
**younger** 43:23
**youths** 25:16

**$**

**$12,500** 2:8
**$780,151** 2:7
**$8,200** 2:9

**1**

**1** 7:17 11:6,23 22:14 25:4
**1st** 38:9 63:10,14
**10,000** 37:25
**12** 2:12 27:20 28:10 32:2 41:1,2
**12,500** 60:5 64:17
**120** 1:16
**1250** 1:13
**1315** 1:19
**14.5** 55:19
**15** 55:18
**150** 58:7 60:7
**18** 2:8
**1800** 1:16
**19** 2:13 33:11
**19106** 1:13
**19107** 1:20
**1960s** 30:6
**1984** 58:22
**1990s** 32:18 49:1

**2**

**2** 2:6 11:24 14:24 49:3,3
**2,500** 54:17
**2:08-CR-00066-...** 1:3
**20** 2:14 36:16

**20,000** 54:14
**200** 43:16 52:11 61:7
**2003** 18:19
**2006** 17:4 18:6,15 18:17
**2007** 38:1 42:13 47:12,23 48:25 49:1 51:24
**2008/early** 47:16
**2009** 1:5 47:16 66:12
**21** 4:23 25:9 57:21
**21202** 1:17
**22** 2:7
**24** 1:5
**242** 23:15
**25** 2:5,14 7:10 34:2 60:12
**250** 60:7
**26** 2:15 34:12 66:12
**27** 2:15 4:21 7:10 25:9 27:15 34:22 57:13
**28** 2:16 35:10
**29** 2:16 35:24

**3**

**3** 2:11 15:1 30:2 49:9
**3553** 28:2 39:14
**37** 2:11,11,12,12 2:13,13,14,14,15 2:15,16,16,17
**3800** 56:14

**4**

**4** 2:8 23:18
**43** 19:14
**470,000** 56:15

**5**

**5** 23:20
**5K2.0** 24:21
**500** 28:11 60:16
**576,000** 56:11

**58** 2:5
**59** 2:6,7

**6**

**6** 28:10
**60** 2:8,8
**615** 1:12
**639,000** 54:6,10 55:15
**639,578** 58:9
**640,000** 45:15

**7**

**750,000** 45:14
**780,151** 58:8 59:24
**788,000** 64:20

**8**

**8** 37:25
**8,200** 60:19
**80,000** 54:15
**800** 1:19

**9**

**9** 28:10
**90s** 16:9 18:24
**95** 11:7
**99245** 58:4