```
 1                  UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF PENNSYLVANIA
 2
     USA,                       )
 3                              )
                 Plaintiff,     )  2:08-CR-00066-RK-1
 4                              )
                 vs.            )  Philadelphia, PA
 5                              )  February 24, 2012
     WILLIAM KING, M.D.,        )
 6                              )
                 Defendant.     )
 7
 8           TRANSCRIPT OF MOTION FOR GARNISHMENT ORDER
               BEFORE THE HONORABLE ROBERT F. KELLY
 9                 UNITED STATES DISTRICT JUDGE
10   APPEARANCES:
11   For the Plaintiff:        JOSEPH F. MINNI, ESQ.
                               KATHERINE RESTREPO, ESQ.
12                             BEA WITZLEBEN, ESQ.
                               MAUREEN MCCARTNEY, ESQ.
13                             U.S. ATTORNEY'S OFFICE
                               615 Chestnut Street
14                             Suite 1250
                               Philadelphia, PA 19106
15
     For the Defendant:        GERALD B. INGRAM
16                             1315 Walnut Street
                               Suite 800
17                             Philadelphia, PA 19107
18                             LARRY A. NATHANS, ESQ.
                               ROBERT W. BIDDLE, ESQ.
19                             NATHANS & BIDDLE LLP
                               120 East Baltimore Street
20                             Suite 1800
                               Baltimore, MD 21202
21
                               TERRY L. PUGH, ESQ.
22                             TERRY L. PUGH AND ASSOCIATES
                               1315 Walnut Street
23                             Suite 800
                               Philadelphia, PA 19107
24
25
```

```
 1   APPEARANCES:  (Continued)
     Garnishees:
 2   Fidelity Investments:      FIDELITY INVESTMENTS
                                P.O. BOX 770001
 3                              Cincinnati, OH 45277

 4   The Vanguard Group Inc.:   DENNIS W. KING, ESQ.
                                DANOFF & KING PA
 5                              409 Washington Avenue
                                Suite 810
 6                              Towson, MD 21204

 7   T. ROWE PRICE:             T. ROWE PRICE
                                LEGAL DEPARTMENT
 8                              P.O. Box 17011
                                Baltimore, MD 21298
 9
     Wachovia Bank N.A.:        JON C. SIRLIN
10                              SIRLIN GALLOGLY & LESSER
                                123 S. Broad Street
11                              Suite 2100
                                Philadelphia, PA 19109
12
     Mairs & Power, Inc.:       MAIRS & POWER, INC
13                              615 East Michigan Street
                                Milwaukee, WI 53202
14
     Aberdeen Proving           DENNIS W. KING
15   Grounds Federal            DANOFF & KING PA
     Credit Union:              409 Washington Avenue
16                              Suite 810
                                Towson, MD 21204
17

18

19

20

21
     Proceedings recorded by electronic sound recording.
22
23              Veritext National Court Reporting Company
                        Mid-Atlantic Region
24              1801 Market Street - Suite 1800
                        Philadelphia, PA 19103
25                          888-777-6690
```

1         IN UNISON:  Good morning, Your Honor.

2         THE COURT:  Counsel, please state your name for the

3    record.

4         MR. BIDDLE:  For Mr. King, Bill King, the doctor,

5    who's absent, Robert W. Biddle and it's by permission of the

6    Court.  He's incarcerated, declined to be writted in.

7         MR. MINNI:  Good morning, Your Honor, again.  Joseph

8    Minni, assistance U.S. attorney for the government.  Also

9    seated at the counsel table is Katherine Restrepo of my office

10   who --

11        THE COURT:  All right.

12        MR. MINNI:  -- will assist me in this case.

13        THE COURT:  The matter here is the motion of the

14   United States for a garnishment order.  You may proceed.

15        MR. BIDDLE:  Well, I guess I'll proceed.  I know the

16   government has argued that it's our burden to oppose the writ

17   so we'll move forward.

18        Your Honor, the issue before the Court is whether the

19   writ should be granted and on what terms and within what

20   framework.  And at this point, I'll address, you know, all of

21   the issues, seriatim, that we see before the Court.  The

22   starting point is that the government is seeking to enforce an

23   order.  That's the initial framework.  They're seeking to

24   enforce the Court's judgment which, of course, is on the

25   docket sheet, ECF 67.  And that's the foundation, if you will,

1    the bedrock on which the action is based here.

2         The Court held that the defendant must make

3    restitution, which is required.  That was a prerequisite that

4    there had to be restitution, given the verdict of the jury.

5    And provided a total amount, 780,000 dollars, and also

6    provided a schedule in the schedule of payments, which is page

7    7 of the Court's order.  Rather than checking box A which is a

8    lump sum payment due immediately, that is to say the whole 780

9    being due immediately, the Court said that a payment was to

10   begin immediately on a particular schedule; that is to say,

11   twenty-five dollars per quarter toward the fine.

12         And then, once he's released from custody, which will

13   occur approximately in the next couple of months -- I

14   understand that he's expected to be released on or about May

15   1st of this year and he'll be living in North Carolina -- he's

16   to make 500 dollar monthly installment payments.  So

17   logically, Your Honor, our position is that the order both

18   includes an amount and terms; that is to say, payment terms.

19   Just as when the Court sentences a defendant it imposes a

20   sentence, a period of time for incarceration, but also will

21   state when that sentence should begin.

22         For example, if the defendant's not incarcerated, the

23   Court will say you're either remanded immediately or you have

24   a certain number of days to self-surrender.  And, in one of

25   those cases, the government's required to respect the date

 1    that's given for the defendant to show up at Bureau of

 2    Prisons.  If the Court says he's got thirty days, he's got to

 3    show up by the thirtieth day.  If he shows up on the thirty-

 4    first day, Your Honor, the government can get a bench warrant

 5    and seek his arrest.  The marshals can go out and get him.

 6    But they can't pick him up on the twenty-ninth day and say

 7    we'd like you to begin serving your sentence early.  There's a

 8    sentence for a certain period of time and you're going to

 9    serve that in the Bureau of Prisons and you've got to start

10    serving it now because we want you to serve it now.  That

11    would not be allowed.

12            And by analog, that's what the government's doing

13    here in this case.  Mr. -- Dr. King is way ahead on his

14    payments.

15            THE COURT:  Okay.

16            MR. BIDDLE:  The latest printout --

17            THE COURT:  Is that the sum and substance of your

18    argument?  That we have a payment schedule and that's it?

19            MR. BIDDLE:  No.  No, there's a lot more, Your Honor.

20            THE COURT:  What's the rest?

21            MR. BIDDLE:  Okay.  The second part of the argument,

22    Your Honor, is that if the Court does order -- well, let me

23    note first.  We object to accounts -- retirement accounts

24    being levied, okay?  There are other circuit courts -- to my

25    knowledge not the Third Circuit -- which has found that post-

1    Mandatory Victims Restitution Act, that accounts can -- that

2    retirement accounts can be levied.  But we're maintaining an

3    objection to those accounts being levied.  But that's not my

4    principal argument.  My next argument, Your Honor, is that the

5    government's collection of the defendant's accounts should be

6    limited to twenty-five percent.  That is to say only twenty-

7    five percent on a monthly basis on the payments that he'll be

8    getting from the retirement account should be levied.

9           Now, that's, in fact, what happened in the Miller

10   case, which is one of the cases cited on another point for the

11   gover -- in the government's brief.  In the Miller case, the

12   Court said, under the statute, that it was not going to permit

13   the government to collect more than twenty-five percent of the

14   funds that were available to be collected.  Another case that

15   speaks of that twenty-five percent cap is the McClanahan case.

16   That's 2006 U.S. Dist. LEXIS 34042.  That's a Southern

17   District of West Virginia case from 2006.

18          Now, frankly, Your Honor, there is a split in the

19   cases.  There are some cases that say we're not going to deem

20   the payments from a retirement account to be the type of

21   income that is referred to in the twenty-five percent cap

22   cases and the twenty-five percent cap statute.  But, Your

23   Honor, given that Dr. King is mostly likely not going to be

24   able to practice medicine, he's going to be living on Social

25   Security and any additional income, at this point -- his wife

1    has divorced him and she's taken a good hunk of the retirement

2    accounts -- that this is what he would need to live on.  So

3    that there's both a statutory and legal basis to find that the

4    cap should be twenty-five percent.

5            And furthermore, Your Honor, there's a specific

6    provisions, 28 U.S.C. Section 3013.  That's the hardship

7    provision under the Federal Debt Collection Procedures Act.

8    That allows the Court to fashion a remedy that's just and fair

9    under the circumstances.  Dr. King is sixty-six.  He's

10   entitled to get payments from the retirement plan at this

11   point. So -- and the government would be standing in his shoes

12   in trying to garnish the payment.  It's analogous to if he was

13   working, if he was able to get a job, whether it was in a --

14   at a hospital as an orderly or whatever, the government's

15   ability to collect that payment stream would be limited to

16   twenty-five percent.

17           So, Your Honor, due to the hardship provision 3013

18   and the twenty-five percent cap provision, which has been

19   applied by other courts in a case the government as well as

20   this -- in the Miller case and the McClanahan case, the Court

21   should limit the amount of money that's being taken out to

22   twenty-five percent.

23           The next point is, Your Honor -- and this was briefed

24   by us previously in our supplemental sentencing memoranda that

25   was filed before sentencing.  The current view is that

1  restitution is a form of punishment, Your Honor.  That it's

2  viewed through the lens of the eighth amendment.  Now, there

3  are numerous cases that say well, in particular cases, on

4  particular facts, you know, the particular sentence or the

5  particular restitution amount or what have you, is not

6  punish -- doesn't -- isn't grossly disproportional.  It's not

7  sufficient to be cruel and unusual punishment.  My point about

8  that is that it's up to the Court, in the final analysis, to

9  determine the punishment.

10         Now, how that punishment is carried out, yes, is left

11  to the Bureau of Prisons.  The court decides the sentence and

12  it's up to the Department of Justice, the Bureau of Prisons to

13  determine how it's carried out.  But it seems doubtful that

14  congress would have turned over the imposition of punishment

15  as to the payment of restitution to the Department of Justice.

16  And -- in fact, the statutes provide, under the restitution

17  statute, that it's to the Court to set the payment schedule.

18  And it's the Court to determine when restitution payments

19  should be made.   And that's how it should be under the eighth

20  amendment.

21         So, our argument is that to allow -- it's not just a

22  technical reading of the statute and the cases don't fairly

23  address this is that under the eighth amendment and the --

24  interpreting the current statutes, it's up to the Court to

25  determine the sentence and the -- and whether the eighth

1    amendment applies.  Now, we're not objecting in total to -- on

2    an eighth amendment ground to payment of restitution; it's got

3    to be paid.  But it's got to be paid consistent with the

4    punishment that Dr. King has already suffered, three years'

5    incarceration.  And the fact that half of his retirement is

6    already gone because his ex got it lawfully in the divorce and

7    that to punish him further by essentially requiring him to

8    rely solely on his Social Security payments, would implicate

9    the eighth amendment.  I hesitate to argue that it would be

10   grossly disproportional but my point is, Your Honor, it's up

11   to the Court to determine this.  It should not be left up to

12   the government and that's why it's important to recognize the

13   authorities which say that restitution is analyzed as a form

14   of punishment.

15              THE COURT:  Okay.

16              MR. BIDDLE:  It's not just remedial.

17              THE COURT:  What's your next point?

18              MR. BIDDLE:  And I'm sorry.  Just the citation to the

19   twenty-five percent is 15 U.S.C. 1673.

20              The last issue I have, Your Honor, is that we filed,

21   at least three times in this case, requests for a hearing and

22   the last answer of a garnishee was file on June 17th, 2011,

23   okay?  That was, obviously, several months ago, about nine

24   months ago.  The government had sent a letter to the Court,

25   prior to that time, asking leave -- okay.  The government

 1   filed a letter with the Court on April 18th which was about --

 2            THE COURT:  All right. Come one.

 3            MR. BIDDLE:  -- about two months before that.  It was

 4   untimely, Your Honor.  Our hearing is untimely, basically.

 5   It's similar to the Speedy Trial Act.  We have regularly asked

 6   for a hearing here.  The government took no action, the Court

 7   took no action for nine months.  The statute provides specific

 8   deadlines.  There are numerous cases that say if you ask for a

 9   hearing in an untimely fashion, okay, it's denied.  The

10   defendant -- if they wait more than twenty days beyond one of

11   the triggering points, you lose.

12            THE COURT:  All right.

13            MR. BIDDLE:  And there were a number of cases that

14   say that.

15            THE COURT:   Okay.

16            MR. BIDDLE:  And here, the statute says the hearing

17   is to be held promptly or as soon as practicable at such time

18   as all the answers and the garnishees have filed, which they

19   did, last summer.  And it's now been nine months.

20            THE COURT:  All right.  Let's --

21            MR. BIDDLE:  So it's untimely and that final argument

22   is our position.

23            THE COURT:  All right.  Let's hear what the

24   government says.

25            MR. BIDDLE:  Thank you.

1          MR. MINNI:  Your Honor, thank you.  If I may approach

2     the podium for this argument.

3          THE COURT:  Yes.  Sure.

4          MR. MINNI:  Your Honor, I'll make my comments brief

5     here.  The whole starting point in this analysis for this

6     garnishment of these -- the garnishments of these accounts,

7     which today, Your Honor, are worth approximately 258,000

8     dollars.  When we first started out in this case, Your Honor,

9     these accounts were worth in excess of 539,000 dollars.  What

10    the government found out during the course of this case was

11    seven days -- seven days after sentencing this case, Dr. King

12    filed a divorce action in Maryland or consented to a divorce

13    action in Maryland.  On the very same day of the filing of the

14    divorce action, he filed with the complaint -- or with his

15    answer, an agreement -- a property settlement agreement where

16    half of his assets, including his retirement accounts, were

17    transferred to his wife.

18          The government has spent several months reviewing --

19    awaiting subpoenaed records trying to contact the wife's

20    divorce lawyers, trying to get information to determine what

21    happened and why the money was transferred seven days after

22    sentencing.  So Mr. Biddle raised certain issues about the

23    delay here and saying this hearing is untimely.  Well, part of

24    the delay resulted in us because of our investigation in this

25    case.

1           But what this case really deals about, Your Honor, is

2    the payment schedule.  Your Honor's payment schedule deals

3    specifically with payments to begin immediately.  This is not

4    a case, Your Honor, where payments are deferred until Dr. King

5    gets out of prison.  This is not a case where payments are

6    deferred until this Court can determine what his financial

7    status is down the road.  Payments are to begin immediately.

8    The payment order in this case clearly provides he pays in

9    prison -- or he should pay in prison -- and he pays when he

10   gets out a specific sum.

11          However, Your Honor, that provision, and the law

12   that's cited in our brief, does not preclude the government

13   from taking additional action to go after defendant's

14   available assets for the recovery of restitution for victims.

15   The cases that we cited in our brief are well established.

16   The defendant only is able to cite one case, the Texas case of

17   Roush, that holds to the contrary.  But, as pointed out in our

18   brief, Your Honor, the Roush case is not applicable here.  You

19   have the Aurora decision from the District of New Jersey and

20   the Third Circuit's nonprecedential decision in Shusterman,

21   which says Roush does not apply in this situation because

22   Roush did not have a payment immediately provision.

23          But what Dr. --

24          THE COURT:  When you say payment immediately, are you

25   talking about payment of the entire sum or payment of --

1          MR. MINNI:  Either payment of the entire sum or

2     payment of the debt.  In other words, payments are due now.

3     There's no deferment.  You've got to start paying now.  And

4     the Court's payment plan, as referenced in Rourke (ph.) and

5     the other district court decisions cited in our brief, the

6     payment plan, Your Honor, essentially acts as a floor.  And

7     when a sentencing court says payments are to begin immediately

8     or are due immediately or are due in full immediately, that

9     means the debt is due now.

10          THE COURT:  But if the payments are 500 dollars a

11     month and a government sees an asset that it can get more

12     from, are they restricted from going after the asset that --

13          MR. MINNI:  No, Your Honor.  There's only one

14     decision that says to the contrary and that is Roush.  All the

15     other cases cited in the government's brief said the

16     government, by all means, is allowed to go after, garnish,

17     levy upon, execute against other available assets of the

18     defendant to satisfy the court's restitution order or the

19     financial judgment.  Roush also, Your Honor -- it's not

20     pointed out in any of the briefs but Roush actually was

21     overruled by the Fifth Circuit in a later decision called

22     Ekong.  If I may, Your Honor, I can get to the EKong site.

23     518 F 3d. 285 (5th Cir. 2007).  EKong was a -- Roush was a

24     2006 case.  Roush is essentially no longer good law.  Even in

25     the Fifth Circuit.

Page 14

1              THE COURT:  Well, I don't --

2              MR. MINNI:  The government does not dispute these --

3              THE COURT:  I didn't check to see what -- I mean,

4    restitution is normally ordered in a lump sum.

5              MR. MINNI:  Not nece -- well, it's ordered -- lump

6    sum in the judgment itself.

7              THE COURT:  Right.

8              MR. MINNI:  Meaning the amount that the defendant

9    defrauded --

10             THE COURT:  Right.

11             MR. MINNI:  -- to the amount of losses caused by the

12   defendant.  That's the restitution order, Your Honor.  That's

13   the judgment amount.  But there's a second step to the process

14   as set forth under the restitution laws. And that -- under the

15   Third Circuit and all the other circuit decisions, the Court

16   has to, in that second step, impose a payment plan.  How is

17   the defendant going to fulfill that judgment.  That's why, at

18   the sentencing hearings, Your Honor, we go through some kind

19   of financial analysis, whether you'll pay 25 dollars per

20   quarter while you're incarcerated and you'll pay 200 dollars a

21   month while on supervised release.

22             THE COURT:  Right.

23             MR. MINNI:  Because there has to be a payment plan to

24   fulfill the Court's restitution judgment.

25             THE COURT:  Right.

1            MR. MINNI:  The issue here is notwithstanding a

2    payment plan, even if the defendant is compliant with that

3    payment plan --

4            THE COURT:  Right.

5            MR. MINNI:  -- can the government still go ahead and

6    go after him.  Seize, levy upon, execute against other

7    available assets to satisfy the court's restitution order.

8    Clearly the court's say the government, with the exception of

9    Roush, clearly the Court's have all held that the government

10   is not restricted and can go after other assets, including a

11   bunch of those cases we've cited in our brief actually deal

12   with garnishments.

13           There is one other case, Your Honor, that I didn't

14   cite but I came across.  It's Bancroft, B-A-N-C-R-O-F-T, out

15   of the District of Maryland, 2010.  I'm sorry.  Western

16   District of Michigan, 2010.  2010 Westlaw 4536785.  Which

17   notes hat courts have overwhelmingly held that the

18   government's not restricted by a payment plan and oh, by the

19   way, Roush has -- in effect, has been overruled by the Fifth

20   Circuit.  This position, Your Honor, has been accepted by the

21   Third Circuit in Shusterman.  While not precedential decision,

22   Shusterman's analysis has been adopted by the -- recently by

23   the district court in New Jersey and we ask that the Court

24   follow that rationale.  It says look, the Court's going to say

25   it's due immediately or payable immediately; the government

1  can go after available assets, notwithstanding a payment plan.

2  If I may just respond to a couple of other points raised by

3  Mr. Biddle in his argument.  He talks about a twenty-five

4  percent limitation on the levy and that is under the

5  consumer --

6          THE COURT:  Which part of this is -- would that apply

7  to?  Or which of these garnishees?

8          MR. MINNI:  Yes.  What Mr. Biddle is attempting to

9  argue for Dr. King is that the government is capped at twenty-

10 five percent of all of the funds that are in the accounts.

11 That's not true, Your Honor.  That's not what the law says.

12 The provision that Mr. Biddle cites -- and I always get this

13 wrong.  It's the Consumer Credit Protection Act, the CCPA, 15

14 U.S.C. 1673.  That talks about twenty-five percent of

15 disposable earnings.  And if necessary, I will follow and send

16 the Court cases.  The cases hold that garnishment of funds in

17 an account, that does not constitute earnings.

18         THE COURT:  Yes.

19         MR. MINNI:  The garnishee --

20         THE COURT:  I didn't think he was applying it to

21 those but --

22         MR. MINNI:  I think that's what he was trying to

23 apply that to, Your Honor.

24         THE COURT:  IS that --

25         MR. MINNI:  Maybe clarify that --

Page 17

1          THE COURT:  You were applying that to everything, Mr.
2    Biddle?
3          MR. BIDDLE:  Your Honor, to clarify, I was applying
4    it to the payment of funds out of the account in the regular
5    monthly installments --
6          THE COURT:  Okay.
7          MR. BIDDLE:  -- that one would get if you retire.
8          THE COURT:  All right.
9          MR. BIDDLE:  In other words --
10         THE COURT:  Okay.
11         MR. BIDDLE:  -- not a lump sum but a percentage.
12         MR. MINNI:  Oh, clearly, Your Honor, if we were
13   attempting to levy garnish upon the disbursements going to Dr.
14   King, clearly Title 15 says we're limited to twenty-five
15   percent.  But Your Honor, we're going after the corpus.
16         THE COURT:  All right.
17         MR. MINNI:  The corpus are subject to the writ which
18   does not constitute earnings.
19         THE COURT:  You'll send me the cases you have on
20   that?
21         MR. MINNI:  Yes, Your Honor.  Mr. Biddle also
22   referred to 28 U.S.C. Section 3013.  That is part of the
23   Federal Debt Collection Procedures Act which governs the
24   collection provisions here today even though we have a
25   criminal case.  The FDCPA does apply here, as pointed out in

1    our brief.  He referred to 3013 as a hardship provision.

2    3013, Your Honor, is not a hardship provision.  3013 -- and

3    I'm sorry, I don't have my Title 28 book here with me this

4    morning because I didn't know this issue was going to come up.

5    3013 is a catchall provision.  It says that the court, in

6    enforcing an enforcement remedy under this provision, under

7    the FDCPA, can issue any additional orders, writs or other

8    types of relief to ensure compliance with an order under that

9    title.  There's nothing about hardship in there.

10           It's just essentially -- it's a catchall provision

11   allows the Court to fashion appropriate relief where we can't

12   fit anything in any of the other provisions.  I will further

13   expand on the hardship.  Hardship is not an issue here, Your

14   Honor.  The issue here is an exemption.  In criminal cases,

15   there is no exception for hardship, inability to pay after we

16   take your money.  That's why you have the twenty-five percent

17   limitation on wage garnishments.  And there are cases that say

18   that, Your Honor, and they were pointed out in the brief that

19   we submitted in this case.

20           There are eleven specific types of exempt property

21   from garnishing in criminal cases.  Hardship is not one of

22   those exemptions.  If congress wanted hardship to apply, as

23   pointed out in our brief, congress would have said the court

24   can consider the hardship.  Now, of course, under DOJ policy,

25   Your Honor, we're not supposed to put a defendant, a judgment

1    debtor, on the public welfare rolls.  This is not the case

2    here.  Dr. King is going to be out of prison in a few months,

3    he's going to be living with his daughters in North Carolina,

4    we think.  He's going to be receiving Social Security benefits

5    because he's of age.  That's not hardship.  He has an income

6    stream, he has property which he's able to live.  So I don't

7    think there's any type of hardship issue here whatsoever.

8            The last two issues, Your Honor -- or actually the

9    last issue is the exemption issue for the ERISA qualified

10   pension accounts.  We've argued that in our brief.  The cases

11   are there.  While Mr. Biddle is absolutely correct, the Third

12   Circuit has not ruled or opined on this issue, the cases

13   throughout the country in circuits and in district courts are

14   replete, well-established on this issue.  ERISA qualified

15   retirement plans, IRAs, 401Ks are not exempt from garnishment

16   to collect federal restitution or federal fines.

17           Judge Newcomer in a case years ago, I believe in

18   2001, in the Grico (ph.) case which I cited in the brief,

19   applied the same analysis to a criminal fine.  Your Honor, we

20   collect fines in the same manner as restitution, so says 3664,

21   the same analysis and rationale should apply.  The fact that

22   the Third Circuit -- although all the other circuits have

23   ruled favorably for the government on this issue, should not

24   preclude the government from garnishing these accounts at this

25   time.

1           Your Honor, what we're trying to do here is we're

2    trying to get money for victims.  The law requires us to

3    enforce restitution aggressively to the benefit of the victims

4    and to the fullest extent possible.  And by allowing the

5    government to proceed against these accounts, as authorized

6    under law, enables the government to fulfill its statutory

7    mission in collecting restitution.

8           If I may have one second, Your Honor?

9           Ms. Restrepo actually reminded me.  If you look at

10   the Court's payment plan, Your Honor, as set forth, would not

11   result in full payment of restitution within the twenty year

12   life of the debt.  So that's why we need to go -- be able to

13   look and go after other assets where available to fulfill that

14   statutory mission.  Thank you, Your Honor.

15           THE COURT:  How long do you need to get me that

16   supplemental memorandum?

17           MR. MINNI:  A couple of days if Your Honor would just

18   want a letter brief.

19           THE COURT:  Yes.  It can be in the form of a letter.

20           MR. MINNI:  I'll just -- these are simple.  I'll just

21   line up the cases for Your Honor on that one particular issue.

22           MR. BIDDLE:  Do we have a right to --

23           THE COURT:  How much time would you like to respond

24   to whatever he's filed?

25           MR. BIDDLE:  I'd like two weeks, Your Honor.

1          MR. MINNI:  It's fine with me, Your Honor.

2          THE COURT:  Okay.  Two weeks.

3          MR. BIDDLE:  Can I reply briefly to the oral

4    argument?

5          THE COURT:  Um-hum.

6          MR. BIDDLE:  Your Honor, the Court had a question

7    about 30 -- 28 U.S.C. 3013.  And the assistant described some

8    of the provisions but it provides -- and I'm reading from the

9    text -- that it allows the Court to make an order "denying,

10   limiting, conditioning, regulating, extending or modifying the

11   use of any enforcement procedure under this chapter."  So it

12   specifically says limiting, conditioning or regulating.

13          So as I said at the start of the argument, the

14   question is what's the government's right to do it and what's

15   the Court's options.  Even if the Court has -- finds that it

16   has discretion or power to allow the government to essentially

17   leapfrog or go over and accelerate the payment plan here --

18   and, as I said, Dr. King is way ahead on his payment plan.

19   The Court should consider, under this provision, whether,

20   under the eighth amendment and the facts that the Court heard

21   in the trial and at sentencing, it would be appropriate.

22          The Court asked the assistant whether it would be

23   appropriate to garnish assets that were, essentially, newly

24   discovered.  But these assets were not newly discovered.

25   These were fully disclosed in the presentence report.  The

1    government was aware of it and if they believe that they had a

2    garnishment action and they were permitted to pursue it, they

3    could have filed that the day after sentencing.  And the fact

4    that they waited and that they've waited for the past nine

5    months, is not the Court's fault, it's not the defense

6    counsel's fault.  The government chose to take that course of

7    action.  And the Court is permitted to consider the totality

8    of the circumstances in deciding what is appropriate

9    acceleration.

10           The Court made a finding at sentencing based on the

11   existence of these accounts, when they had twice as much money

12   in them then as they do now, that the payment plan in the

13   Court's order, in the judgment and commitment order, was

14   appropriate: 25 dollars a month during incarceration, 500

15   dollars a month once the defendant is released.

16           THE COURT:  Yes --

17           MR. BIDDLE:  And the appropriate time --

18           THE COURT:  It would never -- I never had this

19   before.  It would never occur to me that -- in that, that the

20   government, in entering into a payment schedule, that the

21   government has given up its rights to go after the lump sum

22   if -- it's just -- in most of the these cases, there never is

23   a lump sum, there's no possibility of it.  The payment

24   schedule, I have always looked at, was a consideration to the

25   defendant.  You know, was to his benefit or her benefit.

1          MR. BIDDLE:  Absolutely, Your Honor.  But it is part

2   of the sentence.  And why would congress -- and there's a lot

3   of discussion in the cases, there's a huge amount of case law

4   on these various issues.  But why would congress have written

5   these very detailed procedures for restitution where the Court

6   is supposed to consider the financial resources of the

7   defendant and consider whether a payment plan is appropriate

8   and there are provisions under the restitution statute for

9   going back and revisiting that if, for example, a defendant

10  wins the lottery and, you know, obviously, that money needs to

11  go the victims.

12          Why would they have done all of that if the

13  government was free at any time to, essentially, trump that by

14  bringing, at its leisure, an action for garnishment which is

15  clearly what occurred here.  They chose not to bring it right

16  after sentencing, they waited for a number of months or years,

17  they started the action last year, then it was in limbo for

18  nine months.  That can't be what Congress contemplated.  It's

19  got to be, Your Honor, to read the sections in pari materia,

20  to read them together, to make them both sensible, it's got to

21  be the government gets to do what its' doing when the

22  defendant fails to meet his obligations to the Court, when

23  he's derelict.

24          THE COURT:  Right.

25          MR. MINNI:  Your Honor, if I may respond --

1           THE COURT:  What part -- what part, if any, is the

2     divorce and the property settlement with assets that might

3     have been used to satisfy this judgment?

4           MR. MINNI:  There are two types --

5           THE COURT:  What part does that play in this?

6           MR. MINNI:  Your Honor, there were two types of

7     assets that we were looking at that we -- that the government

8     was looking at in connection with the divorce proceeding.

9     Number one was the -- I'll call it the marital residence which

10    was transferred completely to the wife at or near the time of

11    sentencing.

12          THE COURT:  The government didn't go after any of

13    that?

14          MR. MINNI:  Your Honor, based on -- it was based on

15    some equity considerations in the property and if the property

16    was returned, if the transfer was revoked and it was cancelled

17    as fraudulent, the property would go back to entireties

18    property.  There are some legal issues that came up with it.

19    But eventually, Your Honor, it dealt with an equity issue as

20    well.  We haven't closed the book on it but we thought it was

21    more important to look at the garnishment issue of retirement

22    accounts.

23          And then secondly, Your Honor, the retirement

24    accounts in connection with the divorce proceeding.  The

25    government has still not closed the book on that.  The

1  government's still going to review -- further review

2  information regarding the divorce proceeding.  We may take

3  discovery against the wife and the daughters because the

4  daughters also received property from the defendant at or near

5  the time of the sentencing.

6        Your Honor, I'd like to make one final point.  Mr.

7  Biddle makes a big deal about how the government did nothing

8  for nine months.  And Your Honor, during that time, the

9  government did take action.  We should have, perhaps,

10  communicated more regularly with the Court about statutes of

11  the matter.  But Your Honor, I make two points on this.

12  Number one, Mr. Biddle, although he does raise the issue of

13  delay, he hasn't raised issue of whether or not any of it has

14  prejudiced his client.  His client is sitting in jail.  The

15  garnished funds have not been paid over to the government.

16  They were staying the in account earning interest.

17        And this was Mr. Biddle's hearing request.  There was

18  no communication from Mr. Biddle or the defendant to the Court

19  saying hey, Judge, can I have my hearing it's been nine months

20  now, it's been six months now.  So it's a prejudice type of

21  argument as well, Your Honor.  The fact is we're here today,

22  the issues have been briefed and the matter is for the Court's

23  decision once we get these final rounds of briefs to the

24  Court.

25        THE COURT:  All right.

1            MR. MINNI:  Thank you, Your Honor.

2            THE COURT:  Okay.

3            MR. BIDDLE:   Thank you, Your Honor.

4            THE COURT:  All right.  Thank you.  I will wait for

5    your --

6            MR. MINNI:  Thank you, Your Honor.

7            THE COURT:  -- submissions.

8            THE CLERK:  All rise.

9                        (Court is adjourned)

10                        *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T I O N

3

4          I, Zipporah Geralnik, the court approved

5    transcriber, do hereby certify the foregoing is a true and

6    correct transcript from the official electronic sound

7    recording of the proceedings in the above-entitled matter.

8

9

10
            _____
11

12   ZIPPORAH GERALNIK                        DATE

13   AAERT Certified Electronic Transcriber (CET**D-489)

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**AAERT** 27:12
**Aberdeen** 2:14
**ability** 7:15
**able** 6:24 7:13
  12:16 19:6 20:12
**above-entitled** 27:7
**absent** 3:5
**absolutely** 19:11
  23:1
**accelerate** 21:17
**acceleration** 22:9
**accepted** 15:20
**account** 6:8,20
  16:17 17:4 25:16
**accounts** 5:23,23
  6:1,2,3,5 7:2 11:6
  11:9,16 16:10
  19:10,24 20:5
  22:11 24:22,24
**Act** 6:1 7:7 10:5
  16:13 17:23
**action** 4:1 10:6,7
  11:12,13,14 12:13
  22:2,7 23:14,17
  25:9
**acts** 13:6
**additional** 6:25
  12:13 18:7
**address** 3:20 8:23
**adjourned** 26:9
**adopted** 15:22
**age** 19:5
**aggressively** 20:3
**ago** 9:23,24 19:17
**agreement** 11:15
  11:15
**ahead** 5:13 15:5
  21:18
**allow** 8:21 21:16
**allowed** 5:11 13:16
**allowing** 20:4
**allows** 7:8 18:11
  21:9
**amendment** 8:2,20
  8:23 9:1,2,9 21:20
**amount** 4:5,18 7:21

8:5 14:8,11,13
  23:3
**analog** 5:12
**analogous** 7:12
**analysis** 8:8 11:5
  14:19 15:22 19:19
  19:21
**analyzed** 9:13
**answer** 9:22 11:15
**answers** 10:18
**APPEARANCES**
  1:10 2:1
**applicable** 12:18
**applied** 7:19 19:19
**applies** 9:1
**apply** 12:21 16:6
  16:23 17:25 18:22
  19:21
**applying** 16:20
  17:1,3
**approach** 11:1
**appropriate** 18:11
  21:21,23 22:8,14
  22:17 23:7
**approved** 27:4
**approximately**
  4:13 11:7
**April** 10:1
**argue** 9:9 16:9
**argued** 3:16 19:10
**argument** 5:18,21
  6:4,4 8:21 10:21
  11:2 16:3 21:4,13
  25:21
**arrest** 5:5
**asked** 10:5 21:22
**asking** 9:25
**asset** 13:11,12
**assets** 11:16 12:14
  13:17 15:7,10
  16:1 20:13 21:23
  21:24 24:2,7
**assist** 3:12
**assistance** 3:8
**assistant** 21:7,22
**ASSOCIATES**
  1:22

**attempting** 16:8
  17:13
**attorney** 3:8
**ATTORNEY'S**
  1:13
**Aurora** 12:19
**authorities** 9:13
**authorized** 20:5
**available** 6:14
  12:14 13:17 15:7
  16:1 20:13
**Avenue** 2:5,15
**awaiting** 11:19
**aware** 22:1

**B**

**B** 1:15
**back** 23:9 24:17
**Baltimore** 1:19,20
  2:8
**Bancroft** 15:14
**Bank** 2:9
**based** 4:1 22:10
  24:14,14
**basically** 10:4
**basis** 6:7 7:3
**BEA** 1:12
**bedrock** 4:1
**believe** 19:17 22:1
**bench** 5:4
**benefit** 20:3 22:25
  22:25
**benefits** 19:4
**beyond** 10:10
**Biddle** 1:18,19 3:4
  3:5,15 5:16,19,21
  9:16,18 10:3,13
  10:16,21,25 11:22
  16:3,8,12 17:2,3,7
  17:9,11,21 19:11
  20:22,25 21:3,6
  22:17 23:1 25:7
  25:12,18 26:3
**Biddle's** 25:17
**big** 25:7
**Bill** 3:4
**book** 18:3 24:20,25

**box** 2:2,8 4:7
**brief** 6:11 11:4
  12:12,15,18 13:5
  13:15 15:11 18:1
  18:18,23 19:10,18
  20:18
**briefed** 7:23 25:22
**briefly** 21:3
**briefs** 13:20 25:23
**bring** 23:15
**bringing** 23:14
**Broad** 2:10
**bunch** 15:11
**burden** 3:16
**Bureau** 5:1,9 8:11
  8:12
**B-A-N-C-R-O-F-T**
  15:14

**C**

**C** 2:9 27:2,2
**call** 24:9
**called** 13:21
**cancelled** 24:16
**cap** 6:15,21,22 7:4
  7:18
**capped** 16:9
**Carolina** 4:15 19:3
**carried** 8:10,13
**case** 3:12 5:13 6:10
  6:11,14,15,17
  7:19,20,20 9:21
  11:8,10,11,25
  12:1,4,5,8,16,16
  12:18 13:24 15:13
  17:25 18:19 19:1
  19:17,18 23:3
**cases** 4:25 6:10,19
  6:19,22 8:3,3,22
  10:8,13 12:15
  13:15 15:11 16:16
  16:16 17:19 18:14
  18:17,21 19:10,12
  20:21 22:22 23:3
**catchall** 18:5,10
**caused** 14:11
**CCPA** 16:13

**certain** 4:24 5:8
  11:22
**Certified** 27:12
**certify** 27:5
**CET** 27:12
**chapter** 21:11
**check** 14:3
**checking** 4:7
**Chestnut** 1:13
**chose** 22:6 23:15
**Cincinnati** 2:3
**Cir** 13:23
**circuit** 5:24,25
  13:21,25 14:15,15
  15:20,21 19:12,22
**circuits** 19:13,22
**Circuit's** 12:20
**circumstances** 7:9
  22:8
**citation** 9:18
**cite** 12:16 15:14
**cited** 6:10 12:12,15
  13:5,15 15:11
  19:18
**cites** 16:12
**clarify** 16:25 17:3
**clearly** 12:8 15:8,9
  17:12,14 23:15
**CLERK** 26:8
**client** 25:14,14
**closed** 24:20,25
**collect** 6:13 7:15
  19:16,20
**collected** 6:14
**collecting** 20:7
**collection** 6:5 7:7
  17:23,24
**come** 10:2 18:4
**comments** 11:4
**commitment** 22:13
**communicated**
  25:10
**communication**
  25:18
**Company** 2:23
**complaint** 11:14
**completely** 24:10

**compliance** 18:8
**compliant** 15:2
**conditioning** 21:10
  21:12
**congress** 8:14
  18:22,23 23:2,4
  23:18
**connection** 24:8,24
**consented** 11:12
**consider** 18:24
  21:19 22:7 23:6,7
**consideration**
  22:24
**considerations**
  24:15
**consistent** 9:3
**constitute** 16:17
  17:18
**consumer** 16:5,13
**contact** 11:19
**contemplated**
  23:18
**Continued** 2:1
**contrary** 12:17
  13:14
**corpus** 17:15,17
**correct** 19:11 27:5
**counsel** 3:2,9
**counsel's** 22:6
**country** 19:13
**couple** 4:13 16:2
  20:17
**course** 3:24 11:10
  18:24 22:6
**court** 1:1 2:23 3:2,6
  3:11,13,18,21 4:2
  4:9,19,23 5:2,15
  5:17,20,22 6:12
  7:8,20 8:8,11,17
  8:18,24 9:11,15
  9:17,24 10:1,2,6
  10:12,15,20,23
  11:3 12:6,24 13:5
  13:7,10 14:1,3,7
  14:10,15,22,25
  15:4,23,23 16:6
  16:16,18,20,24

17:1,6,8,10,16,19
  18:5,11,23 20:15
  20:19,23 21:2,5,6
  21:9,15,19,20,22
  22:7,10,16,18
  23:5,22,24 24:1,5
  24:12 25:10,18,24
  25:25 26:2,4,7,9
  27:4
**courts** 5:24 7:19
  15:17 19:13
**court's** 3:24 4:7
  13:4,18 14:24
  15:7,8,9,24 20:10
  21:15 22:5,13
  25:22
**Credit** 2:15 16:13
**criminal** 17:25
  18:14,21 19:19
**cruel** 8:7
**current** 7:25 8:24
**custody** 4:12

**D**
**D** 27:12
**DANOFF** 2:4,15
**date** 4:25 27:11
**daughters** 19:3
  25:3,4
**day** 5:3,4,6 11:13
  22:3
**days** 4:24 5:2 10:10
  11:11,11,21 20:17
**deadlines** 10:8
**deal** 15:11 25:7
**deals** 12:1,2
**dealt** 24:19
**debt** 7:7 13:2,9
  17:23 20:12
**debtor** 19:1
**decides** 8:11
**deciding** 22:8
**decision** 12:19,20
  13:14,21 15:21
  25:23
**decisions** 13:5
  14:15

**declined** 3:6
**deem** 6:19
**defendant** 1:6,15
  4:2,19 5:1 10:10
  12:16 13:18 14:8
  14:12,17 15:2
  18:25 22:15,25
  23:7,9,22 25:4,18
**defendant's** 4:22
  6:5 12:13
**defense** 22:5
**deferment** 13:3
**deferred** 12:4,6
**defrauded** 14:9
**delay** 11:23,24
  25:13
**denied** 10:9
**DENNIS** 2:4,14
**denying** 21:9
**Department** 2:7
  8:12,15
**derelict** 23:23
**described** 21:7
**detailed** 23:5
**determine** 8:9,13
  8:18,25 9:11
  11:20 12:6
**disbursements**
  17:13
**disclosed** 21:25
**discovered** 21:24
  21:24
**discovery** 25:3
**discretion** 21:16
**discussion** 23:3
**disposable** 16:15
**disproportional**
  8:6 9:10
**dispute** 14:2
**Dist** 6:16
**district** 1:1,1,9 6:17
  12:19 13:5 15:15
  15:16,23 19:13
**divorce** 9:6 11:12
  11:12,14,20 24:2
  24:8,24 25:2
**divorced** 7:1

**docket** 3:25
**doctor** 3:4
**doing** 5:12 23:21
**DOJ** 18:24
**dollar** 4:16
**dollars** 4:5,11 11:8
  11:9 13:10 14:19
  14:20 22:14,15
**doubtful** 8:13
**Dr** 5:13 6:23 7:9
  9:4 11:11 12:4,23
  16:9 17:13 19:2
  21:18
**due** 4:8,9 7:17 13:2
  13:8,8,9 15:25

**E**
**E** 27:2
**early** 5:7
**earning** 25:16
**earnings** 16:15,17
  17:18
**East** 1:19 2:13
**EASTERN** 1:1
**ECF** 3:25
**effect** 15:19
**eighth** 8:2,19,23,25
  9:2,9 21:20
**either** 4:23 13:1
**Ekong** 13:22,22,23
**electronic** 2:21
  27:6,12
**eleven** 18:20
**enables** 20:6
**enforce** 3:22,24
  20:3
**enforcement** 18:6
  21:11
**enforcing** 18:6
**ensure** 18:8
**entering** 22:20
**entire** 12:25 13:1
**entireties** 24:17
**entitled** 7:10
**equity** 24:15,19
**ERISA** 19:9,14
**ESQ** 1:11,11,12,12

1:18,18,21 2:4
**essentially** 9:7 13:6
  13:24 18:10 21:16
  21:23 23:13
**established** 12:15
**eventually** 24:19
**ex** 9:6
**example** 4:22 23:9
**exception** 15:8
  18:15
**excess** 11:9
**execute** 13:17 15:6
**exempt** 18:20
  19:15
**exemption** 18:14
  19:9
**exemptions** 18:22
**existence** 22:11
**expand** 18:13
**expected** 4:14
**extending** 21:10
**extent** 20:4

**F**
**F** 1:8,11 13:23 27:2
**fact** 6:9 8:16 9:5
  19:21 22:3 25:21
**facts** 8:4 21:20
**fails** 23:22
**fair** 7:8
**fairly** 8:22
**fashion** 7:8 10:9
  18:11
**fault** 22:5,6
**favorably** 19:23
**FDCPA** 17:25 18:7
**February** 1:5
**federal** 2:15 7:7
  17:23 19:16,16
**Fidelity** 2:2,2
**Fifth** 13:21,25
  15:19
**file** 9:22
**filed** 7:25 9:20 10:1
  10:18 11:12,14
  20:24 22:3
**filing** 11:13

**final** 8:8 10:21 25:6
  25:23
**financial** 12:6
  13:19 14:19 23:6
**find** 7:3
**finding** 22:10
**finds** 21:15
**fine** 4:11 19:19
  21:1
**fines** 19:16,20
**first** 5:4,23 11:8
**fit** 18:12
**five** 6:7 16:10
**floor** 13:6
**follow** 15:24 16:15
**foregoing** 27:5
**form** 8:1 9:13
  20:19
**forth** 14:14 20:10
**forward** 3:17
**found** 5:25 11:10
**foundation** 3:25
**framework** 3:20,23
**frankly** 6:18
**fraudulent** 24:17
**free** 23:13
**fulfill** 14:17,24 20:6
  20:13
**full** 13:8 20:11
**fullest** 20:4
**fully** 21:25
**funds** 6:14 16:10
  16:16 17:4 25:15
**further** 9:7 18:12
  25:1
**furthermore** 7:5

**G**

**GALLOGLY** 2:10
**garnish** 7:12 13:16
  17:13 21:23
**garnished** 25:15
**garnishee** 9:22
  16:19
**garnishees** 2:1
  10:18 16:7
**garnishing** 18:21

19:24
**garnishment** 1:8
  3:14 11:6 16:16
  19:15 22:2 23:14
  24:21
**garnishments** 11:6
  15:12 18:17
**GERALD** 1:15
**Geralnik** 27:4,11
**getting** 6:8
**given** 4:4 5:1 6:23
  22:21
**go** 5:5 12:13 13:16
  14:18 15:5,6,10
  16:1 20:12,13
  21:17 22:21 23:11
  24:12,17
**going** 5:8 6:12,19
  6:23,24 13:12
  14:17 15:24 17:13
  17:15 18:4 19:2,3
  19:4 23:9 25:1
**good** 3:1,7 7:1
  13:24
**gover** 6:11
**government** 3:8,16
  3:22 5:4 6:13
  7:11,19 9:12,24
  9:25 10:6,24
  11:10,18 12:12
  13:11,16 14:2
  15:5,8,9,25 16:9
  19:23,24 20:5,6
  21:16 22:1,6,20
  22:21 23:13,21
  24:7,12,25 25:7,9
  25:15
**government's** 4:25
  5:12 6:5,11 7:14
  13:15 15:18 21:14
  25:1
**governs** 17:23
**granted** 3:19
**Grico** 19:18
**grossly** 8:6 9:10
**ground** 9:2
**Grounds** 2:15

**Group** 2:4
**guess** 3:15

**H**

**half** 9:5 11:16
**happened** 6:9
  11:21
**hardship** 7:6,17
  18:1,2,9,13,13,15
  18:21,22,24 19:5
  19:7
**hat** 15:17
**hear** 10:23
**heard** 21:20
**hearing** 9:21 10:4,6
  10:9,16 11:23
  25:17,19
**hearings** 14:18
**held** 4:2 10:17 15:9
  15:17
**hesitate** 9:9
**hey** 25:19
**he'll** 4:15 6:7
**hold** 16:16
**holds** 12:17
**Honor** 3:1,7,18
  4:17 5:4,19,22 6:4
  6:18,23 7:5,17,23
  8:1 9:10,20 10:4
  11:1,4,7,8 12:1,4
  12:11,18 13:6,13
  13:19,22 14:12,18
  15:13,20 16:11,23
  17:3,12,15,21
  18:2,14,18,25
  19:8,19 20:1,8,10
  20:14,17,21,25
  21:1,6 23:1,19,25
  24:6,14,19,23
  25:6,8,11,21 26:1
  26:3,6
**HONORABLE** 1:8
**Honor's** 12:2
**hospital** 7:14
**huge** 23:3
**hunk** 7:1

**I**

**immediately** 4:8,9
  4:10,23 12:3,7,22
  12:24 13:7,8,8
  15:25,25
**implicate** 9:8
**important** 9:12
  24:21
**impose** 14:16
**imposes** 4:19
**imposition** 8:14
**inability** 18:15
**incarcerated** 3:6
  4:22 14:20
**incarceration** 4:20
  9:5 22:14
**includes** 4:18
**including** 11:16
  15:10
**income** 6:21,25
  19:5
**information** 11:20
  25:2
**INGRAM** 1:15
**initial** 3:23
**installment** 4:16
**installments** 17:5
**interest** 25:16
**interpreting** 8:24
**investigation** 11:24
**Investments** 2:2,2
**IRAs** 19:15
**issue** 3:18 9:20 15:1
  18:4,7,13,14 19:7
  19:9,9,12,14,23
  20:21 24:19,21
  25:12,13
**issues** 3:21 11:22
  19:8 23:4 24:18
  25:22

**J**

**jail** 25:14
**Jersey** 12:19 15:23
**job** 7:13
**JON** 2:9
**Joseph** 1:11 3:7
**Judge** 1:9 19:17

25:19
**judgment** 3:24
  13:19 14:6,13,17
  14:24 18:25 22:13
  24:3
**June** 9:22
**jury** 4:4
**Justice** 8:12,15

**K**

**Katherine** 1:11 3:9
**KELLY** 1:8
**kind** 14:18
**King** 1:5 2:4,4,14
  2:15 3:4,4 5:13
  6:23 7:9 9:4
  11:11 12:4 16:9
  17:14 19:2 21:18
**know** 3:15,20 8:4
  18:4 22:25 23:10
**knowledge** 5:25

**L**

**L** 1:21,22
**LARRY** 1:18
**latest** 5:16
**law** 12:11 13:24
  16:11 20:2,6 23:3
**lawfully** 9:6
**laws** 14:14
**lawyers** 11:20
**leapfrog** 21:17
**leave** 9:25
**left** 8:10 9:11
**legal** 2:7 7:3 24:18
**leisure** 23:14
**lens** 8:2
**LESSER** 2:10
**letter** 9:24 10:1
  20:18,19
**Let's** 10:20,23
**levied** 5:24 6:2,3,8
**levy** 13:17 15:6
  16:4 17:13
**LEXIS** 6:16
**life** 20:12
**limbo** 23:17
**limit** 7:21

**limitation** 16:4
  18:17
**limited** 6:6 7:15
  17:14
**limiting** 21:10,12
**line** 20:21
**live** 7:2 19:6
**living** 4:15 6:24
  19:3
**LLP** 1:19
**logically** 4:17
**long** 20:15
**longer** 13:24
**look** 15:24 20:9,13
  24:21
**looked** 22:24
**looking** 24:7,8
**lose** 10:11
**losses** 14:11
**lot** 5:19 23:2
**lottery** 23:10
**lump** 4:8 14:4,5
  17:11 22:21,23

**M**

**maintaining** 6:2
**Mairs** 2:12,12
**Mandatory** 6:1
**manner** 19:20
**March** 27:9
**marital** 24:9
**Market** 2:24
**marshals** 5:5
**Maryland** 11:12,13
  15:15
**materia** 23:19
**matter** 3:13 25:11
  25:22 27:7
**MAUREEN** 1:12
**MCCARTNEY**
  1:12
**McClanahan** 6:15
  7:20
**MD** 1:20 2:6,8,16
**mean** 14:3
**Meaning** 14:8
**means** 13:9,16

**medicine** 6:24
**meet** 23:22
**memoranda** 7:24
**memorandum**
  20:16
**Michigan** 2:13
  15:16
**Mid-Atlantic** 2:23
**Miller** 6:9,11 7:20
**Milwaukee** 2:13
**Minni** 1:11 3:7,8
  3:12 11:1,4 13:1
  13:13 14:2,5,8,11
  14:23 15:1,5 16:8
  16:19,22,25 17:12
  17:17,21 20:17,20
  21:1 23:25 24:4,6
  24:14 26:1,6
**mission** 20:7,14
**modifying** 21:10
**money** 7:21 11:21
  18:16 20:2 22:11
  23:10
**month** 13:11 14:21
  22:14,15
**monthly** 4:16 6:7
  17:5
**months** 4:13 9:23
  9:24 10:3,7,19
  11:18 19:2 22:5
  23:16,18 25:8,19
  25:20
**morning** 3:1,7 18:4
**motion** 1:8 3:13
**move** 3:17
**M.D** 1:5

**N**

**N** 27:2
**name** 3:2
**NATHANS** 1:18,19
**National** 2:23
**near** 24:10 25:4
**nece** 14:5
**necessary** 16:15
**need** 7:2 20:12,15
**needs** 23:10

**never** 22:18,18,19
  22:22
**New** 12:19 15:23
**Newcomer** 19:17
**newly** 21:23,24
**nine** 9:23 10:7,19
  22:4 23:18 25:8
  25:19
**nonprecedential**
  12:20
**normally** 14:4
**North** 4:15 19:3
**note** 5:23
**notes** 15:17
**notwithstanding**
  15:1 16:1
**number** 4:24 10:13
  23:16 24:9 25:12
**numerous** 8:3 10:8
**N.A** 2:9

**O**

**O** 27:2
**object** 5:23
**objecting** 9:1
**objection** 6:3
**obligations** 23:22
**obviously** 9:23
  23:10
**occur** 4:13 22:19
**occurred** 23:15
**office** 1:13 3:9
**official** 27:6
**oh** 2:3 15:18 17:12
**okay** 5:15,21,24
  9:15,23,25 10:9
  10:15 17:6,10
  21:2 26:2
**once** 4:12 22:15
  25:23
**opined** 19:12
**oppose** 3:16
**options** 21:15
**oral** 21:3
**order** 1:8 3:14,23
  4:7,17 5:22 12:8
  13:18 14:12 15:7

  18:8 21:9 22:13
  22:13
**ordered** 14:4,5
**orderly** 7:14
**orders** 18:7
**overruled** 13:21
  15:19
**overwhelmingly**
  15:17

**P**

**PA** 1:4,14,17,23 2:4
  2:11,15,24
**page** 4:6
**paid** 9:3,3 25:15
**pari** 23:19
**part** 5:21 11:23
  16:6 17:22 23:1
  24:1,1,5
**particular** 4:10 8:3
  8:4,4,5 20:21
**pay** 12:9 14:19,20
  18:15
**payable** 15:25
**paying** 13:3
**payment** 4:8,9,18
  5:18 7:12,15 8:15
  8:17 9:2 12:2,2,8
  12:22,24,25,25
  13:1,2,4,6 14:16
  14:23 15:2,3,18
  16:1 17:4 20:10
  20:11 21:17,18
  22:12,20,23 23:7
**payments** 4:6,16
  5:14 6:7,20 7:10
  8:18 9:8 12:3,4,5
  12:7 13:2,7,10
**pays** 12:8,9
**PENNSYLVANIA**
  1:1
**pension** 19:10
**percent** 6:6,7,13,15
  6:21,22 7:4,16,18
  7:22 9:19 16:4,10
  16:14 17:15 18:16
**percentage** 17:11

**period** 4:20 5:8
**permission** 3:5
**permit** 6:12
**permitted** 22:2,7
**ph** 13:4 19:18
**Philadelphia** 1:4
  1:14,17,23 2:11
  2:24
**pick** 5:6
**Plaintiff** 1:3,11
**plan** 7:10 13:4,6
  14:16,23 15:2,3
  15:18 16:1 20:10
  21:17,18 22:12
  23:7
**plans** 19:15
**play** 24:5
**please** 3:2
**podium** 11:2
**point** 3:20,22 6:10
  6:25 7:11,23 8:7
  9:10,17 11:5 25:6
**pointed** 12:17
  13:20 17:25 18:18
  18:23
**points** 10:11 16:2
  25:11
**policy** 18:24
**position** 4:17 10:22
  15:20
**possibility** 22:23
**possible** 20:4
**post** 5:25
**power** 2:12,12
  21:16
**practicable** 10:17
**practice** 6:24
**precedential** 15:21
**preclude** 12:12
  19:24
**prejudice** 25:20
**prejudiced** 25:14
**prerequisite** 4:3
**presentence** 21:25
**previously** 7:24
**PRICE** 2:7,7
**principal** 6:4

**printout** 5:16
**prior** 9:25
**prison** 12:5,9,9
  19:2
**Prisons** 5:2,9 8:11
  8:12
**procedure** 21:11
**procedures** 7:7
  17:23 23:5
**proceed** 3:14,15
  20:5
**proceeding** 24:8,24
  25:2
**proceedings** 2:21
  27:7
**process** 14:13
**promptly** 10:17
**property** 11:15
  18:20 19:6 24:2
  24:15,15,17,18
  25:4
**Protection** 16:13
**provide** 8:16
**provided** 4:5,6
**provides** 10:7 12:8
  21:8
**Proving** 2:14
**provision** 7:7,17,18
  12:11,22 16:12
  18:1,2,5,6,10
  21:19
**provisions** 7:6
  17:24 18:12 21:8
  23:8
**public** 19:1
**PUGH** 1:21,22
**punish** 8:6 9:7
**punishment** 8:1,7,9
  8:10,14 9:4,14
**pursue** 22:2
**put** 18:25
**P.O** 2:2,8

**Q**

**qualified** 19:9,14
**quarter** 4:11 14:20
**question** 21:6,14

**R**

**R** 27:2
**raise** 25:12
**raised** 11:22 16:2
  25:13
**rationale** 15:24
  19:21
**read** 23:19,20
**reading** 8:22 21:8
**really** 12:1
**received** 25:4
**receiving** 19:4
**recognize** 9:12
**record** 3:3
**recorded** 2:21
**recording** 2:21
  27:6
**records** 11:19
**recovery** 12:14
**referenced** 13:4
**referred** 6:21 17:22
  18:1
**regarding** 25:2
**Region** 2:23
**regular** 17:4
**regularly** 10:5
  25:10
**regulating** 21:10
  21:12
**release** 14:21
**released** 4:12,14
  22:15
**relief** 18:8,11
**rely** 9:8
**remanded** 4:23
**remedial** 9:16
**remedy** 7:8 18:6
**reminded** 20:9
**replete** 19:14
**reply** 21:3
**report** 21:25
**Reporting** 2:23
**request** 25:17
**requests** 9:21
**required** 4:3,25
**requires** 20:2
**requiring** 9:7

**residence** 24:9
**resources** 23:6
**respect** 4:25
**respond** 16:2 20:23
  23:25
**rest** 5:20
**restitution** 4:3,4
  6:1 8:1,5,15,16,18
  9:2,13 12:14
  13:18 14:4,12,14
  14:24 15:7 19:16
  19:20 20:3,7,11
  23:5,8
**Restrepo** 1:11 3:9
  20:9
**restricted** 13:12
  15:10,18
**result** 20:11
**resulted** 11:24
**retire** 17:7
**retirement** 5:23 6:2
  6:8,20 7:1,10 9:5
  11:16 19:15 24:21
  24:23
**returned** 24:16
**review** 25:1,1
**reviewing** 11:18
**revisiting** 23:9
**revoked** 24:16
**right** 3:11 10:2,12
  10:20,23 14:7,10
  14:22,25 15:4
  17:8,16 20:22
  21:14 23:15,24
  25:25 26:4
**rights** 22:21
**rise** 26:8
**road** 12:7
**Robert** 1:8,18 3:5
**rolls** 19:1
**rounds** 25:23
**Rourke** 13:4
**Roush** 12:17,18,21
  12:22 13:14,19,20
  13:23,24 15:9,19
**ROWE** 2:7,7
**ruled** 19:12,23

**S**

**S** 2:10
**satisfy** 13:18 15:7
  24:3
**saying** 11:23 25:19
**says** 5:2 10:16,24
  12:21 13:7,14
  15:24 16:11 17:14
  18:5 19:20 21:12
**schedule** 4:6,6,10
  5:18 8:17 12:2,2
  22:20,24
**seated** 3:9
**second** 5:21 14:13
  14:16 20:8
**secondly** 24:23
**Section** 7:6 17:22
**sections** 23:19
**Security** 6:25 9:8
  19:4
**see** 3:21 14:3
**seek** 5:5
**seeking** 3:22,23
**sees** 13:11
**Seize** 15:6
**self-surrender** 4:24
**send** 16:15 17:19
**sensible** 23:20
**sent** 9:24
**sentence** 4:20,21
  5:7,8 8:4,11,25
  23:2
**sentences** 4:19
**sentencing** 7:24,25
  11:11,22 13:7
  14:18 21:21 22:3
  22:10 23:16 24:11
  25:5
**seriatim** 3:21
**serve** 5:9,10
**serving** 5:7,10
**set** 8:17 14:14
  20:10
**settlement** 11:15
  24:2
**seven** 11:11,11,21
**sheet** 3:25

**shoes** 7:11
**show** 5:1,3
**shows** 5:3
**Shusterman** 12:20
  15:21
**Shusterman's**
  15:22
**similar** 10:5
**simple** 20:20
**SIRLIN** 2:9,10
**site** 13:22
**sitting** 25:14
**situation** 12:21
**six** 25:20
**sixty-six** 7:9
**Social** 6:24 9:8 19:4
**solely** 9:8
**soon** 10:17
**sorry** 9:18 15:15
  18:3
**sound** 2:21 27:6
**Southern** 6:16
**speaks** 6:15
**specific** 7:5 10:7
  12:10 18:20
**specifically** 12:3
  21:12
**Speedy** 10:5
**spent** 11:18
**split** 6:18
**standing** 7:11
**start** 5:9 13:3 21:13
**started** 11:8 23:17
**starting** 3:22 11:5
**state** 3:2 4:21
**States** 1:1,9 3:14
**status** 12:7
**statute** 6:12,22
  8:17,22 10:7,16
  23:8
**statutes** 8:16,24
  25:10
**statutory** 7:3 20:6
  20:14
**staying** 25:16
**step** 14:13,16
**stream** 7:15 19:6

**Street** 1:13,16,19
  1:22 2:10,13,24
**subject** 17:17
**submissions** 26:7
**submitted** 18:19
**subpoenaed** 11:19
**substance** 5:17
**suffered** 9:4
**sufficient** 8:7
**Suite** 1:14,16,20,23
  2:5,11,16,24
**sum** 4:8 5:17 12:10
  12:25 13:1 14:4,6
  17:11 22:21,23
**summer** 10:19
**supervised** 14:21
**supplemental** 7:24
  20:16
**supposed** 18:25
  23:6
**Sure** 11:3

**T**

**T** 2:7,7 27:2,2
**table** 3:9
**take** 18:16 22:6
  25:2,9
**taken** 7:1,21
**talking** 12:25
**talks** 16:3,14
**technical** 8:22
**terms** 3:19 4:18,18
**TERRY** 1:21,22
**Texas** 12:16
**text** 21:9
**thank** 10:25 11:1
  20:14 26:1,3,4,6
**think** 16:20,22 19:4
  19:7
**Third** 5:25 12:20
  14:15 15:21 19:11
  19:22
**thirtieth** 5:3
**thirty** 5:2,3
**thought** 24:20
**three** 9:4,21
**time** 4:20 5:8 9:25

10:17 19:25 20:23
  22:17 23:13 24:10
  25:5,8
**times** 9:21
**title** 17:14 18:3,9
**today** 11:7 17:24
  25:21
**total** 4:5 9:1
**totality** 22:7
**Towson** 2:6,16
**transcriber** 27:4,12
**transcript** 1:8 27:6
**transfer** 24:16
**transferred** 11:17
  11:21 24:10
**trial** 10:5 21:21
**triggering** 10:11
**true** 16:11 27:5
**trump** 23:13
**trying** 7:12 11:19
  11:20 16:22 20:1
  20:2
**turned** 8:14
**twenty** 6:6 10:10
  16:9 20:11
**twenty-five** 4:11
  6:6,13,15,21,22
  7:4,16,18,22 9:19
  16:3,14 17:14
  18:16
**twenty-ninth** 5:6
**twice** 22:11
**two** 10:3 19:8 20:25
  21:2 24:4,6 25:11
**type** 6:20 19:7
  25:20
**types** 18:8,20 24:4
  24:6

**U**

**Um-hum** 21:5
**understand** 4:14
**Union** 2:15
**UNISON** 3:1
**United** 1:1,9 3:14
**untimely** 10:4,4,9
  10:21 11:23

**unusual** 8:7
**USA** 1:2
**use** 21:11
**U.S** 1:13 3:8 6:16
**U.S.C** 7:6 9:19
  16:14 17:22 21:7

**V**

**Vanguard** 2:4
**various** 23:4
**verdict** 4:4
**Veritext** 2:23
**victims** 6:1 12:14
  20:2,3 23:11
**view** 7:25
**viewed** 8:2
**Virginia** 6:17
**vs** 1:4

**W**

**W** 1:18 2:4,14 3:5
**Wachovia** 2:9
**wage** 18:17
**wait** 10:10 26:4
**waited** 22:4,4 23:16
**Walnut** 1:16,22
**want** 5:10 20:18
**wanted** 18:22
**warrant** 5:4
**Washington** 2:5,15
**way** 5:13 15:19
  21:18
**weeks** 20:25 21:2
**welfare** 19:1
**well-established**
  19:14
**West** 6:17
**Western** 15:15
**Westlaw** 15:16
**we'll** 3:17
**we're** 6:2,19 9:1
  17:14,15 18:25
  20:1,1 25:21
**we've** 15:11 19:10
**whatsoever** 19:7
**WI** 2:13
**wife** 6:25 11:17
  24:10 25:3

**wife's** 11:19
**WILLIAM** 1:5
**wins** 23:10
**WITZLEBEN** 1:12
**words** 13:2 17:9
**working** 7:13
**worth** 11:7,9
**writ** 3:16,19 17:17
**writs** 18:7
**writted** 3:6
**written** 23:4
**wrong** 16:13

**Y**

**year** 4:15 20:11
  23:17
**years** 9:4 19:17
  23:16

**Z**

**Zipporah** 27:4,11

**1**

**1st** 4:15
**120** 1:19
**123** 2:10
**1250** 1:14
**1315** 1:16,22
**15** 9:19 16:13 17:14
**1673** 9:19 16:14
**17th** 9:22
**17011** 2:8
**18th** 10:1
**1800** 1:20 2:24
**1801** 2:24
**19103** 2:24
**19106** 1:14
**19107** 1:17,23
**19109** 2:11

**2**

**2:08-CR-00066-...**
  1:3
**200** 14:20
**2001** 19:18
**2006** 6:16,17 13:24
**2007** 13:23
**2010** 15:15,16,16

**2011** 9:22
**2012** 1:5 27:9
**2100** 2:11
**21202** 1:20
**21204** 2:6,16
**21298** 2:8
**24** 1:5
**25** 14:19 22:14
**258,000** 11:7
**28** 7:6 17:22 18:3
  21:7
**285** 13:23

**3**

**3d** 13:23
**30** 21:7
**3013** 7:6,17 17:22
  18:1,2,2,5 21:7
**34042** 6:16
**3664** 19:20

**4**

**4** 27:9
**401Ks** 19:15
**409** 2:5,15
**45277** 2:3
**4536785** 15:16
**489** 27:12

**5**

**5th** 13:23
**500** 4:16 13:10
  22:14
**518** 13:23
**53202** 2:13
**539,000** 11:9

**6**

**615** 1:13 2:13
**67** 3:25

**7**

**7** 4:7
**770001** 2:2
**780** 4:8
**780,000** 4:5

**8**

**800** 1:16,23
**810** 2:5,16
**888-777-6690** 2:25