IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal No. 08-66-01 |
| WILLIAM KING, M.D., | : |
| Defendant. | : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                      **April 2, 2012**

Presently before the Court is the United States of America's ("Government") Motion for Garnishment Order against William King, M.D. ("Defendant"), Defendant's Response in Opposition and Government's Reply to the Response. For the reasons set forth below, the Motion for Garnishment Order will be granted.

**I.     BACKGROUND**

On October 14, 2008, Defendant was convicted by a jury of thirteen counts of mail fraud in violation of 18 U.S.C. § 1341, fifty-nine counts of health care fraud in violation of 18 U.S.C. § 1347, and ten counts of making false statements in a health care matter in violation of 18 U.S.C. § 1035.[1] The Defendant was sentenced to a prison term of thirty-six months to begin on January 18, 2010, followed by three years of supervised release. Additionally, Defendant was ordered to pay $780,151 in restitution, $12,500 in criminal fines and $8,200 for a special

---

[1] Because this is a Memorandum regarding the Government's Motion for Garnishment, and, not a challenge to Defendant's conviction, the underlying facts regarding Defendant's criminal actions are not reiterated.

assessment.  The Defendant is currently scheduled to be released from custody in May 2012.

At sentencing this Court ordered that "restitution is due immediately."  (Tr. Sentencing Hr'g at p. 59, July 24, 2009.)  In addition, after taking into account the Defendant's ability to pay the restitution, our Judgment at sentence ("Judgment") reiterates that payment was to begin immediately.  (J. at p. 7, July 24, 2009.)  The Judgment further mandated that the Defendant participate in the Bureau of Prisons' Inmate Financial Responsibility Program and pay $25 per quarter towards the fine.  (Id.)  Any unpaid balance when released from custody was to paid in $500 monthly installments.  (Id.)

Seven days after his sentencing, the Defendant filed for or consented to a divorce action in Maryland.  (Tr. Mot. for Garnishment Order at p. 11, Feb. 24, 2012.)  On this same day, Defendant entered into a property settlement agreement whereby he gave half of his assets, including half of the retirement accounts at issue in this case, to his now ex-wife.  (Id.)

On March 7, 2011, the Government filed an Application for a Writ of Garnishment against the following five Garnishees:  The Vanguard Group; T. Rowe Price; Mairs & Power, Inc.; Fidelity Investments; and Wachovia Bank N.A.  (Application for Writ of Garnishment at 2, March 7, 2011, ECF No. 79.)  Specifically, the Government believed the Garnishees were in possession, custody, and/or control of certain properties (i.e. retirement accounts) belonging to the Defendant which were not exempt from garnishment.  (Id.)  On this date, Defendant had completed remunerations for the special assessment, paid $27,604 toward restitution, but had not made any payments toward the criminal fines.  (Id.)  The current balance owed for restitution was $752,574.  (Id.)  The Government sought the writ to enforce this outstanding restitution balance.

On March 28, 2011, a Writ of Garnishment was issued by this Court.  Through the

responses from the Garnishees which were submitted to this Court, it was ascertained that Defendant had the following: two accounts at Vanguard Group worth $32,901.58;[2] four accounts with T. Rowe Price worth $20,609.82;[3] one account with Mairs & Power, Inc. worth $5,249.67;[4] three accounts with Fidelity Investments worth $95,424;[5] and no accounts with Wachovia.[6] In total, the Defendant had $154,185.07 in these accounts. The Defendant opposed the Writ of Garnishment and requested a hearing in a letter dated March 25, 2011. The Defendant filed an Objection to the Writ of Garnishment on April 13, 2011.

After receiving new information eliciting the possibility of additional financial accounts, the Government filed another Application for a Writ of Garnishment on May 20, 2011. (Second Application for Writ of Garnishment at 2.) This time the Garnishees were MG Trust Company, LLC and Aberdeen Proving Grounds Federal Credit Union. (Id.) On May 23, 2011, we granted the Government's Application for the Writ of Garnishment. In response, Aberdeen Proving Grounds Federal Credit Union asserted that the Defendant did not have any accounts with them.[7] However, Defendant did have a retirement account with MG Trust Company, LLC in the amount of $103,830.68.[8]

---

[2] See Vanguard Group Response, Apr. 14, 2011, ECF No. 84.

[3] See T. Rowe Price Response, Apr. 20, 2011, ECF No. 85.

[4] See Mairs & Power, Inc. Response, May 9, 2011, ECF No. 87.

[5] See Fidelity Investments Response, Apr. 18, 2011, ECF No. 81.

[6] See Wachovia Response, May 16, 2011, ECF No. 88.

[7] See Aberdeen Proving Grounds Federal Credit Union Response, June 15, 2011, ECF No. 92.

[8] See MG Trust Company, LLC Response, June 17, 2011, ECF No. 93.

On May 31, 2011, Defendant filed a "Continuing Objection to Answers to Writ of Garnishment Regarding Retirement Accounts" renewing all his previously filed objections and extending them to the two new Garnishees. (Objection to Writ of Garnishment, May 31, 2011, ECF No. 91.) Additionally, Defendant requested that this Court schedule a hearing to address the issues raised by the garnishment, after the filing of answers by the garnishees, the filing of briefs by the Government, the filing of a reply brief by the defense, and, on a date and time convenient to all counsel. (Id.)

From the date of Defendant's sentencing until January 2012, the Defendant paid a total of $28,004 in restitution. (Mot. of U.S. for Garnishment Order, January 27, 2012, ECF No. 95.) At this time, Defendant's outstanding restitution totaled $752,197. (Id. at 1.) On January 27, 2012, the Government submitted a "Memorandum of Law in Support of Motion of United States of America for Garnishment Order." In this motion, the Government moved for an order approving the final disposition of property subject to the Writs of Garnishment. (Id.) Specifically, the Government sought the entirety of the Defendant's accounts with Fidelity Investments, Mairs & Powers, Inc., MG Trust Company, LLC, The Vanguard Group and T. Rowe Price worth $258,015.13. (Id. at 3.)

On February 24, 2012, this Court heard oral arguments regarding the Government's Motion to garnish the Defendant's accounts.[9] Subsequent to this hearing, the Government submitted a "Post Hearing Supplemental Memorandum in Support of Motion for Garnishment Order." On March 13, 2012, the Defendant responded by submitting a memorandum to this Court protesting the garnishment of the Defendant's retirement accounts on several grounds.

---

[9] See Transcript of Oral Arg., February 24, 2012.

The Government responded with a reply memorandum on March 14, 2012.

## II.     DISCUSSION

The sole issue to be addressed in this Memorandum Opinion is the propriety of the garnishment of the Defendant's retirement accounts. Our discussion follows.

### A.     Garnishment Orders in General

The Mandatory Victims Restitution Act ("MVRA") requires a defendant convicted of certain crimes, "including any offense committed by fraud or deceit," to make restitution to the victims of the offense in an amount equal to the value of the property damaged or lost. 18 U.S.C. §§ 3663A(a)(1), (b)(1), (c)(1)(A)(ii). Under the MVRA, an order of restitution may be executed in accordance with the practices and procedures for the enforcement of a civil judgment under federal law or state law or by all other available and reasonable means. 18 U.S.C. § 3613; 18 U.S.C. §§ 3664(m)(1)(A)(i) & (m)(1)(A)(ii). Thus, Congress has granted the Government broad powers to enforce restitution obligations. Intrinsic to the endowment of these powers, the MVRA has placed the responsibility on the Attorney General to aggressively enforce restitution orders. See 18 U.S.C. 3613(a); U.S. v. Phillips, 303 F.3d 548, 550-51 (5th Cir. 2002).

In the case *sub judice*, the Government seeks to enforce a criminal restitution order against the Defendant by garnishing several retirement accounts. The Defendant objects on the following grounds: (1) the garnishment of the accounts should be limited to 25% under the Consumer Credit Protection Act ("CCPA"); (2) the anti-alienation provisions of ERISA and the IRC exempt the accounts from garnishment; (3) the Fair Debt Collection Procedures Act ("FDCPA") engenders an applicable hardship provision at 28 U.S.C. § 3013 that should be applied to negate garnishing the corpus of the accounts; (4) accelerating the restitution would

violate the Defendant's Eighth Amendment rights; and, (5) the Defendant's rights to a timely hearing were violated. We address Defendant's objections each in turn.

(1)   *Garnishing the Retirement Accounts*

As previously explained, the central issue before this Court is how much the Government can garnish from the Defendant's retirement accounts. In garnishment proceedings, the Defendant bears the burden of establishing that his property is exempt. 28 U.S.C. § 3014(b)(2); U.S. v. Value Investments, Inc., No. MISC 97-153; 1998 WL 229758 at *3 (E.D. Pa. Apr. 29, 1998). The Defendant's main argument is that under the Consumer Credit Protection Act ("CCPA"), the Government is limited by a 25% cap on garnishments. See 15 U.S.C. § 1673. Specifically, § 1673 implores that, "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed. . .25 per centum of his disposable earnings for that week." Id. The CCPA defines "earnings" to include "periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). The Defendant argues that his retirement benefits fit squarely within the CCPA; thus, protecting them from garnishment above the 25% cap.[10]

We find Defendant's reliance on the CCPA to be improper. In this case, the Government seeks the corpus of the retirement accounts; not the weekly earnings. Thus, the CCPA is not implicated. The United States Court of Appeals for the Third Circuit's ("Third Circuit") opinion in Shusterman supports this proposition. U.S. v. Shusterman, 331 Fed. App'x 994 (3rd Cir. 2009). The ruling, though non-precedential, is instructive. In Shusterman, the Court found that

---

[10]Defendant fails to set forth any evidence that he is receiving periodic payments from his retirement accounts.

the corpus of property could be garnished to satisfy a restitution order, so long as the judgment provides that restitution is due immediately even in the face of language authorizing the restitution to be paid in installments. Shusterman, 331 Fed. App'x at 996-97. The Third Circuit was clear to differentiate this case from Roush, which the Defendant relies upon, where the judgment did not provide that restitution was due immediately. See U.S. v. Roush, 452 F. Supp. 2d 676, 681 (N.D. Tex. 2006) (motion to quash garnishment order granted where there was a payment schedule and judgment did not assert restitution was due immediately); but see US v. Ekong, 518 F.3d 285, 286 (5th Cir. 2007)("Even where restitution is to be paid in installments immediate payment is proper.") In 2011, the United States District Court for the District of New Jersey echoed the Third Circuit:

> Shusterman appears to state law of this and every other federal court which has spoken to this question. In other words, when a district court determines at sentencing that "restitution is due immediately," its order extends to the entire amount due. Court specified installment programs establish floors in regard to Defendant's payments, but at all times the debt is due and the Government may move to garnish that entire amount if funds are available. US v. O'Rourke, No. 2:10-cr-00235, 2011 WL 3035394 at *2 (D. N.J. July 25, 2011).

In the case *sub judice*, the Court asserted that restitution was due immediately in the sentencing document and at the sentencing hearing. Following Shusterman and O'Rourke, the Government can collect the corpus of the retirement accounts despite the presence of a payment schedule. This holding mirrors the archetype set forth by the Third Circuit in Shusterman and is firmly supported by the majority rule pronounced in Ekong and its progeny. See U.S. v. Ekong, 518 F.3d at 286; U.S. v. DeCay, 620 F.3d 534, 544 (5th Cir. 2010) (government can garnish the corpus of a retirement account only if defendant is not receiving monthly payments); U.S. v.

Hosking, 567 F.3d 329, 335 (7th Cir. 2009) (finding that government can garnish the corpus of retirement accounts to satisfy restitution); U.S. v. Novak, 476 F.3d 1041, 1063 (9th Cir. 2007) (government can garnish corpus of retirement accounts if the terms allow for a lump sum payment at the present time); U.S. v. Urso, No. 3:08-CV-1230-L, 2009 WL 2999521 at *2 (N.D. Tex. Sept. 18, 2009) (finding that immediate payment can be required even if the judgment specifies that it be paid in installments); U.S. v. Bancroft, No. 1:09-cr-101-02, 2010 WL 4536785 at *2 (W.D. Mich. Nov. 2, 2010); U.S. v. Belan, No. 2:07-x-50979, 2008 WL 2444496 at *3 (E.D. Mich. June 13, 2008) (government can garnish corpus of funds in a retirement account); U.S. v. Edward D. Jones & Co., L.P., No. 4:10cr57.6, 2011 WL 7025905 (E.D. Tex. Dec. 21, 2011) (government can garnish all of retirement accounts if defendant can cash out).

Our finding is consistent with the intent of federal restitution laws and serves to effectively promote the goal of making victims whole in a timely manner.[11] If the Defendant was required, after his release from incarceration, to make restitution exclusive to the scheduling plan, he would only have made payment in the amount of $120,000 before the twenty year termination of liability would be applied. See 18 U.S.C. § 3613(b)(terminating liability after twenty years from the date of release from incarceration). This result contradicts the clear intention of Congress that victims have a "right to full and timely" restitution. 18 U.S.C. § 3771(a)(6).

B.  The Anti-Alienation Statutes of ERISA and the IRC

Defendant argues that the retirement accounts sought to be garnished in this case are exempt due to the anti-alienation provisions of the Employee Retirement Income Security Act

---

[11] See 18 U.S.C. § 3572(d)(1) & 18 U.S.C. § 3771(a)(6).

("ERISA"), 29 U.S.C. § 1056(d)(1), and the Internal Revenue Code ("IRC"), 26 U.S.C. § 401(a)(13). The Defendant relies on Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990) and U.S. v. Smith, 47 F.3d 681, 684 (4th Cir. 1995).

In Guidry, the United States Supreme Court held that any attempts to garnish pension benefits to satisfy a judgment, even where the beneficiary committed criminal acts, were barred by ERISA section 1056.[12]  Guidry, 493 U.S. at 376. Specifically, the Supreme Court noted that:

> ERISA erects a general bar to the garnishment of pension benefits from plans covered by the Act. . .We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case. That remedy is therefore prohibited by § 206(d)(1). . .Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. 493 U.S. at 371-72, 376.

In neglecting to find exceptions to the anti-alienation provision, the Court asserted that this was not within their prerogative, but rather, "if exceptions to this policy are to be made, it is for Congress to undertake that task." Id.

In 1996, Congress did just that with the enactment of the Mandatory Victims Restitution Act ("MVRA"). Though the Third Circuit has not had the opportunity to rule on what effect the MVRA has on the anti-alienation provisions of ERISA and the IRC, we find that the MVRA supersedes these protections. Our decision soundly rests on several grounds.

First, the language of the MVRA supports this result. Section 3613(a) of the MVRA uses

---

[12] Five years later, the Fourth Circuit in U.S. v. Smith applied the Supreme Court's analysis in Guidry to find that ERISA barred the government from garnishing pension benefits to satisfy a restitution order in a criminal case. U.S. v. Smith, 47 F.3d 681, 684 (4th Cir. 1995).

the clause, "*notwithstanding any other Federal law. . .a judgment imposing a fine may be enforced against all property or rights to property of the person fined.*" See 18 U.S.C. 3613(a) (emphasis added).  The Supreme Court has acknowledged that the use of a "notwithstanding" clause signals Congressional intent to supersede conflicting provisions of any other statute. Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993).  Thus, the "notwithstanding" clause, as written in the MVRA, removes the "general bar" erected by ERISA and the IRC to the garnishment of retirement accounts.  See DeCay, 620 F.3d at 540; US v. Irving, 452 F.3d 110, 126 (2d Cir. 2003); Novak, 476 F.3d at 1053.  This finding is further reinforced by the fact that Congress explicitly exempted certain retirement plans, not relevant to this case, from garnishment under the MVRA.[13]  See 18 U.S.C. § 3613(a)(1).

    Second, the MVRA directs that criminal fines should be enforced in the same manner as a tax liability.  18 U.S.C. § 3613(c).  Accordingly, the only property that cannot be garnished in restitution is that which the government cannot seize to satisfy the payment of income taxes. 18 U.S.C. § 3613(a).  Courts have recognized that ERISA and the IRC do not shield retirement benefits from being levied to collect unpaid taxes.  See Shanbaum v. U.S., 32 F.3d 180, 183 (5th Cir. 1994); Irving, 452 F.3d at 126.  Thus, it is consistent with the statutory scheme, language and intentions of Congress that the anti-alienation provisions of ERISA and the IRC should not protect retirement accounts from garnishment.

    Third, there is a clear consensus of judicial opinions that the MVRA has superseded the anti-alienation provisions of ERISA and the IRC.  See Irving, 452 F.3d at 126; DeCay, 620 F.3d

---

[13]This finding is anchored in the canon of statutory construction that, "the expression of one thing is the exclusion of another."  Decay, 620 F.3d at 541.

at 540-41; U.S. v. Hosking, 567 F.3d 329, 335 (7th Cir. 2009); Novak, 476 F.3d at 1053. These decisions are well reasoned and persuasive.

In sum, we find that the MVRA supersedes the anti-alienation provisions of ERISA and the IRC. Thus, the Defendant cannot rely on them to protect against the garnishment of his retirement accounts as restitution for his criminal actions.

**C.     FDCPA (28 U.S.C. § 3013)**

At oral argument and in documents submitted to this Court, Defendant asserts that a hardship provision exists in the FDCPA, and that this precludes the garnishment of the corpus of his retirement accounts. Specifically, the Defendant points to 28 U.S.C. § 3013 which reads, "the court may. . .make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013. The Defendant asks this Court to use the discretionary powers granted to it under this statute to protect his retirement benefits from garnishment.

The Government objects to the Defendant's claims asserting that § 3013 is merely a catchall provision. The Government posits that Congress provided limited exemptions from the garnishment of property through 18 U.S.C. § 3613(a). A hardship provision is not included within these eleven exemptions,[14] and if Congress intended to create a hardship provision, they would have included it within these exemptions. See U.S. v. Jones & Co., 2011 WL 7025905 at

---

[14] The eleven exemptions include: (1) wearing apparel and school books; (2) fuel, provisions, furniture and personal effects; (3) books and tools of a trade, business, or profession; (4) unemployment benefits; (5) undelivered mail; (6) certain annuity and pension payments (not relevant to this case); (7) workmen's compensation; (8) judgments for support of minor children; (9) certain service connected disability payments; (10) assistance under Job Training Partnership Act; and (11) exempt property under 28 USC § 3014.

\* 2 (E.D. Tex.) (the Court has no basis in law to grant relief based upon the hardships of the defendant).

On its face, the language of 28 U.S.C. § 3013 endows the trial court with broad discretion to limit the Government's enforcement powers. The Third Circuit has not had the opportunity to rule on this issue, however, the Fifth Circuit has found § 3013 to work as a hardship provision. See F.T.C. v. Nat'l Bus. Consultants, Inc., 376 F.3d 317, 321 (5th Cir. 2004), Urso, 2009 WL 2999521 at \*5. Based on our statutory reading, we will assume arguendo that the broad discretion granted in § 3013 could allow a court to take into account the Defendant's personal circumstances in deciding whether to limit the Government's enforcement powers. Accordingly, we now turn to the Defendant's personal circumstances.

Defendant is 66 years old and will be released sometime in May 2012. He will be living in North Carolina with his daughters and collecting approximately $1,200 a month in Social Security. Though Defendant may not retain his medical license, he will still be able to work.[15] In our view, this is not a case of hardship. Defendant has a place to stay and an income stream. Further, there is no record of mental health or substance abuse problems. See U.S. v. Hall, 760 F. Supp. 2d. 146, 150 (D. Me. 2011) (no hardship found where defendant had a place to stay, a minimum wage job and no history of mental health or substance abuse problems). Accordingly, we decline to deny, limit or in any way modify the Defendant's restitution obligations.

---

[15] At the hearing relating to the Motion for Garnishment, the defense asserted only that Defendant "is most likely not going to be able to practice medicine." (Tr. Mot. for Garnishment Order at p. 6, Feb. 24, 2012.) Thus, the issue of whether the Defendant will be able to practice medicine has not been decided at this time.

**D.    Eighth Amendment Protections**

Defendant argues that according to the facts of the case, the Eighth Amendment precludes allowing garnishment to accelerate the payment of his restitution obligations. The Eighth Amendment to the United States Constitution states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has asserted that, "the touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." U.S. v. Bajakajian, 524 US 321, 334 (1998). Thus, a garnishment would be an unconstitutional infringement on the Defendant's Eighth Amendment rights only if it is grossly disproportional to the gravity of the offense. Bajakajian, 524 US at 334.

There is still uncertainty whether the restitution imposed under the MVRA is punishment within the context of the Eighth Amendment.[16] In U.S. v. Lessner, the Third Circuit did not explicitly recognize this connection, but assumed arguendo that the Eighth Amendment was implicated. U.S. v. Lessner, 498 F.3d 185, 206 (3rd Cir. 2007). In doing so, the Court did not find a constitutional violation where the restitution obligations equaled the actual amount of loss due to the criminal actions of the defendant. Lessner, 498 F.3d at 206. Returning to the case *sub judice*, the Defendant's Eighth Amendment claims are clearly unfounded. Defendant's restitution obligations are $780,151. The accrual of interest on this amount was waived at the

---

[16]See US v. Dubose, 146 F.3d 1141, 1145 (9th Cir. 1998) (stating that restitution under the MVRA is punishment within the context of the Eighth Amendment because it has not only remedial, but also deterrent, rehabilitative, and retributive purposes). But see US v. Marron, No. 93-90, CIV.A.95-2231, 1996 WL 677511, at *7 (E.D. Pa. Nov. 22, 1996)(concluding that restitution is not punishment).

discretion of this Court. The total amount owed in restitution is exactly the ascertained total of the losses suffered due to his criminal actions. Accordingly, there is a direct proportionality and Defendant's claims fall short of the grossly disproportional standard set forth in Bajakajian.

### E. The Requirements of a Timely Hearing

Lastly, the Defendant contends that this Court failed to hold a timely hearing as mandated by 28 U.S.C. §§ 3202(d)(1)[17] and 3205(c)(5).[18] Faced with the same arguments, the Third Circuit in Shusterman asserted that the defendant must show prejudice as a result of the delay to garner relief. See Shusterman, 331 Fed. App'x at 997; see also FTC v. Namer, No.06-30528, 2007 WL 2974059 at *7 (5th Cir. Oct. 12, 2007) (Defendant must show prejudice). Additionally, the Court recognized that affording the defendant a hearing on remand was a significant mitigating factor for any delay. 331 Fed. App'x at 997.

In this case, the Defendant has failed to show that he has suffered any prejudice due to the delay. The record illustrates that no such prejudice has occurred. The Defendant has been and is still incarcerated. He will not be released until May 2012. The retirement accounts have not been garnished and are still earning interest. Accordingly, there is no evidence that Defendant has been prejudiced by a delay. Further, this Court held a hearing on the Government's Motion for Garnishment on February 24, 2012. The language in the statutes ("as soon as practicable")

---

[17] 28 U.S.C. §3202(d)(1) reads: "By requesting. . .the court to hold a hearing, the judgment debtor may move to quash the order granting such remedy. The court that issued such order shall hold a hearing on such motion as soon as practicable, or, if so requested by the judgment debtor, within 5 days after receiving the request or as soon thereafter as possible."

[18] 28 U.S.C. § 3205(c)(5) reads: "Within 20 days after receipt of the answer, the judgment debtor or the United States may file a written objection to the answer and request a hearing. . .The court shall hold a hearing within 10 days after the date the request is received by the court, or as soon thereafter as is practicable, and give notice of the hearing date to all the parties."

empowers the court with the discretion regarding the scheduling of such a hearing.  In this case, we hold the timing of the hearing to be completely within our prerogative, and find it attributable to the intricacies of the Government's investigations into the Defendant's financial holdings after the divorce and the disbursement of property.  Consequently, the Defendant's claim lacks merit.

### III.    CONCLUSION

For the aforementioned reasons, we deny the Defendant's objections to the writs and find that Defendant's retirement accounts are subject to garnishment by the Government in partial satisfaction of Defendant's outstanding criminal restitution obligation.  Accordingly, the Government's Motion for a Garnishment Order against the Defendant is granted.

An appropriate Order follows.